# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force,<br><br>*Defendants*. | Case No: 22-453 |

## CLASS ACTION COMPLAINT

The Plaintiffs Bryan P. Spence, Tyler W. Stef, Ryan Corcoran, Mitchell B. Pike, Steven R. Haynes, Andrew Grieb, Danielle A. Runyan, Christopher M. Wu, and Alan Sosebee (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby complain as follows and allege against Defendants Lloyd J. Austin, III, in his official capacity as United States Secretary of Defense, the United States Department of Defense, and Frank Kendall, in his official capacity as United States Secretary of the Air Force:

## INTRODUCTION

1.      This is a class action brought to remedy Defendants' discriminatory policies that substantially burden the religious exercise of Plaintiffs and other members of the Air Force who object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs.

2.      This action is based upon the United States Constitution and the Religious Freedom Restoration Act of 1993, concerning the denial of Plaintiffs' fundamental right to the free exercise of religion.

3.      Defendants have mandated that all members of the Air Force receive a COVID-19 vaccine, or be involuntarily separated. In theory, Defendants offer medical, administrative, and religious accommodations to that mandate. But in practice, only servicemembers with medical or administrative reasons for an exemption from the mandate are accommodated. Religious accommodation requests ("RARs") are universally denied unless the requester is already imminently leaving the Air Force.

4.      Plaintiffs each have sincere religious beliefs that prohibit them from receiving the COVID-19 vaccine. Each submitted an RAR, and each request has been denied. Even before the initial denials, though, Defendants began their discriminatory course of conduct against Plaintiffs and other requesters. Plaintiffs have lost promotions that had already been announced, received official discipline, been barred from training opportunities, and placed in a no-pay status, to name only a few kinds of the harm they have already endured.

5.     Medical and administrative accommodation requesters received no such punitive treatment. Unvaccinated individuals with the same duties as Plaintiffs have not been the subjects of adverse action, simply because their requests were secular rather than religious.

6.     Defendants' policies and practices have deprived and will continue to deprive Plaintiffs of their paramount rights and guarantees under the United States Constitution and federal law. Defendants committed each act alleged herein under the color of law and authority.

7.     This lawsuit is brought as a class action to redress Defendants' violations of the United States Constitution and the Religious Freedom Restoration Act of 1993("RFRA") on behalf of the Named Plaintiffs and all other similarly situated members of the United States Air Force.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law, 28 U.S.C. § 1346 because this is a civil action against the United States, 8 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff, and 42 U.S.C. § 2000bb-1(c) because Plaintiffs' religious exercise has been burdened by Defendants.

9.     This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 2202; and costs and attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988(b).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers and employees of the United States and agencies of the United States, and because the military workplace and the location in which a substantial part of the events or omissions giving rise to the claims of at least one Named Plaintiff is in Fort Worth, Texas, in this Court's District and Division. Specifically, the Defendants' COVID-19 Vaccine Mandate and the related policies that discriminate against Plaintiffs' sincerely held religious beliefs were implemented against and caused injury to as least one Named Plaintiff in this District and Division by Department of Defense officials in this District and Division. Defendants' policies were also implemented against and caused injury to members of the class residing or working in this District.

## PARTIES

### A.     Named Plaintiffs

11.     Named Plaintiff Bryan P. Spence is a Lieutenant Colonel in the Air Force currently serving as an F-16 Instructor Pilot at Naval Air Station Joint Reserve Base Fort Worth in Texas, and who resides in Aledo, Texas.

12.     Named Plaintiff Tyler W. Stef is a Lieutenant Colonel in the Air Force currently stationed at Sheppard Air Force Base in Wichita Falls, Texas, and who resides in Newark, Texas.

13.     Named Plaintiff Ryan Corcoran is a Major in the Air Force currently serving as Individual Mobilization Augmentee to the Deputy Chief Regional Analysis Branch, and performing his duties remotely from Kelly Air Force Base in San Antonio, Texas.

14.     Named Plaintiff Mitchell B. Pike is a First Lieutenant in the Air Force, currently serving as an F-16 Fighter Pilot stationed at Holloman Air Force Base in Alamogordo, New Mexico.

15.     Named Plaintiff Steven R. Hayes is a Major in the Air Force, currently serving as an Assistant Flight Commander/Instructor Pilot assigned to the 5th Flying Training Squadron at Vance Air Force Base in Enid, Oklahoma.

16.     Named Plaintiff Andrew Grieb is a Lieutenant Colonel in the Air Force, currently serving as a T-6 Instructor/Evaluator Pilot in the 5th Flight Training Squadron at Vance Air Force Base in Enid, Oklahoma.

17.     Named Plaintiff Danielle A. Runyan is a Major in the Air Force, currently serving as an Assistant Staff Judge Advocate to 8th Air Force in Louisiana.

18.     Named Plaintiff Christopher M. Wu is a Lieutenant Colonel in the Air Force currently serving as Deputy Chief of the Commercial Litigation Field Support Center at Joint Base Andrews in Maryland.

19.     Named Plaintiff Alan Sosebee is a Captain in the Air Force currently serving as Chief of Training for the 306th Flying Training Group in the 94th Flying Training Squadron at the United States Air Force Academy in Colorado.

**B.      Defendants**

20.      Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin oversees and leads the United States Department of Defense. Secretary Austin issued a memorandum on August 24, 2021, requiring the United States Armed Forces to vaccinate all service members, including Plaintiffs. Defendant Austin is sued in his official capacity.

21.      Defendant United States Department of Defense ("DoD") is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

22.      Defendant Frank Kendall is the United States Secretary of the Air Force. As Secretary of the Air Force, Secretary Kendall oversees and leads the Department of the Air Force ("DAF" or "Air Force"). Secretary Kendall issued a directive on September 3, 2021, requiring the DAF to vaccinate all servicemembers, including Plaintiffs. Secretary Kendall is sued in his official capacity.

**FACTUAL BACKGROUND**

**A.      Plaintiffs' Sincerely Held Religious Beliefs**

23.      Plaintiffs are members of the United States Air Force who each object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs.

24.      Plaintiffs are part of the approximately 3% of Air Force service members who have not been fully vaccinated against COVID-19. Plaintiffs object to receiving the COVID-19 vaccine based on their sincerely held religious beliefs.

25.     Plaintiffs' religious beliefs generally fall into the following categories: (1) opposition to abortion and the use of fetal cell lines in development of the vaccine; (2) belief that the mRNA technology utilized in some COVID-19 vaccines usurps God's creation of the human genome; and (3) that the body is a temple, and taking the vaccine would defile that temple.

26.     Plaintiffs do not believe that staying true to their faith means exposing themselves or others to unnecessary risk. Quite the contrary, they view life—whether their own or that of their fellow servicemembers—as sacred and deserving protection. Plaintiffs, therefore, do not object to safety measures that reduce the transmission of COVID-19 in the workplace. Indeed, Defendants employed such measures during the prior year and a half before COVID-19 vaccines were made widely available.

**B.     The President's Orders to Vaccinate the Armed Forces**

27.     On or about July 29, 2021, the President directed the DoD to add the COVID-19 vaccine to its list of required immunizations for all service members. *See FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant*, WHITE HOUSE BRIEFING ROOM  (July 29, 2021), https://tinyurl.com/29n632a7 ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military.").

28.    The President's directive was issued over seven months after COVID-19 vaccines became available.[1]

### The DoD's COVID-19 Vaccine Mandate

29.    On August 24, 2021, Defendant Austin issued a memorandum entitled *Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members* (the "DoD COVID-19 Vaccine Mandate").

30.    The DoD COVID-19 Vaccine Mandate directs the DoD to vaccinate all active duty and reserve service members against COVID-19. The DoD COVID-19 Vaccine Mandate states that service members who previously contracted COVID-19, and now have active antibodies against the virus, are not considered fully vaccinated and are still required to receive a vaccination against COVID-19. The DoD COVID-19 Vaccine Mandate provides that the DoD will only use or administer COVID-19 vaccines that are fully licensed by the United States Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance. The DoD COVID-19 Vaccine Mandate provides that service members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated. The DoD COVID-19 Vaccine Mandate provides that

---

[1] *Emergency Use Authorization (EUA) for an Unapproved Product: Rev. Mem.*, U.S. Food & Drug Admin. (Dec. 11, 2020), https://www.fda.gov/media/144416/download (EUA for Pfizer vaccine); *Emergency Use Authorization (EUA) for an Unapproved Product: Rev. Mem.*, U.S. Food & Drug Admin. (Dec. 18, 2020), https://www.fda.gov/media/144673/download (EUA for Moderna vaccine); *Emergency Use Authorization (EUA) for an Unapproved Product: Rev. Mem.*, U.S. Food & Drug Admin. (Feb. 27, 2021), https://www.fda.gov/media/146338/download (EUA for Johnson & Johnson vaccine).

service members actively participating in COVID-19 clinical trials are exempted from the DoD COVID-19 Vaccine Mandate until the trial is complete. Although DoD policy on immunizations states that medical commanders, commanding officers, and command surgeons will "ensure patients are evaluated for preexisting immunity" and states that "evidence of immunity based on serologic tests, documented infection, or similar circumstances" may be the basis for a medical exemption,[2] the DoD COVID-19 Vaccine Mandate states that "those with previous COVID-19 infection are not considered fully vaccinated."

31.    The DoD COVID-19 Vaccine Mandate states that the DoD will implement the DoD COVID-19 Vaccine Mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019.[3] The DoD COVID-19 Vaccine Mandate states that the Military Departments, including the Air Force, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable. The DoD COVID-19 Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

32.    Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences

---

[2] *See Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases*, Air Force Instruction ("AFI") 48-110 ¶¶ 1-4, 2-6 https://tinyurl.com/3fack7um.

[3] James N. Stewart, *DOD Instruction 6205.02: DoD Immunization Program*, OFF. UNDER SEC'Y DEF. PERS. READINESS (July 23, 2019), https://tinyurl.com/5f9crvu2.

as directed by their service components. The adverse consequences may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists and assignments, inability to attend certain military training and education schools, removal from assigned job duties, inability to retire in good standing, loss of special pay, placement in a non-deployable status, involuntary placement into the Individual Ready Reserve without access to military benefits, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

33.     According to the Air Force's most recent statistics, 97% of the Air Force is now vaccinated.[4]

## C.     The Air Force's COVID-19 Vaccine Mandate

34.     On September 3, 2021, Secretary Kendall issued a memorandum to all Air Force Commanders, entitled *Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members* (the "Air Force COVID-19 Vaccine Mandate") (collectively, the DoD COVID-19 Vaccine Mandate and the Air Force COVID-19 Vaccine Mandate are the "COVID-19 Vaccine Mandates"). The Air Force COVID-19 Vaccine Mandate incorporates by reference the DoD COVID-19 Vaccine Mandate's provisions.

35.     The Air Force COVID-19 Vaccine Mandate directs all Air Force commanders to take "all steps necessary to ensure all uniformed Airmen and Guardians

---

[4] Sec'y of the Air Force Pub. Affairs, *DAF COVID-19 Statistics – May 2022*, DEP'T OF A.F. (May 17, 2022), https://tinyurl.com/mrx7kvnd.

receive the COVID-19 vaccine." It further directs that, unless exempted, Active-Duty Airmen and Guardians must be fully vaccinated by November 2, 2021, and Ready Reserve, including National Guard, Airmen and Guardians must be fully vaccinated by December 2, 2021. The Air Force COVID-19 Vaccine Mandate states that "[o]only COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA) will be utilized for mandatory vaccinations unless a military member volunteers to receive a vaccine that has obtained U.S. Food and Drug Administration Emergency Use Authorization or is included in the World Health Organization's Emergency Use Listing."

36.     Although Air Force policy states that medical commanders, commanding officers, and command surgeons will "ensure patients are evaluated for preexisting immunity" and states that "evidence of immunity based on serologic tests, documented infection, or similar circumstances" may be the basis for a medical exemption, AFI 48-110 ¶¶ 1-4, 2-6, the Air Force COVID-19 Vaccine Mandate states that "[i]ndividuals with previous COVID-19 infection or positive serology are not considered fully vaccinated and are not exempt."

**D.    DoD and Air Force Regulations Recognize Religious and Medical Accommodations for Immunizations under RFRA and the Free Exercise Clause Generally.**

37.     Department of Defense Instruction ("DODI") 1300.17, Religious Liberty in the Military Services,[5] dated September 1, 2020, establishes DoD policy in furtherance of

---

[5] Matthew P. Donovan, *DoD Instruction 1300.17: Religious Liberty in the Military Services*, OFF. UNDER SEC'Y DEF. PERS. READINESS (Sept. 1, 2020), https://tinyurl.com/4ym5zyfk ("DODI 1300.17").

RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that Service Members have the right to observe the tenets of their religion, or to observe no religion at all. DODI 1300.17 provides that it is DoD policy that "[s]ervice members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance." DODI 1300.17 further provides that, "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment."

38.    DODI 1300.17 additionally provides that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if: (1) The military policy, practice, or duty is in furtherance of a compelling governmental interest. (2) It is the least restrictive means of furthering that compelling governmental interest."

39.    Air Force Policy Directive ("AFPD") 52-2, Accommodation of Religious Practices in the Air Force,[6] dated July 28, 2020, implements DODI 1300.17 policy and

---

[6] *Air Force Policy Directive 52-2: Accommodation of Religious Practices in the Air Force*, SEC'Y OF THE AIR FORCE (July 28, 2020), https://tinyurl.com/ycx6kfv9 ("AFPD 52-2").

guidance for the accommodation of religious practices in the Department of the Air Force. AFPD 52-2 provides that the Air Force "will approve an individual request for accommodation unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, or public health and safety,"[7] and that "any imposed limitations will employ the least restrictive means possible on expressions of sincerely held beliefs."[8]. The Directive further provides that "[a]n Airman's expression of sincerely held beliefs may not be used as the basis for any adverse personnel action, discrimination, or denial of promotion; and in so far as practicable, may not be used as a basis for making schooling, training, or assignment decisions."[9] *Id.* at 1.6.

40.     Department of the Air Force Instruction ("DAFI") 52-201, Religious Freedom in the Department of the Air Force,[10] dated June 23, 2021, implements AFPD 52-2 and provides policy and guidance for the accommodation of religious practices in the Department of the Air Force. DAFI 52-201 reiterates that an "expression of sincerely held beliefs may not be used as the basis for any adverse personnel action, discrimination, or denial of promotion; and may not be used as a basis for making schooling, training, or assignment decisions."[11] It further provides that limitations imposed to achieve a compelling government interest must be the least restrictive means possible, which may

---

[7] *Id.* at § 1.4.

[8] *Id.* at § 1.3.

[9] *Id.* at § 1.6.

[10] Dep't of Air Force Instruction 52-201: Religious Freedom in the Dep't of the Air Force, Sec'y of the Air Force (June 23, 2021), https://tinyurl.com/5adecs59 ("DAFI 52-201").

[11] *Id.* at § 1.3.

include "partial approval, approval with specified conditions, or other means that are less burdensome on the member's religious beliefs."[12] When accommodation is not possible, the Air Force may consider "reassignment, reclassification, or voluntary separation."[13]

### E.    Defendants' Refusal to Grant Religious Exemptions and Retaliation Against Religious Exemption Requests Concerning the COVID-19 Vaccine Mandate

41.    *Lieutenant Colonel Bryan P. Spence.* Plaintiff Bryan P. Spence is a Lieutenant Colonel in the Air Force, currently serving as an F-16 Instructor Pilot at Naval Air Station Joint Reserve Base Fort Worth in Texas, who resides in Aledo, Texas.

42.    Lieutenant Colonel Spence submitted an RAR on October 12, 2021, based on his sincere religious beliefs, which prohibit him from receiving any vaccine which was tested or produced using aborted fetal cell lines.

43.    On October 20, 2021, Lieutenant Colonel Spence's commander informed him that noncompliance with immunization requirements could prevent Lieutenant Colonel Spence from being deployed, receiving assignments, or traveling internationally, and could lead to administrative consequences, such as Letters of Admonishment, Letters of Counseling, and Letters of Reprimand, which, if received, would detrimentally impact Lieutenant Colonel Spence's career. Lieutenant Colonel Spence could also face nonjudicial punishment.

---

[12] *Id.* at § 2.4.

[13] *Id.* at § 2.7.

44.     Lieutenant Colonel Spence may also be placed involuntarily into the Individual Ready Reserves, which would place him in a "no pay-no points" status. This would prevent him from completing his twentieth "Good Year" of military service and prevent him from receiving his retirement despite his 20 years of service in the Air Force.

45.     On December 6, 2021, the Commander of the 457th Fighter Squadron, to which Lieutenant Colonel Spence is attached, submitted a memorandum to the Surgeon General of the Air Force affirming that granting Lieutenant Colonel Spence's RAR would have no impact on his ability to carry out his duties at his home station, and that granting his RAR would also have no impact on his ability to carry out his duties at a deployed location unless a COVID-19 vaccination was mandated for deployment. The Commander affirmed that, in the event that a COVID-19 vaccination were mandated for deployment, Lieutenant Colonel Spence would remain vital to mission accomplishment by remaining at his home station and training the second rotation pilots for deployment. Furthermore, he affirmed that granting Lieutenant Colonel Spence's RAR would improve the overall readiness of the squadron due to a persistent shortage of fighter pilots. He also stated that there were less restrictive means of achieving the government's interest than requiring COVID-19 vaccination, and that those means had been effective for the squadron for the preceding 19 months.

46.     The Air Force initially denied Lieutenant Colonel Spence's RAR on December 1, 2021. Lieutenant Colonel Spence submitted an appeal to the DAF Surgeon General on December 8, 2021. That appeal remains pending, but Lieutenant Colonel

Spence anticipates that a denial could be issued any day. Once it does, administrative consequences will swiftly follow.

47.     Lieutenant Colonel Spence has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant him a religious exemption to the Vaccine Mandate.

48.     *Lieutenant Colonel Tyler W. Stef*. Plaintiff Tyler W. Stef is a Lieutenant Colonel in the Air Force, currently stationed at Sheppard Air Force Base in Wichita Falls, Texas. Lieutenant Colonel Stef was scheduled to complete Pilot Instructor Training at Sheppard, but he has been prohibited from completing that training due to his unvaccinated status. Now, instead of completing training that Lieutenant Colonel Stef has been scheduled to attend for over two years, he is performing scheduling duties which would normally be performed by an officer well below his rank. He does not even have a job title.

49.     Although Lieutenant Colonel Stef received COVID-19 antibody test results, documenting that he has overwhelming antibodies to the COVID-19 virus, he cannot receive an exemption from the Vaccine Mandate based on his natural immunity.

50.     On September 8, 2021, Lieutenant Colonel Stef, who was then stationed at Nellis Air Force Base in Nevada, informed his Commander that he would seek an RAR to the COVID-19 vaccine mandate. His Commander stated he would support and recommend approval of the RAR.

51.     On September 15, 2021, Lieutenant Colonel Stef's commander informed him that noncompliance with immunization requirements could prevent Lieutenant Colonel Spence from being deployed, receiving assignments, or traveling internationally, and could

lead to administrative consequences, such as Letters of Admonishment, Letters of Counseling, and Letters of Reprimand, which, if received, would detrimentally impact Lieutenant Colonel Stef's career. Lieutenant Colonel Stef could also face nonjudicial punishment.

52.     On September 21, 2021, Lieutenant Colonel Stef's commander issued a memorandum for all review authorities determining that there was not a compelling government interest to disapprove Lieutenant Colonel Stef's RAR and that there were less restrictive means available, such as mask wearing and social distancing.

53.     Lieutenant Colonel Stef submitted an RAR on September 22, 2021, based on his sincere religious beliefs, but after traveling to his current duty station at Sheppard Air Force Base in Texas, where he began Pilot Instructor Training at Sheppard to become qualified as an instructor pilot, he learned that the RAR was never processed.

54.     On October 20, 2021, Lieutenant Colonel Stef was removed from Pilot Instructor Training and placed on Administrative Hold due to his unvaccinated status while seeking an exemption.

55.     On November 2, 2021, Lieutenant Colonel Stef submitted his original RAR documents to his commander at Sheppard, and on November 7, 2021, he updated that RAR to include a memo requesting that he be exempt from all vaccines and medicines produced or developed using or containing fetal cell lines or mRNA technology, based on his sincere religious beliefs prohibiting him from receiving vaccines developed using aborted fetal cell lines or mRNA technology, which technology he believes usurps God's creation of the human genome.

56.    On February 9, 2022, the Air Force issued its initial denial of Lieutenant Colonel Stef's RAR. Lieutenant Colonel Stef appealed the denial of his RAR on February 14, 2022, and on March 21, 2022, that appeal was denied.

57.    Defendants have also pursued meritless disciplinary action against Lieutenant Colonel Stef for seeking a medical exemption to the vaccine mandate. Given Defendants' pervasive discriminatory treatment of Lieutenant Colonel Stef and others who sought religious accommodations to the COVID-19 Vaccine Mandate, it appears this disciplinary action was motivated by a desire to take retaliatory action against Lieutenant Colonel Stef for seeking a religious accommodation. On information and belief, Plaintiffs allege that the disciplinary action was so motivated.

58.    Due to a history of severe adverse reactions to vaccines in his family, which has included the hospitalization of two of his daughters, Lieutenant Colonel Stef sought allergy testing from Dr. Alfred Johnson, a doctor whom other servicemembers had used for allergy testing. On January 14, 2022, Lieutenant Colonel Stef received results showing he tested positive for having a reaction to polyethylene and polysorbate, which are ingredients in the COVID-19 vaccines.

59.    Based on those test results, the Air Force approved a 365-day medical exemption. Lieutenant Colonel Stef then scheduled his training to resume on February 8, 2022. But on February 7, 2022, Lieutenant Colonel Stef learned he had been grounded from flying and again placed on an Administrative Hold, with no explanation.

60.    On February 10, 2022, Lieutenant Colonel Stef's commander informed him that he was under a Commander Directed Investigation ("CDI") alleging that he had

18

feigned an allergy to the COVID-19 vaccine for the purpose of avoiding the vaccine mandate. These allegations are completely false. Lieutenant Colonel Stef had met with a licensed physician consulted by other servicemembers and whose services Lieutenant Colonel Stef understands have been covered for Reservists by a DoD insurance network.

61.     In February 2022, Lieutenant Colonel Stef met with a board-certified allergist, Dr. Matt Morgan, and received confirmatory test results again reflecting that he had a reaction to polyethylene and polysorbate. On March 23, 2022, Lieutenant Colonel Stef had a phone interview with an Air Force allergist to determine whether he had an allergy to the COVID-19 vaccines. Lieutenant Colonel Stef informed him about the confirmatory test results from Dr. Morgan, and the Air Force allergist asked him to submit those as part of his Air Force medical records. Lieutenant Colonel Stef did so on or about March 28, 2022.

62.     On March 28, 2022, Lieutenant Colonel Stef was given heavily redacted results of the CDI. Those results stated that he submitted a false official statement by submitting a record of testing from Dr. Alfred Johnson, D.O.; attempted to disobey a lawful order to receive the mandatory COVID-19 vaccine; and committed an overt act by negligently feigning an allergy to components of the COVID-19 vaccine without proper medical testing or approval. Lieutenant Colonel Stef responded to the results of the CDI on April 11, 2022.

63.     On April 7, 2022, a military doctor confirmed that the confirmatory test results performed by Dr. Morgan were accomplished according to standard allergist care. Lieutenant Colonel Stef and the military doctor collectively decided to schedule

confirmatory in-person allergy testing at a military medical facility in San Antonio for May 12 and 13, 2022.

64.     On May 2, 2022, Lieutenant Colonel Stef was given a Letter of Admonishment ("LOA") from his wing commander for seeing Dr. Johnson for allergy testing; the Air Force now claims Dr. Johnson is illegitimate. The LOA claimed Lieutenant Colonel Stef had seen Dr. Johnson in an attempt to disobey the direct order to receive the COVID-19 vaccine.

65.     On May 11, 2022, Lieutenant Colonel Stef took a third allergy test at a San Antonio military facility. While he had responses to polyethylene, the allergist there determined that he was not allergic and recommended he return the following day to receive the Pfizer vaccine with a 4-hour observation period post vaccine administration.

66.     On May 13, 2022, under extreme duress, Lieutenant Colonel Stef informed the San Antonio military allergist that he would consider receiving the Johnson & Johnson vaccine. Doing so would have violated his religious beliefs, but he felt he must do so to continue to provide for his family.

67.     Ultimately, Lieutenant Colonel Stef decided to stay true to his religious convictions and did not receive the COVID-19 vaccine. He faces the threat of ongoing disciplinary action due to that decision.

68.     Lieutenant Colonel Stef has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant him a religious exemption to the Vaccine Mandate.

69.    *Major Ryan Corcoran*. Plaintiff Ryan Corcoran is a Major in the Air Force, currently serving as Individual Mobilization Augmentee to the Deputy Chief Regional Analysis Branch assigned to the Ramstein Air Force Base in Germany.

70.    From March 2020 until most recently, Major Corcoran's job duties included classified intelligence review and providing analysis to his command. His assigned duty station has remained Ramstein Air Force Base, and he has performed his duties remotely from Kelly Air Force Base in San Antonio, Texas in order to support his assigned unit's mission.

71.    On October 24, 2021, Major Corcoran submitted an RAR to be exempted from the COVID-19 vaccine requirement.

72.    In his RAR, Major Corcoran explained his sincerely held religious objection to receiving medication that was developed with the aid of aborted fetal cells. He explained his sincere belief that his body is a temple to the Lord, and that he must refrain from injecting substances into it that might compromise his body.

73.    On March 2, 2022, Major Corcoran received the initial denial of his RAR.

74.    Major Corcoran's commander has indicated that the Air Force will process a Letter of Reprimand against him and that it will be delivered to his file soon. This could have a detrimental effect on both his career and retirement.

75.    Major Corcoran has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant him a religious exemption to the Vaccine Mandate.

76. *Lieutenant Mitchell B. Pike*. Plaintiff Mitchell B. Pike is a First Lieutenant in the Air Force, currently serving as an F-16 Fighter Pilot stationed at Holloman Air Force Base in Alamogordo, New Mexico.

77. After completing his F-16 initial qualification training in September 2022, he will be joining his home reserve unit at Naval Air Station Joint Reserve Base, Fort Worth, Texas for permanent duty.

78. On October 12, 2021, Lieutenant Pike submitted an RAR to be exempted from the Air Force's COVID-19 vaccine requirement. In his RAR, he explained that 1) he is a Christian, 2) abortion conflicts with his sincerely held religious beliefs, 3) he believes his body is a temple of the Holy Spirit, and 4) abstaining from the COVID vaccination prevents evil from entering his life. He is willing to comply with less burdensome and less restrictive protective measures than taking the COVID-19 vaccine. He is open to any number of accommodations, including testing and masking.

79. On October 14, 2021, he was counseled by his commander that noncompliance with immunization requirements would preclude me from attending F-16 initial qualification training. However, nearly three months later, he was able to initially participate in the training due to a 365-day medical exemption he received in January of 2022 for being allergic to two ingredients that are present in the COVID-19 vaccines.

80. As a result, he participated in initial qualification training until April 6, 2022. At that time, his training manager informed him that he had to call the immunology department at Lackland Joint Air Force Base in San Antonio, Texas, about the validity of his medical exemption due to a vaccine allergy. When he spoke with that department, he

was told that the allergy test he received was insufficient and that his medical exemption was being revoked.

81.     Lieutenant Pike received the initial denial of his RAR on January 7, 2022.

82.     Lieutenant Pike received his medical exemption on January 10, 2022, which was three days after his RAR was denied. Because he received his medical exemption around the same time his RAR was denied, his training manager told him that he could enter initial qualification training without submitting his RAR appeal.

83.     After his medical exemption was pulled and he was removed from initial qualification training, Lieutenant Pike submitted his appeal to the Air Force Surgeon General on April 6, 2022.

84.     On May 18, 2022, he received official notice via telephone that his appeal was denied. He was given five days to receive a COVID-19 vaccine.

85.     Because Lieutenant Pike did not get vaccinated by the close of business on Monday, May 23, 2022, he will soon receive adverse administrative action and could receive nonjudicial punishment after that. He expects to receive an LOR for not getting vaccinated because another student at Holloman received an LOR for refusing vaccination. Any administrative action or nonjudicial punishment will undoubtedly have a harmful effect on his career. To start, he has wanted to be an Air Force pilot since he was five years old. His father was an Air Force pilot, and he has always wanted to follow in his footsteps. He is currently three years into his training. However, last year, he had an episode of kidney stones and received a rare waiver that allows him to continue flying. That waiver expires in November of 2024. Every day that he does not train threatens his ability to become a

fighter pilot. If that waiver expires without his training being complete, then he may never be able to complete my path to becoming a fighter pilot. There is no amount of money that can rectify that situation, and the substantial likelihood of that harm increases with each day.

86.     Lieutenant Pike has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant him a religious exemption to the Vaccine Mandate.

87.     *Major Steven R. Haynes*. Plaintiff Steven R. Haynes is a Major in the Air Force, currently serving as an Assistant Flight Commander/Instructor Pilot assigned to the 5th Flying Training Squadron at Vance Air Force Base in Enid, Oklahoma.

88.     On October 12, 2021, Major Haynes submitted an RAR to be exempted from the Air Force's COVID-19 vaccine requirement. In this request, he explained his belief that the COVID-19 vaccines contain unclean things forbidden by God, and he believes that receiving the COVID-19 vaccines would violate his body as a temple of the Holy Spirit.

89.     As a requirement of the RAR process, on September 8, 2021, and October 4, 2021, he was interviewed by the Vance Air Force Base chaplain regarding his sincerely held religious beliefs. On October 4, 2021, the chaplain determined that his religious beliefs were sincere and that his beliefs would be substantially burdened if he was required to take a COVID-19 vaccine.

90.     As an additional requirement of the RAR process, on September 29, 2021, Major Haynes was counseled by Major Alyssa Turner, USAF, NC, Aeromedical Nurse

Practitioner, Vance Air Force Base, about the risks of not being vaccinated and becoming ill with COVID-19.

91.     Currently, Major Haynes expects a Letter of Reprimand any day for not receiving the COVID-19 vaccine. The Letter of Reprimand will likely have a negative impact on his record that is likely to go before a Promotion Board in June for consideration of the rank of Lieutenant Colonel. If Major Haynes were to receive a Letter of Reprimand at this time, an Unfavorable Information File would be established within his official record containing the Letter of Reprimand, and he most likely will not be promoted.

92.     Since declining to receive the vaccine, Major Haynes has been suspended from aviation and his role as an Instructor Pilot.

93.     Major Haynes received the initial denial of his RAR on January 9, 2022.

94.     On January 14, 2022, he submitted his appeal to the DAF Surgeon General. In his appeal, he explained that he has personally recovered from the SARS-COV-2 virus (a mild case with no lasting effects), as evidenced by two serological tests taken one year apart, dated October 20, 2020 and October 12, 2021.

95.     On March 31, 2022, his appeal was denied. On April 15, 2022, Lieutenant Colonel Marcus D. Hutson, Commander 5th Flying Training Squadron, ordered him to receive an initial dose of a COVID-19 vaccine and provide proof of same by April 20, 2022.

96.     As a result of not taking the vaccine, on April 21, 2022, Major Haynes was suspended from aviation service and his flight incentive pay and duties were suspended.

97.    Major Haynes has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant him a religious exemption to the Vaccine Mandate.

98.    *Lieutenant Colonel Andrew Grieb.* Plaintiff Andrew Grieb is a Lieutenant Colonel in the Air Force, currently serving as a T-6 Instructor/Evaluator Pilot in the 5th Flight Training Squadron at Vance Air Force Base in Enid, Oklahoma.

99.    On October 1, 2021, Lieutenant Colonel Grieb submitted an RAR to be exempted from the COVID-19 vaccine requirement. In his RAR, he explained that he is a Christian and a member of the Roman Catholic Church, that he believes his body is a temple to the Holy Spirit, that life is sacred at all stages (starting at conception), and that using a vaccine that was tested using aborted fetal cells is repugnant to his religion.

100.    As a requirement of the RAR process, on October 13, 2021, he was interviewed by the Vance Air Force base chaplain regarding his sincerely held religious beliefs. On October 14, 2021, the chaplain determined that his religious beliefs were sincere and that his beliefs would be substantially burdened if he was required to take a COVID-19 vaccine.

101.    On October 1, 2021, he was counseled by his commander, and his commander's memorandum stated that, "...noncompliance with immunization requirements may adversely affect assignment, international travel, or result in other administrative consequences." "Administrative consequences" include written counseling and administrative separation, which, if received, would detrimentally impact his career.

Noncompliance could also result in nonjudicial punishment under Article 15 of the Uniform Code of Military Justice.

102.     On January 13, 2022, Lieutenant Colonel Grieb received an initial denial Memorandum stating that Lieutenant General Scobee, the Air Force Reserve Command Commander had denied his RAR and that he had until January 15, 2022 to appeal or receive his vaccination within 5 days.

103.     Lieutenant Colonel Grieb appealed the initial denial on January 15, 2022.

104.     After he submitted his appeal, there have been increases in restrictions to the duty he is allowed to perform. As of March 2022, unvaccinated members of his squadron are no longer allowed to perform temporary duty assignments, despite the fact that they have been traveling off station to accomplish necessary training flight operations for the past 24 months without issue.

105.     As of March 22, 2022, extended Active-Duty Orders for unvaccinated reservists have been severely limited in Lieutenant Colonel Grieb's squadron. He is no longer being permitted to serve on additional active-duty tours of over 30 days due to his unvaccinated status, which is discriminatory treatment because orders longer than 30 days include additional special pays and benefits that he will not receive if he performs duty for 29 days.

106.     On April 28, 2022, Lieutenant Colonel Grieb's appeal was denied, and he was given until May 3, 2022, to receive a COVID-19 vaccine.

107.     Without immediate relief, he is facing an imminent issuance of an LOR, which will negatively impact his discharge characterization. The stress, mental, and

emotional harm to his family increases every day. And being forced to choose between tarnishing his nearly two-and-a-half-decade career or violating his sincerely held religious beliefs in order to provide for his family is a harm that cannot be repaired with money.

108.   Lieutenant Colonel Grieb has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant him a religious exemption to the Vaccine Mandate.

109.   *Major Danielle A. Runyan.* Plaintiff Danielle A. Runyan is a Major in the Air Force, currently serving as an Assistant Staff Judge Advocate to 8th Air Force in Louisiana.

110.   Her place of civilian employment is in Texas, and she will become a Texas resident in June 2022.

111.   On October 28, 2021, Major Runyan submitted an RAR to be exempted from the Air Force's COVID-19 vaccine requirement. In her RAR, she explained that she had a sincerely held religious belief that would be substantially burdened by taking the COVID-19 vaccine.

112.   On November 1, 2021, she was counseled by her supervisor that noncompliance with immunization requirements may adversely affect readiness for deployment, assignment, international travel, or result in other administrative consequences. "Administrative consequences" include written counseling and administrative separation, which, if received, would detrimentally impact her career. Noncompliance could also result in nonjudicial punishment under Article 15 of the Uniform Code of Military Justice. This is where the commander offers to issue a service member punishment subject to the member's consent to be tried exclusively by the

commander. As part of this process, alternatively, the member could turn down this offer and elect to be tried by court-martial.

113.   Since Major Runyan received the initial denial of her RAR on April 29, 2022, and submitted her appeal on May 4, 2022, several adverse actions, such as administrative separation and reduced pay, could happen within a matter of days. Pursuant to Department of the Air Force Instruction 52-201, Religious Freedom in the Department of the Air Force, dated June 23, 2021, paragraph 2.10, she expects to receive her appeal denial no later than June 10, 2022. That paragraph specifically states that "[a]ppeal of a disapproved religious accommodation request must be resolved no later than 30 business days following the member's written notification of intent to appeal to the next higher decision authority in the chain of command."

114.   On Friday, April 29, 2022, Major Runyan's supervisor told her that her appeal of the initial denial of a religious exemption was denied. She was also issued an April 29, 2022, order requiring her to either get vaccinated within five days or appeal the initial denial of her RAR. Major Runyan submitted an appeal on May 4, 2022.

115.   Without judicial intervention, Major Runyan's career will be over once she receives administrative action, which could happen in a matter of days. She will lose the opportunity to promote to the next rank and will be a less than desirable option for many high-level follow-on assignments.

116.   Major Runyan has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant her a religious exemption to the Vaccine Mandate.

117.    *Lieutenant Colonel Christopher M. Wu.* Plaintiff Christopher M. Wu is a Lieutenant Colonel in the Air Force, currently serving as Deputy Chief of the Commercial Litigation Field Support Center at Joint Base Andrews in Maryland.

118.    Lieutenant Colonel Wu submitted an RAR on September 28, 2021, based on his sincere religious beliefs, which prohibit him from receiving any of the currently available COVID-19 vaccines because they were tested or produced using aborted fetal cell lines.

119.    On October 5, 2021, Lieutenant Colonel Wu's commander informed him that noncompliance with immunization requirements could prevent Lieutenant Colonel Wu from being deployed, receiving assignments, or traveling internationally, and could lead to administrative consequences, such as administrative separation and nonjudicial punishment, which could result in loss of pay, reprimand, arrest in quarters, and restriction of liberty.

120.    In December 2021, while his RAR was pending, the Air Force notified Lieutenant Colonel Wu that he had been competitively selected to be the Staff Judge Advocate at Patrick Space Force Base, Florida. That assignment was publicized to the Judge Advocate General's Corps when the Judge Advocate assignment list was published on February 17, 2022, and Lieutenant Colonel Wu received official notification of the assignment through the Air Force personnel system on April 5, 2022.

121.    On April 21, 2022, the Air Force canceled Lieutenant Colonel Wu's assignment to be the Staff Judge Advocate at Patrick Space Force Base because of his pending RAR.

122.   The Air Force initially denied Lieutenant Colonel Wu's RAR on April 28, 2022. Lieutenant Colonel Wu submitted an appeal to the DAF Surgeon General on May 5, 2022. That appeal remains pending.

123.   Lieutenant Colonel Wu has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant him a religious exemption to the Vaccine Mandate.

124.   *Captain Alan Sosebee.* Plaintiff Alan Sosebee is a Captain in the Air Force, currently serving as Chief of Training for the 306th Flying Training Group at the United States Air Force Academy in Colorado.

125.   Captain Sosebee submitted an RAR on October 29, 2021, based on his sincere religious beliefs, which prohibit him from receiving any of the currently available COVID-19 vaccines because they were tested or produced using aborted fetal cell lines.

126.   Captain Sosebee received the initial denial of his RAR on March 8, 2021. He appealed that decision on March 11, 2022.

127.   Captain Sosebee was fired from his position in the USAFA/Cadet Wing because of his decision to appeal the RAR denial.

128.   His appeal was denied on April 8, 2022, and he was given five days to receive a COVID-19 vaccine, apply for voluntary separation, or face mandatory disciplinary action, which would include a mandatory discharge process.

129.   Captain Sosebee received a Letter of Reprimand on April 28, 2022, for refusing to receive a COVID-19 vaccine.

130.    Captain Sosebee has been and will continue to be adversely affected both personally and professionally by Defendants' refusal to grant him a religious exemption to the Vaccine Mandate.

## CLASS ACTION ALLEGATIONS

131.    This lawsuit is brought as a class action to redress Defendants' violations of the United States Constitution and the Religious Freedom Restoration Act of 1993 on behalf of the Named Plaintiffs and members of a class of all members of the United States Air Force who are subject to the Air Force's COVID-19 Vaccine Mandate and who have submitted an RAR concerning the Air Force's COVID-19 Vaccine Mandate.

132.    This lawsuit is properly maintained as a class action under Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. Subclasses may be added later as necessary or appropriate.

**A.      Rule 23(a)**

**Numerosity**

128.    The exact number of members of the class is not precisely known, but there are currently over 7,608 members of the United States Air Force who have submitted RARs concerning the Air Force's COVID-19 Vaccine Mandate.[14] Because of the large number of class members, joinder of individual class members is impracticable.

---

[14] Sec'y of A.F. Pub. Affairs, *DAF COVID-19 Statistics – March 2022*, Dep't of A.F. (Mar. 29, 2022), https://www.af.mil/News/Article-Display/Article/2959594/daf-covid-19-statistics-march-2022/.

**Commonality**

129.    Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Named Plaintiffs and the class members. Similar or identical constitutional and statutory violations, policies and practices, and harm are prevalent across the class. The harm sustained by class members flows in each instance from a common nucleus of operative fact: Defendants' policies or practices of across-the-board denial of all RARs, the Air Force's failure to conduct individualized assessments of RARs, and the Air Force's policy or practice of taking adverse action against class members who submit RARs to the COVID-19 Vaccine Mandate. Each instance of harm suffered by Named Plaintiffs and the class members has directly resulted from a common course of illegal conduct. Thus, individual questions, if any, pale in comparison to the numerous common questions of fact and law presented in this lawsuit.

130.    Determination of the following common questions of fact will resolve in one stroke the following issues that are central to the validity of each one of the individual class member's claims:

a.    Whether the Air Force has a policy or practice of denying all RARs concerning the COVID-19 Vaccine Mandate;

b.    Whether the Air Force has a policy or practice of not conducting an individualized assessment of all RARs concerning the COVID-19 Vaccine Mandate;

c.    Whether the Air Force has a policy or practice of taking adverse action against servicemembers who submit RARs concerning the COVID-19 Vaccine Mandate;

d.    Whether the Air Force has a policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit RARs concerning the COVID-19 Vaccine Mandate; and

e.    Whether the Air Force has a policy or practice of taking adverse action against servicemembers who submit RARs concerning the COVID-19 Vaccine Mandate, but not servicemembers who submit a request for a medical accommodation or medical exemption concerning the COVID-19 Vaccine Mandate.

131.    Determination of the following common questions of law will resolve the following legal issues that are central to the validity of each one of the individual class member's claims:

a.    Whether the Air Force's policy or practice of denying substantially all RARs concerning the Air Force's COVID-19 Vaccine Mandate means that members of the Air Force Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

b.    Whether the Air Force's policy or practice of denying substantially all RARs concerning the Air Force's COVID-19 Vaccine Mandate means that members of

the Air Force Class have been and are being deprived of their rights under the Religious Freedom Restoration Act of 1993;

c.   Whether the Air Force's policy or practice of not conducting an individualized assessment of all RARs concerning the Air Force's COVID-19 Vaccine Mandate means that members of the Air Force Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

d.   Whether the Air Force's policy or practice of not conducting an individualized assessment of all RARs concerning the Air Force's COVID-19 Vaccine Mandate means that members of the Air Force Class have been and are being deprived of their rights under the Religious Freedom Restoration Act of 1993;

e.   Whether the Air Force's policy or practice of taking adverse action against servicemembers who submit RARs concerning the COVID-19 Vaccine Mandate means that members of the Air Force Class have been and are being deprived of the Free Exercise of Religion under the First Amendment to the United States Constitution;

f.   Whether the Air Force's policy or practice of taking adverse action against servicemembers who submit RARs concerning the Air Force's COVID-19 Vaccine Mandate means that members of the Air Force Class have been and are being deprived of their rights under the Religious Freedom Restoration Act of 1993;

35

g.   Whether the Air Force's policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit RARs concerning the Air Force's COVID-19 Vaccine Mandate means that members of the Air Force Class have been and are being deprived of the Free Exercise of Religion under the First Amendment to the United States Constitution;

h.   Whether the Air Force's policy or practice of coercing compliance with the Air Force's COVID-19 Vaccine Mandate by threatening or taking adverse action against servicemembers who submit RARs concerning the COVID-19 Vaccine Mandate means that members of the Air Force Class have been and are being deprived of their rights under the Religious Freedom Restoration Act of 1993; and

i.   Whether the Air Force's policy or practice of taking adverse action if a class member submits an RAR concerning the Air Force's COVID-19 Vaccine Mandate, but not if a member submits a request for a medical exemption concerning the Air Force's COVID-19 Vaccine Mandate, means that members of the Air Force Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution.

**Typicality**

132.   The claims alleged by the Named Plaintiffs and the resultant harms are typical of the claims of each member of the proposed class. Typicality exists because all

absent class members have been injured, or are at risk of injury, as a result of the same policies or practices.

**Adequacy**

133.    The Named Plaintiffs will fairly and adequately protect the interests of the class. There are no conflicts of interest between the Named Plaintiffs and the other class members.

134.    The Named Plaintiffs have retained counsel with extensive experience litigating complex class action lawsuits in federal court. Named Plaintiffs' counsel have committed sufficient resources to represent the class. Named Plaintiffs' counsel therefore are well suited to fairly and adequately represent the class's interests.

**B.    Rule 23(b)(2)**

135.    Defendants have acted or failed to act on grounds generally applicable to the class, necessitating declaratory and injunctive relief for the class. Named Plaintiffs' counsel know of no conflicts among the class members.

## CAUSES OF ACTION

### COUNT I

### Violation of Plaintiffs' First Amendment Right to the Free Exercise of Religion
### U.S. Const. amend. I

136.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

137.    The First Amendment's Free Exercise Clause prohibits the government from enacting or enforcing non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

138.    The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

139.    Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently available COVID-19 vaccines.

140.    Defendants' COVID-19 Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs, or suffer adverse employment action and financial harm, among other harms.

136.    The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists and assignments, inability to attend certain military training and education schools, removal from assigned job duties, inability to retire in good standing, loss of special pay, placement in a non-deployable status, involuntary placement into the Individual Ready Reserve without access to military benefits, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

38

141.   Multiple Plaintiffs received a record of individual counseling stating that noncompliance with immunization requirements may adversely affect deployment, assignment, or international travel, or result in other administrative consequences.

142.   Defendants' COVID-19 Vaccine Mandates are not a neutral and generally applicable law or policy. "A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1877 (2021) (quoting *Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990)). Indeed, the creation of such a system "invites the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id.* at 1879. And "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Id.* at 1877.

143.   The policy vests DoD and Air Force decisionmakers with the discretion to give individual exemptions to the mandates for medical and administrative reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID- 19.

144.   The Air Force has granted over 1800 medical and administrative exemptions, but only 81 RARs out of 11,877 requests. Sec'y of  A.F. Pub. Affairs, *DAF COVID-19 Statistics – May 2022*, Dep't of  A.F. (May 17, 2022), https://www.af.mil/News/Article-Display/Article/3018445/daf-covid-19-statistics-may-17-2022/. The Air Force admitted in a preliminary injunction hearing that all granted RARs were given to servicemembers who

were already exiting the Air Force. Kristina Wong, *Exclusive: Air Force Admits All Granted Religious Accommodations for Vax Were for Airmen Already Leaving Service*, Breitbart (May 10, 2022), https://www.breitbart.com/politics/2022/05/10/exclusive-air-force-admits-all-granted-religious-accommodations-for-vax-were-for-airmen-already-leaving-service/.

145.   Plaintiffs are aware of unvaccinated individuals with medical exemptions who have been permitted to carry out the same duties Plaintiffs have not been allowed to perform due to their unvaccinated status and RARs.

146.   Defendants' COVID-19 Vaccine Mandates fail strict scrutiny.

147.   Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine, as shown by: Defendants' across-the-board exemption for vaccine trial participants and grant of over 1800 medical and administrative exemptions; the Air Force's 97% against COVID-19; and Defendants' months-long delay in announcing—and even further delay in implementing—their Vaccine Mandates following the December 2020 availability of COVID-19 vaccines.

148.   Applying Defendants' COVID-19 Vaccine Mandates to Plaintiffs also is not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year and a half during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

149.   Moreover, Defendants possess multiple less restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and

regular testing—all methods that Defendants successfully employed before announcement and enforcement of their Vaccine Mandates. Defendants also now have available a growing list of treatment options that, like the COVID-19 vaccine, substantially reduce severe symptoms that may accompany COVID-19 infection. The government has authorized various treatments for hospitalized and non-hospitalized COVID patients,[15] and has authorized at least one oral antiviral for COVID-19 treatment.[16]

150.    Indeed, if Defendants are truly concerned about COVID-19 affecting its personnel, they would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. *Science Brief: COVID-19 Vaccines and Vaccination,* Ctrs. for Disease Control & Prevention (last updated Sept. 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

151.    Accordingly, Defendants' COVID-19 Vaccine Mandates violate Plaintiffs' rights to the free exercise of religion under the First Amendment.

---

[15] *Possible Treatment Options for COVID-19*, U.S. Dep't of Health & Hum. Servs. (last accessed May 26, 2022), https://combatcovid.hhs.gov/possible-treatment-options-covid-19; *Know Your Treatment Options for COVID-19*, U.S. Food & Drug Admin. (last accessed May 26, 2022), https://www.fda.gov/consumers/consumer-updates/know-your-treatment-options-covid-19.

[16] *See* FDA News Release, *Coronavirus (COVID-19) Update: FDA Authorizes First Oral Antiviral for Treatment of COVID-19*, U.S. Food & Drug Admin. (Dec. 22, 2021), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-first-oral-antiviral-treatment-covid-19.

152.   Because of Defendants' policies and practices, Plaintiffs have suffered and continue to suffer irreparable harm. They are entitled to equitable relief.

153.   Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' illegal policies and practices. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### COUNT II

### Violation of Plaintiffs' Rights under the Religious Freedom Restoration Act
### 42 U.S.C. §§ 2000bb *et seq.*

154.   Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

155.   The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq.* ("RFRA"), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

156.   The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

157.   In *Burwell v. Hobby Lobby Stores*, the Supreme Court held that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." 573 U.S. 682, 710 (2014) (citing *Smith*, 494 U.S. at 877).

158.    The Supreme Court has held repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

159.    RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

160.    DODI 1300.17 explicitly recognizes RFRA protections for Department of Defense members.

161.    Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), a governmental act that places a substantial burden on free exercise violates RFRA.

162.    Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently available COVID-19 vaccines.

163.    Defendants' COVID-19 Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs, or suffer adverse employment action, financial harm, and potential physical harm.

164.    The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money

spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

165.   Multiple Plaintiffs received a record of individual counseling stating that noncompliance with immunization requirements may adversely affect deployment, assignment, international travel, or result in other administrative consequences.

166.   Many Plaintiffs have already suffered and continue to suffer adverse employment actions merely for requesting relief that is protected by RFRA.

167.   Defendants' COVID-19 Vaccine Mandates fail strict scrutiny.

168.   Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine, as shown by: Defendants' across-the-board exemption for vaccine trial participants and grant of over 1800 medical and administrative exemptions; the Air Force's 97% rate of vaccination against COVID-19; and Defendants' months-long delay in announcing—and even further delay in implementing—their Vaccine Mandates following the December 2020 availability of COVID-19 vaccines.

169.   Applying Defendants' COVID-19 Vaccine Mandates to Plaintiffs also is not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year and a half during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

170.   Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing—all methods that Defendants successfully employed before

announcement and enforcement of their Vaccine Mandates. Defendants also now have available a growing list of treatment options that, like the COVID-19 vaccine, substantially reduce severe symptoms that may accompany COVID-19 infection. The government has authorized various treatments for hospitalized and non-hospitalized COVID patients,[17] and has authorized at least one oral antiviral for COVID-19 treatment.[18]

171.    Indeed, if Defendants are truly concerned about COVID-19 affecting its personnel, they would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. *Science Brief: COVID-19 Vaccines and Vaccination,* Ctrs. for Disease Control & Prevention (last updated Sept. 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

172.    Accordingly, Defendants' COVID-19 Vaccine Mandates violate Plaintiffs' rights under RFRA.

173.    Because of Defendants' policies and practices, Plaintiffs have suffered, and continue to suffer, irreparable harm. They are entitled to equitable relief.

---

[17] *Possible Treatment Options for COVID-19*, U.S. Dep't of Health & Hum. Servs. (last accessed May 26, 2022), https://combatcovid.hhs.gov/possible-treatment-options-covid-19; *Know Your Treatment Options for COVID-19,* U.S. Food & Drug Admin. (last accessed May 26, 2022), https://www.fda.gov/consumers/consumer-updates/know-your-treatment-options-covid-19.

[18] *See* FDA News Release, *Coronavirus (COVID-19) Update: FDA Authorizes First Oral Antiviral for Treatment of COVID-19*, U.S. Food & Drug Admin. (Dec. 22, 2021), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-first-oral-antiviral-treatment-covid-19.

174.   Plaintiffs are entitled to a declaration that Defendants violated their rights under RFRA and an injunction against Defendants' illegal policies and practices. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## PRAYER FOR RELIEF

**NOW THEREFORE**, having fully stated their claims against the Defendants, Plaintiffs pray that this Court would award them relief as follows:

a.   Certification of this action as a class action under Federal Rules of Civil Procedure 23(a) and (b);

b.   A declaratory judgment that Defendants' COVID-19 Vaccine Mandate violates Plaintiffs' and other class members' rights under the First Amendment to the United States Constitution;

c.   A declaratory judgment that Defendants' COVID-19 Vaccine Mandate violates Plaintiffs' and other class members' rights under the Religious Freedom Restoration Act;

d.   A temporary restraining order and preliminary injunction against Defendants and their agents, servants, employees, attorneys, and all persons and entities directly or indirectly in active concert or participation with them that prohibits them from making non-receipt of COVID-19 vaccination or submission of a request for a religious accommodation from COVID-19 vaccination a basis for any adverse action against any servicemembers including, but not limited to: administrative counselings, admonishments, or reprimands;

nonjudicial punishment or separation from service; involuntary placement in the Individual Ready Reserve; change in job titles or duties, removal from assignments, or non-issuance of assignments; negative performance reviews, promotion recommendations, or stratifications; giving a less than honorable discharge; recoupment of education or training expenses; determination of medical disqualification or non-deployability; loss or delay of promotion, training opportunities, or retirement; loss of bonuses, pay or benefits; or precluding servicemembers from traveling to and performing duty in person, unless Defendants can prove that failing to take a particular adverse action against the servicemember in question would likely have a real and concrete (not theoretical) adverse impact on a compelling government interest.

e.     Plaintiffs' reasonable attorney's fees, costs, and other costs and disbursements in this action pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988; and

f.     All other relief under law or equity that the Court deems just, proper, and equitable.

May 27, 2022

Respectfully submitted,

*/s/ Cristina M. Squiers*

Kelly J. Shackelford
  Texas Bar No. 18070950
Jeffrey C. Mateer
  Texas Bar No. 13185320
David J. Hacker
  Texas Bar No. 24103323
Michael D. Berry
  Texas Bar No. 24085835
Roger Byron
  Texas Bar No. 24062643
First Liberty Institute
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
rbyron@firstliberty.org

Jordan E. Pratt*
  Florida Bar No. 100958
227 Pennsylvania Ave, SE
Washington, DC 20003
(972) 941-4444
jpratt@firstliberty.org

Gene C. Schaerr*
  D.C. Bar No. 416368
Cristina M. Squiers
  Texas Bar No. 24093764
  *Counsel of Record*
Annika M. Boone* **
  Utah Bar No. 17176
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
gschaerr@schaerr-jaffe.com
csquiers@schaerr-jaffe.com
aboone@schaerr-jaffe.com

* *Pro hac vice* motions forthcoming
** Not yet admitted in D.C. Practicing under the supervision of D.C. attorneys.

*Counsel for Plaintiffs and the Proposed Class*