# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force,<br><br>*Defendants*. | Case No: 4:22-cv-453-O |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

I.    Plaintiffs Are Likely To Succeed on Their Claims that Denial of Their Religious Accommodation Requests Violates the Free Exercise Clause and RFRA. ............................................................................................... 7

    A.    Defendants' COVID-19 vaccine mandates substantially burden Plaintiffs' and prospective class members' sincerely held religious beliefs. ..................................................................................... 8

    B.    The vaccine mandate does not satisfy strict scrutiny. ........................... 9

        1.    Defendants cannot demonstrate a compelling interest that justifies burdening Plaintiffs' and prospective class members' religious beliefs and practices. ................................................ 9

        2.    Defendants' adverse actions against Plaintiffs and class members are not the least restrictive means of achieving their purported interest. ................................................................................. 14

    C.    The vaccine mandate is neither neutral nor generally applicable. ........ 16

II.    The Remaining Preliminary Injunction Factors Favor Relief. ....................... 19

    A.    Plaintiffs are suffering irreparable injury. ............................................. 19

    B.    The balance of harms and the public interest in protecting constitutional and statutory rights weigh in favor of an injunction. ...................................................................................... 22

III.    The Requested Injunction Does Not Prevent Defendants from Making Operational Decisions. ................................................................................ 23

CONCLUSION ...................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin.,
United States Dep't of Lab.*, 17 F.4th 604 (5th Cir. 2021).....................................4, 11, 21

*Burwell v. Hobby Lobby*, 573 U.S. 682 (2014) ................................................8, 9, 10, 14

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009).....................................................7

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993)....................................................................................*passim*

*Elrod v. Burns*, 427 U.S. 347 (1976) .....................................................................20

*Fulton v. City of Phila.*, 141 S. Ct. 1868 (2021).............................................3, 12, 16, 18

*Gonzalez v. O Centro Espírita Beneficente Uniao do Vegetal,*
546 U.S. 418 (2006)...............................................................................................9, 10

*Jackson Women's Health Organization v. Currier,*
760 F.3d 448 (5th Cir. 2014) ................................................................................4, 23

*Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012) .................20

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) ................3, 17, 20, 23

*Sambrano v. United Airlines, Inc.,* No. 21-11159, 2022 WL 486610
(5th Cir. Feb. 17, 2022)...........................................................................................4, 21

*Sherbert v. Verner*, 374 U.S. 398 (1963).......................................................................8

*Singh v. McHugh*, 185 F. Supp. 3d 201 (D.D.C. 2016)....................................................18

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021)........................................................3, 14, 15, 17

*Thomas v. Rev. Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981)....................................8

*U.S. Navy SEALs 1-26 v. Biden*, No. 4:21-cv-01236-O, 2022 WL 34443
(N.D. Tex. Jan. 3, 2022) ........................................................................................*passim*

**Rules**

*Air Force Policy Directive 52-2: Accommodation of Religious Practices in
the Air Force*, Sec'y of the Air Force (July 28, 2020)....................................................24

Frank Kendall, *Mandatory Coronavirus Disease 2019 Vaccination of
Department of the Air Force Military Members*, Sec'y of Air Force (Sept.
3, 2021) ..............................................................................................................5, 10

Lloyd Austin, *Mandatory Coronavirus Disease 2019 Vaccination of
Department of Defense Service Members*, Dep't of Def. (Aug. 24, 2021)................5, 10

**Other Authorities**

*Emergency Use Authorization (EUA) for an Unapproved Product:*
  *Review Memorandum*, U.S. Food & Drug Admin. (Dec. 11, 2020) .........................4, 13

*Emergency Use Authorization (EUA) for an Unapproved Product:*
  *Review Memorandum*, U.S. Food & Drug Admin. (Dec. 18, 2020) .........................4, 13

*Emergency Use Authorization (EUA) for an Unapproved Product:*
  *Review Memorandum*, U.S. Food & Drug Admin. (Feb. 27, 2021).........................4, 13

FDA News Release, *Coronavirus (COVID-19) Update: FDA Authorizes*
  *First Oral Antiviral for Treatment of COVID-19*,
  U.S. Food & Drug Admin. (Dec. 22, 2021) .................................................................. 13

*Know Your Treatment Options for COVID-19*, U.S. Food & Drug Admin. ..................... 13

*Possible Treatment Options for COVID-19*, U.S. Dep't of Health & Hum.
  Servs............................................................................................................................ 13

Secretary of the Air Force Public Affairs, *DAF COVID-19 Statistics –*
  *May 2022*, DEP'T OF THE AIR FORCE (May 17, 2022)...........................................*passim*

Kristina Wong, *Exclusive: Air Force Admits All Granted Religious*
  *Accommodations for Vax Were for Airmen Already Leaving Service*,
  BREITBART (May 10, 2022) ............................................................................................ 6

## INTRODUCTION

Plaintiffs are nine servicemembers in the United States Air Force. They include four Lieutenant Colonels, three Majors, one Captain, and one First Lieutenant. Their service—ranging in length from three to over twenty years—has been outstanding. They have earned Combat Action Medals, Meritorious Service Medals, Top Gun awards, Defense Meritorious Medals, Air Medals with 4 Oak Leaf Clusters, Commendation Medals, and a host of other awards and decorations. And until Defendants forced them to choose between their Air Force careers and their faith, the record of each was unblemished.

Defendants are attempting to coerce Plaintiffs, and others like them, to receive a COVID-19 vaccination. But Plaintiffs cannot receive any of the FDA-approved vaccines without violating their sincere religious beliefs. Accordingly, each Plaintiff submitted a Religious Accommodation Request ("RAR"). But instead of considering less restrictive means of mitigating the risks of COVID-19, the Air Force has denied or is in the process of denying each request. In many instances, they have punished Plaintiffs for the mere act of making the request: Plaintiffs have been removed from training, grounded from flight, and lost promised promotions, even before their RAR is formally denied. Once denials are issued, the Air Force swiftly begins the process of administrative consequences and nonjudicial punishment, which will ultimately lead to Plaintiffs' involuntary separation from the Air Force. Defendants' message is clear: Get a jab, or lose your job.

Airmen who sought medical or administrative exemptions to Defendants' vaccine mandate received no such message. The Air Force has approved over 1,800 medical and

administrative accommodations.[1] Plaintiffs are personally aware of unvaccinated Airmen in their units with the same duties as Plaintiffs who have faced no adverse action whatsoever due to their medical exemptions. *See, e.g.*, Grieb Aff. ¶¶ 31–32 (App.111); Haynes Aff. ¶ 32 (App.100); Spence Aff. ¶ 33 (App.47). And in one instance, the Air Force has allowed an unvaccinated pilot with an expired medical exemption to continue flying on a team responsible for preparing for President Biden's visits abroad. Grieb Aff. ¶¶ 31–32 (App.111); Haynes Aff. ¶ 32 (App.100). Defendants have thus made it very clear that they *can* accommodate unvaccinated Airmen without jeopardizing mission readiness or the health of the Air Force. They simply refuse to do so when an Airman is unvaccinated for religious reasons.

Because of the Air Force's violations of the religious rights of thousands of Airmen, Plaintiffs have brought this class action lawsuit on behalf of themselves and all others similarly situated.  And, in this motion, Plaintiffs ask this Court to issue a temporary restraining order and a preliminary injunction enjoining Defendants from enforcing the vaccine mandate against them and taking adverse action based on their religious accommodation requests.

Plaintiffs have clearly met the requirements for such an injunction. First, they are likely to prevail on the merits: Neither the First Amendment nor the Religious Freedom Restoration Act ("RFRA") can brook the Air Force's blatant double standard, which

---

[1] Secretary of the Air Force Public Affairs, *DAF COVID-19 Statistics – May 2022*, DEP'T OF THE AIR FORCE (May 17, 2022), https://www.af.mil/News/Article-Display/Article/3018445/daf-covid-19-statistics-may-17-2022/.

penalizes Airmen who are unvaccinated due to their religious beliefs, but not Airmen who are unvaccinated for medical or administrative reasons. The Air Force's system of individualized exemptions also renders its vaccine mandate not neutral and generally applicable. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021). The mandate must therefore undergo strict scrutiny under both the Free Exercise Clause and RFRA. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993).

The mandate cannot survive that scrutiny. It places a substantial burden on Plaintiffs' religious beliefs by forcing them to choose between their consciences and their careers. The Air Force has no compelling interest in vaccinating Plaintiffs and prospective class members, who comprise only 3% of the Air Force. Indeed, the Air Force's decision to exempt other comparably situated Airmen from the mandate shows it lacks a compelling interest in forcing these particular Airmen to receive a vaccine in violation of their religious beliefs. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Likewise, the same precautions that the Air Force requires of medically and administratively exempt servicemembers would suffice to achieve any interest the government does have. Defendants' decision to instead pursue punitive action against Plaintiffs and prospective class members is not the least restrictive means they could have chosen. Plaintiffs will succeed on their First Amendment and RFRA claims.

The remaining factors necessary to obtain a temporary restraining order and a preliminary injunction are also present. The deprivation of Plaintiffs' constitutional rights is *per se* irreparable injury. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). So too is the crisis of conscience Defendants have created. *BST Holdings, L.L.C.*

*v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 618 (5th Cir. 2021); *Sambrano v. United Airlines, Inc.,* No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022). The injunction will serve the public interest by preventing constitutional deprivations. *Jackson Women's Health Organization v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014); *U.S. Navy SEALs 1-26 v. Biden*, No. 4:21-cv-01236-O, 2022 WL 34443, at *13 (N.D. Tex. Jan. 3, 2022). And the harm to Plaintiffs from the loss of their religious liberty and their careers outweighs any conceivable harm to the Air Force, which already has a 97% vaccination rate.[2]

Plaintiffs respectfully ask this Court to grant the temporary restraining order and the preliminary injunction.

## FACTS

On July 29, 2021—several months after COVID-19 vaccines became widely available[3]—President Biden announced that he would direct the Department of Defense ("DoD") to add the COVID-19 vaccine to its list of required immunizations for military service members. Less than a month later, on August 24, Secretary of Defense Lloyd J.

---

[2] Secretary of the Air Force Public Affairs, *supra* note 1.

[3] *Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum*, U.S. Food & Drug Admin. (Dec. 11, 2020), https://www.fda.gov/media/144416/download ("Pfizer Vaccine Emergency Authorization"); *Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum*, U.S. Food & Drug Admin. (Dec. 18, 2020), https://www.fda.gov/media/144673/download ("Moderna Vaccine Emergency Authorization"); *Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum*, U.S. Food & Drug Admin. (Feb. 27, 2021), https://www.fda.gov/media/146338/download ("Johnson & Johnson Vaccine Emergency Authorization").

Austin issued a memorandum directing DoD to vaccinate all active-duty and reserve service members against COVID-19. The memo made clear that service members who have contracted and recovered from COVID-19 must still receive a vaccination.[4] But the memo also exempted from the mandate all service members who are currently participating in a COVID-19 clinical trial—even those given a placebo.[5] And the memo specified that the mandate "will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy."[6]

On September 3, 2021, Secretary of the Air Force Frank Kendall issued a memorandum to all Air Force Commanders, entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members."[7] This document imposed a vaccination mandate for Air Force active-duty and reserve personnel, directing them to become vaccinated within 90 and 120 days, respectively. The mandate reiterated that "[i]ndividuals with previous COVID-19 infection or positive serology are not considered fully vaccinated and are not exempt."

After Defendant Kendall's memorandum was issued, Plaintiffs' commanders began ordering them to receive the COVID-19 vaccine. Each Plaintiff sought a religious

---

[4] Lloyd Austin, *Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members*, Dep't of Def. (Aug. 24, 2021), https://tinyurl.com/5xtab3en. (App.1).

[5] *Id.*

[6] *Id.*

[7] Frank Kendall, *Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members*, Sec'y of Air Force (Sept. 3, 2021), https://tinyurl.com/2p83e9z6 (App.5–6).

5

accommodation request ("RAR") to the vaccine mandate based on their sincerely held religious beliefs. Each has received at least an initial denial of their RAR, and several have also received a denial of their appeal. *See* Corcoran Aff. ¶ 22 (App.77); Grieb Aff. ¶¶ 22, 34 (App.108, App.112); Haynes Aff. ¶¶ 22, 26 (App.95–96; Pike Aff. ¶¶ 18, 21 (App.85–86); Runyan Aff. ¶ 19 (App.121); Sosebee Aff. ¶¶ 22, 26 (App.145–46); Spence Aff. ¶ 24 (App.45); Stef Aff. ¶¶ 44–45 (App.61); Wu Aff. ¶ 25 (App.133–34). Plaintiffs who have pending appeals of the denial of their RARs will certainly receive those denials soon: to date, the Air Force has granted only 81 RARs, out of more than 10,000 requests.[8] As the government admitted during a recent preliminary injunction hearing, those religious exemptions were granted to Airmen who were already leaving the service, not to those who wish to continue serving.[9] In short, the Air Force's accommodations process is "theater." *See SEALs 1-26*, 2022 WL 34443, at *1.

Defendants have not even waited for the conclusion of the RAR process before taking adverse actions against religious requesters. Plaintiffs have faced myriad forms of discrimination, including losing promised promotions, being prohibited from fulfilling their duties, grounded from flight, barred from long-scheduled training opportunities, and denied pay. *See, e.g.*, Wu Aff. ¶ 24 (App.133); Stef Aff. ¶ 9 (App.40); Grieb Aff. ¶ 40 (App.113). Those Plaintiffs who have received final denials quickly found themselves

---

[8] Secretary of the Air Force Public Affairs, *supra* note 1.

[9] Kristina Wong, *Exclusive: Air Force Admits All Granted Religious Accommodations for Vax Were for Airmen Already Leaving Service*, BREITBART (May 10, 2022), https://www.breitbart.com/politics/2022/05/10/exclusive-air-force-admits-all-granted-religious-accommodations-for-vax-were-for-airmen-already-leaving-service/.

subject to progressive disciplinary action, including issuance of Letters of Counseling, Letters of Admonishment, and Letters of Reprimand. *See, e.g.*, Sosebee Aff. ¶ 29 (App.147–48); Stef Aff. ¶ 72 (App.68). Now, those Plaintiffs await the next step of their nonjudicial punishment, never knowing what day will bring further discipline. For some, the next step could very well be a Show Cause Order, which would initiate separation proceedings from the Air Force. Stef Aff. ¶ 72 (App.68). Without immediate relief from this Court, their service to this country will soon be over because they stood by their religious convictions.

## LEGAL STANDARD

The movant seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Plaintiffs satisfy each of these factors.

## ARGUMENT

**I.     Plaintiffs Are Likely To Succeed on Their Claims that Denial of Their Religious Accommodation Requests Violates the Free Exercise Clause and RFRA.**

As to likelihood of success: There is no question that Plaintiffs satisfy the preliminary requirement for both a RFRA and a free-exercise claim, i.e., that the Air Force's vaccine policy forces them to choose between their careers and their religious beliefs, and therefore substantially burdens their religious beliefs.  It's also clear that the

Air Force does not have a compelling interest in vaccinating these particular Plaintiffs, and that the vaccine mandate is not the least restrictive means of pursuing its interest in protecting its members from COVID infections. And those three conclusions are sufficient to establish a RFRA violation. *See, e.g., Burwell v. Hobby Lobby*, 573 U.S. 682, 726 (2014). In addition, Plaintiffs are likely to succeed on their claim under the Free Exercise Clause because the vaccine mandate is neither neutral nor generally applicable, triggering the same strict scrutiny requirement Defendants fail to meet under RFRA.

### A. Defendants' COVID-19 vaccine mandates substantially burden Plaintiffs' and prospective class members' sincerely held religious beliefs.

Defendants' coercive vaccine mandate places a substantial burden on the sincerely held religious beliefs of Plaintiffs and those similarly situated. Defendants' policies and practices "put substantial pressure" on Airmen and Guardians who object to COVID-19 vaccination on religious grounds to "modify [their] behavior and to violate [their] beliefs." *See Thomas v. Rev. Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). As this Court has already recognized, a substantial burden is especially evident "when the government imposes a choice between one's job and one's religious belief." *U.S. Navy SEALs 1-26 v. Biden*, No. 4:21-cv-01236-O, 2022 WL 34443, at *9 (N.D. Tex. Jan. 3, 2022) (citing *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)). Just like the Plaintiffs in the *SEALs* case, Plaintiffs here "must decide whether to lose their livelihoods or violate sincerely held religious beliefs. Because they will not compromise these religious beliefs, Plaintiffs have been threatened with separation from the military and other disciplinary action." *Id.* The burden imposed by such a choice is substantial.

8

**B. The vaccine mandate does not satisfy strict scrutiny.**

As the Supreme Court has held, "[a] law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546. This is no such rare case. Defendants' actions, particularly with regard to medical exemption requests, plainly evidence that their interest in vaccinating Plaintiffs and prospective class members is not compelling and that their punitive disciplinary measures are not the least restrictive means of achieving any legitimate interest they may have.

**1. Defendants cannot demonstrate a compelling interest that justifies burdening Plaintiffs' and prospective class members' religious beliefs and practices.**

No compelling interest justifies the substantial burden Defendants have placed on religious exercise. The compelling interest prong presents a "focused" inquiry: the government must "demonstrate that the compelling interest is satisfied through application of the challenged law 'to the person'—to the particular claimant whose sincere exercise of religion is being substantially burdened." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014) (quoting *Gonzalez v. O Centro Espírita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006)). Courts must "look beyond broadly formulated interests" and "scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Id.* at 726–27 (cleaned up) (quoting *O Centro,* 546 U.S. at 431).

Thus, it will not do for Defendants' to simply assert "a broadly formulated interest in 'national security.'" *SEALs*, 2022 WL 3443, at *10. "They must articulate a compelling

interest in vaccinating" Plaintiffs and prospective class members—approximately 3% of Air Force members. *Id.*[10] And in evaluating that purported compelling interest, this Court must "look to the marginal interest in enforcing the [vaccine] mandate in these cases." *Hobby Lobby*, 573 U.S. at 727 (citing *O Centro*, 546 U.S. at 431). Defendants cannot carry their burden under that test for several reasons.

First, as this Court has already recognized, the underinclusivenss of the military's COVID-19 vaccine mandate undermines Defendants' purported compelling interest. *See SEALs*, 2022 WL 3443, at *10. The Supreme Court has held that:

> Where government restricts only conduct protected by the First Amendment and fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort, the interest given in justification of the restriction is not compelling. It is established in our strict scrutiny jurisprudence that a law cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited.

*Lukumi*, 508 U.S. at 546–47 (cleaned up).

If Defendants are truly concerned about the spread of COVID-19 through military ranks, they have left a shocking amount of "appreciable damage" unprohibited. Here, as in *SEALs*, the Air Force "is willing to grant exemptions for non-religious reasons." *SEALs, 2022 WL 34443, at *10.* And here, as there, "[i]ts mandate includes carveouts for those participating in clinical trials and those with medical contraindications and allergies to vaccines." *See id.*[11]

---

[10] *See* Secretary of the Air Force Public Affairs, *supra* note 1.

[11] *See also* Austin, *supra* note 4 (App.2–3); Kendall, *supra* note 7 (App.5–6).

The Air Force will even treat *the same Airmen* differently depending on whether a medical or a religious accommodation is at issue. Plaintiffs Pike and Stef were permitted to schedule and/or attend flight training while they had medical accommodations in place, but after those accommodations were revoked, they were grounded from flight. Pike Aff. ¶ 15–20 (App.85–86); Stef Aff. ¶¶ 40–43 (App.60). Their vaccination status did not change, and consequently neither did their susceptibility to COVID-19. The only thing that changed was that the basis for their claim was religious, rather than secular.

Plaintiffs are also aware of unvaccinated individuals with their same duties, sometimes even in their same units, who have not faced adverse action, simply because their accommodation requests were medical, rather than religious. Grieb Aff. ¶¶ 31–32 (App.111–12); Haynes Aff. ¶ 32 (App.100); Spence Aff. ¶ 33 (App.47). In one instance, an unvaccinated Airman has been permitted to continue flying *even though his temporary medical exemption has expired.* Grieb Aff. ¶ 32 (App.111–12). That Airman has been permitted to travel on training missions from which Plaintiff Haynes has been restricted because of his religious accommodation request and has also been permitted to travel on the Presidential Advance Team, which is responsible for coordinating with the Secret Service in preparation for Air Force One movements supporting the President's travel. Grieb Aff. ¶¶ 31–32 (App.111–12); Haynes Aff. ¶ 32 (App.100).

Such underinclusiveness, as this Court has pointed out, "is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact 'compelling.'" *SEALs*, 2022 WL 34443, at *10 (quoting *BST Holdings, LLC v. Occupational Safety & Health Admin.*, 17 F.4th 604, 616 (5th Cir. 2021). Indeed, as the

Supreme Court has noted, "[t]he creation of a system of exceptions" undermines Defendants' contention their vaccine mandate "can brook no departures." *Fulton*, 141 S. Ct. at 1882. Where it is "only conduct motivated by religious conviction that bears the weight of the governmental restrictions" there "can be no serious claim that those interests justify the [mandate.]" *Lukumi*, 508 U.S. at 547.

Furthermore, to quote again from this Court's *SEALs* opinion, "[e]ven if Defendants have a broad compelling interest in widespread vaccination of its force, they have achieved this goal without the participation" of Plaintiffs and prospective class members. *SEALs*, 2022 WL 3443, at *10. At least 96.9% of all active-duty Air Force servicemembers have been fully vaccinated.[12] "The remaining [3]% is unlikely to undermine the [Air Force's] efforts." *See SEALs*, 2022 WL 3443, at *10.

Additionally, the Air Force has not conducted the "individualized assessment" necessary to demonstrate a compelling interest in vaccinating these particular Plaintiffs. *See id.* Like the Plaintiffs in the *SEALs* case, "[b]y all accounts, Plaintiffs have safely carried out their jobs during the pandemic." *See id.* Before the vaccine mandate, at least three Plaintiffs "conducted large-scale trainings and led courses without incident." *See id.*; Stef Aff. ¶ 8 (App.52); Haynes Aff. ¶ 19 (App.95); Sosebee Aff. ¶¶ 7, 20 (App.142, App.145). At least three have successfully teleworked for some of their duties. Runyan Aff. ¶ 20 (App.121); Sosebee Aff. ¶ 13 (App.143); Corcoran Aff. ¶ 20 (App.77). And at least two have successfully deployed or gone on temporary duty location trips. Spence Aff.

---

[12] Secretary of the Air Force Public Affairs, *supra* note 1.

¶ 22 (App.43–44); Sosebee Aff. ¶ 13 (App.143–44). And at least one has safely performed his duties without any restrictions. Wu Aff. ¶ 14 (App.130).

That Defendants waited over seven months before issuing their mandate further underscores their lack of a compelling interest in vaccinating Plaintiffs.[13] If vaccinating or involuntarily separating religious requesters is truly critical to military effectiveness, Defendants' delay in pursuing that course of action is puzzling.

Finally, as in *SEALs*, "Plaintiffs present a lower risk of infection and transmission than in the earlier days of the pandemic." *See SEALs*, 2022 WL 34443, at *10. "Several Plaintiffs have tested positive for antibodies, showing the presence of natural immunity." *Id.*; Corcoran Aff. ¶ 32 (App.79–80); Haynes Aff. ¶ 27 (App.96–97); Runyan Aff. ¶ 26 (App.123); Stef Aff. ¶ 46 (App.61–62); Grieb Aff. ¶ 16 (App.106–07). "With a [97]% vaccination rate, [the Air Force's] herd immunity is at an all-time high." *See SEALs*, 2022 WL 34443, at *10. "COVID-19 treatments are becoming increasingly effective at reducing hospitalization and death."[14] *Id.* Indeed, the Air Force's own statistics make this effectiveness evident: As of May 16, of the 98,372 COVID cases in the Air Force's military

---

[13] *See* Pfizer Vaccine Emergency Authorization, *supra* note 3; Moderna Vaccine Emergency Authorization, *supra* note 3; Johnson & Johnson Vaccine Emergency Authorization, *supra* note 3.

[14] Additionally, new treatments are available to treat COVID-19, mitigating the effects of virus transmission. *See, e.g.*, FDA News Release, *Coronavirus (COVID-19) Update: FDA Authorizes First Oral Antiviral for Treatment of COVID-19*, U.S. Food & Drug Admin. (Dec. 22, 2021), https://www.fda.gov/news-events/press-announcements/coronaviruscovid-19-update-fda-authorizes-first-oral-antiviral-treatment-covid-19; *Possible Treatment Options for COVID-19*, U.S. Dep't of Health & Hum. Servs. (last accessed May 26, 2022), https://combatcovid.hhs.gov/possible-treatment-options-covid-19.

force (including both Active and Reserve components), only 0.026% of cases resulted in hospitalization and only 0.016% of cases resulted in death.[15] While any death is, of course, tragic, lightning-strike rarities cannot justify trampling civil liberties.

In short, the Air Force cannot demonstrate that it has a compelling interest in forcing *these* Plaintiffs to be vaccinated in violation of their sincerely held beliefs. That reality, combined with the substantial burden the Air Force's mandate creates, is sufficient to establish Plaintiffs' RFRA claim. *See Hobby Lobby*, 573 U.S. at 727.

### 2. Defendants' adverse actions against Plaintiffs and class members are not the least restrictive means of achieving their purported interest.

Even if Defendants could establish that they have a compelling interest in vaccinating these particular Plaintiffs and other religious requesters, applying their vaccine mandate to Plaintiffs is not the least restrictive means of achieving any such interest. As discussed above, the vaccine mandate is substantially underinclusive. And, as the Supreme Court has put it, where "the proffered objectives are not pursued with respect to analogous non-religious conduct, and those interests could be achieved by narrower [precautions] that burdened religion to a far lesser degree," government action does not survive strict scrutiny. *See Lukumi*, 508 U.S. at 546. Again, nothing about the COVID-19 virus changes the constitutional analysis: The Supreme Court has struck down government action when defendants could not "show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Tandon v. Newsom*, 141 S. Ct.

---

[15] Secretary of the Air Force Public Affairs, *supra* note 1.

1294, 1296–97 (2021). Defendants' treatment of medical exemptions thus shows the adverse actions they have pursued against religious requesters are not the least restrictive means of achieving any government interest.

This conclusion is buttressed by the principle, articulated by the Supreme Court in *Tandon,* that courts must presume "precautions that suffice for other activities suffice for religious exercise too." *Id.* at 1297. Here, Defendants cannot show that Airmen who are unvaccinated for religious reasons pose any greater threat to military readiness than Airmen who are unvaccinated for medical reasons; viruses, unlike Defendants, do not discriminate between secular and religious motivations. Hence the same precautions Defendants have taken for servicemembers with medical exemptions would suffice for servicemembers who have requested religious accommodations. For Airmen with medical exemptions, those precautions have not included disciplinary action, being removed from their jobs, or involuntary separation from the military. *See, e.g.,* Haynes Aff. ¶ 32 (App.100); Grieb Aff. ¶ 31–32 (App.111–12); Spence Aff. ¶ 30 (App.46). Treating Plaintiffs and prospective class members in this manner is not the least restrictive means of achieving the government's interests.

Furthermore, Plaintiffs' experience over eighteen months during the height of the pandemic—doing their jobs with other precautions in place—shows that there are less restrictive means available than the discriminatory course Defendants have taken against religious requesters. *See, e.g.*, Spence Aff. ¶ 22 (App.43–44) (commander says Spence could work by wearing a mask, social distancing, and periodically testing); Sosebee Aff. ¶ 13 (App.143) (social distancing, masks, telework, selective scheduling); Corcoran Aff. ¶

15

20 (App.77) (telework); Runyan Aff. ¶ 20 (App.121) (telework). There simply is no need to remove Plaintiffs from their job responsibilities, issue disciplinary action, revoke promotions, and ultimately force Plaintiffs to separate from the military. The vaccine mandate is not the least restrictive means of achieving any government interest, and on that basis too it should be enjoined as a violation of RFRA.

### C. The vaccine mandate is neither neutral nor generally applicable.

Defendants' vaccine mandate is not neutral and generally applicable and is therefore also subject to strict scrutiny under the Free Exercise Clause. *Lukumi*, 508 U.S. at 543. As the Supreme Court has recognized, a law "is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 141 S. Ct. at 1877 (cleaned up). This mandate, like the Navy vaccine mandate this Court has already enjoined, "accept[s] individual applications for exemptions," and thus "invites an individualized assessment of the reasons why a servicemember is not vaccinated." *See SEALs*, 2022 WL 34443, at *11. "Consequently, favoritism is built into the mandate." *Id.*

Absent a compelling reason—and Defendants do not have one for reasons already explained—the military cannot choose to extend such favoritism only to those who seek accommodation for medical and other secular reasons, and to deny equal munificence to cases of "religious hardship." *See Fulton*, 141 S. Ct. at 1877.  As the Supreme Court held in *Fulton,* a "law … lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar

way." *Id.* There is no COVID-19 exception to this principle: "Whenever" government regulations "treat *any* comparable secular activity more favorably than religious exercise," those regulations must undergo strict scrutiny. *Tandon*, 141 S. Ct. at 1296 (emphasis in original). *Accord Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 74 (Kavanaugh, J., concurring) (noting that COVID-19 restrictions were discriminatory where they treated religious activity on less favorable terms than secular activity).

Such is the case here. The Air Force treats "comparable secular activity"—by granting exemptions for medical reasons or participation in a clinical trial—favorably, while discriminating against religious activity. Medical accommodation requests are clearly "comparable" to religious accommodation requests. As the Supreme Court has held, "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 141 S. Ct. at 1296 (citing *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67). "Comparability is concerned with the risks various activities pose, not the reasons why" an accommodation is sought. *Id.* Unlike Defendants, the COVID-19 virus does not stop to inquire whether an individual is unvaccinated for medical or for religious reasons. Plaintiffs are aware of no CDC guidance suggesting that a pilot who is unvaccinated because his body rejects a vaccine's polyethylene is less susceptible to infection than a pilot who is unvaccinated because his conscience rejects a vaccine's connection to abortion. Defendants' choice to accommodate those with secular objections while pursuing disciplinary actions against those with religious objections is plain discrimination.

Defendants may claim that "governments should enjoy greater leeway under the Free Exercise Clause when setting rules for [members of the military] than when regulating the general public." *See Fulton*, 141 S. Ct. at 1878. They may further argue that, when individuals enter military service, "they accept certain restrictions on their freedom as part of the deal." *Id.* But the total abdication of First Amendment and RFRA rights—rights these Airmen defend for others, sometimes at risk of life and limb—was not part of the deal. As the Court put it in *Fulton,* "principles of neutrality and general applicability still constrain the government" in its capacity as manager of the military. *See id.*[16] In any event, "[n]o matter the level of deference" this Court extends to Defendants, "the inclusion of a formal system of entirely discretionary exceptions" renders the vaccine mandate not generally applicable. *Fulton*, 141 S. Ct. at 1878.

Defendants may also attempt to justify their religious discrimination by contrasting the number of medical and religious requests. But this Court has already wisely rejected that argument: "an influx of religious accommodation requests is not a valid reason to deny First Amendment rights. No matter how small the number of secular exemptions by comparison, any favorable treatment . . . defeats neutrality." *SEALs*, 2022 WL 34443, at *11. And Defendants in this case have granted far more medical accommodations than the

---

[16] Accordingly, both this Court and other courts have recognized that military members are still entitled to the protections of RFRA. *See, e.g.*, SEALs, 2022 WL 34443, at *9 ("RFRA extends to the military, because under the text of the statute, 'government' includes any 'branch, department, agency … of the United States.'"). Courts have also recognized that application of RFRA to the military is consistent with congressional intent. *Singh v. McHugh*, 185 F. Supp. 3d 201, 217–18 (D.D.C. 2016).

Court considered in the *SEALs* case.[17] Defendants cannot escape the strict scrutiny mandated by their favorable treatment of secular accommodation requests over religious accommodation requests.

## II.   The Remaining Preliminary Injunction Factors Favor Relief.

Each of the remaining preliminary injunction factors is also satisfied here: irreparable injury, the public interest, and balance of the harms.

### A.   Plaintiffs are suffering irreparable injury.

It is imperative that this Court speedily issue a temporary restraining order to stop the ongoing harms Plaintiffs face. Plaintiffs have already suffered myriad harms from Defendants' vaccine mandate: they have been issued Letters of Counseling, Admonishment, and Reprimand, each of which goes in their personnel file and essentially guarantees they will not be promoted. Stef Aff. ¶ 72 (App.68–69); Sosebee Aff. ¶ 29 (App.147–48). One lost a promised promotion because of his RAR even before that RAR was denied. Wu Aff. ¶ 24 (App.133). They face the prospect of receiving a final denial of their RAR appeal while on duty, which would curtail their duty and prevent them from having a "good year" and thus cause them to lose the points and time necessary to be eligible for promotion and retirement in the standard course. Runyan Aff. ¶¶ 18–19

---

[17] *Compare* Secretary of the Air Force Public Affairs, *supra* note 1 (stating that the Air Force had granted 825 medical exemptions as of May 16, 2022) *with SEALs*, 2022 WL 34443 at *11 (stating that there were seven permanent medical exemptions for all Navy and Reserve personnel). Additionally, whether the Air Force's medical exemptions are temporary or permanent also should not change this Court's analysis, because the Air Force is not even granting temporary religious exemptions to Plaintiffs and those similarly situated.

(App.120–21). They have been placed on "No Pay No Points" status, meaning they cannot perform duty for pay or earn points toward retirement. Grieb Aff. ¶ 38 (App.113). They have been denied long-scheduled training opportunities and instead been forced to perform basic duties well below their ranks and capabilities. *E.g.,* Stef Aff. ¶ 26 (App.56). They face additional imminent harm in the future: loss of retirement (*e.g.,* Corcoran Aff. ¶ 19, 26, 30 (App.77–79); Grieb Aff. ¶ 39 (App.113)), forced separation (*e.g.,* Sosebee Aff. ¶ 30 (App.148–49); Stef Aff. ¶ 76 (App.70–71)), and less than honorable discharge, which will harm their ability to find employment outside the military (*e.g.,* Pike Aff. ¶ 25 (App.86–87)). The weight of this stress has caused immeasurable strain on Plaintiffs and their families. *E.g.,* Sosebee Aff. ¶ 30 (App.148); Stef Aff. ¶ 74 (App.69–70); Grieb Aff. ¶ 43 (App.114).

As this Court already recognized in the *SEALs* case, "because these injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights, this Court must conclude that Plaintiffs have suffered irreparable harm." *SEALs*, 2022 WL 34443, at *13. As the Supreme Court has held, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). The Fifth Circuit and this Court have recognized that the same principle holds true for RFRA. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012); *SEALs*, 2022 WL 34443, at *13. "Thus, any losses the Plaintiffs have suffered in

20

connection with their religious accommodation requests sufficiently demonstrate irreparable injury." *SEALs*, 2022 WL 34443, at *13.

Furthermore, as this Court recognized in the SEALs case, "[t]he crisis of conscience imposed by the mandate is itself an irreparable harm." *Id.* Here, as there, Defendants have put Plaintiffs to a job-or-jab choice. And, as Plaintiff Stef's affidavit shows, when faced with that choice, Airmen may well find themselves taking a vaccine over their religious objections in order to put food on the table, provide dependents with critical medical care, and continue a career to which these servicemembers have devoted years. Stef Aff. ¶¶ 68–70, 74 (App.67–69). The Fifth Circuit has already recognized that this kind of coercion constitutes irreparable harm. *BST Holdings,* 17 F.4th at 618. And Plaintiffs are suffering that irreparable harm as a direct result of the government's "decision to coerce [them] into violating their religious convictions." *See Sambrano v. United Airlines, Inc.,* No. 21-11159, 2022 WL 486610, at *7 (5th Cir. Feb. 17, 2022). "That harm and that harm alone is irreparable and supports a preliminary injunction." *Id.*[18]

---

[18] The fact that some Plaintiffs still have pending appeals of the denial of their religious accommodation requests does not preclude a finding of irreparable injury. As in *SEALs,* "Plaintiffs are already suffering injury while waiting for the [Air Force] to adjudicate their requests." *SEALs,* 2022 WL 34443 at *12. This Court should again recognize that the harms Plaintiffs face in these circumstances—coercion to violate their religious beliefs, loss of First Amendment freedoms, and adverse employment actions—are not "speculative." *See id.*

**B. The balance of harms and the public interest in protecting constitutional and statutory rights weigh in favor of an injunction.**

As this Court observed in the *SEALs* case, "[t]he final two elements of the preliminary injunction standard—the balance of the harms and whether an injunction will disserve the public interest—must be considered together. These factors merge when the Government is the opposing party." *SEALs*, 2022 WL 34443 at *13. Here, both factors clearly weigh in Plaintiffs' favor.

First, as in *SEALs*, "[w]hen balancing the harms, courts must consider whether the movant's injury outweighs the threatened harm to the party whom they seek to enjoin." *Id.* "Plaintiffs' loss of religious liberties outweighs any forthcoming harm" to the Air Force. *Id.* As this Court recognized in the *SEALs* case:

> Even the direst circumstances cannot justify the loss of constitutional rights. Fortunately, the future does not look so dire. Nearly 100% of the [Air Force] has been vaccinated. Hospitalizations are rising at a much slower rate than COVID-19 cases. COVID-19 treatments are becoming more effective and widely available.

*Id.*

Under such circumstances, it is evident that the harm to Plaintiffs outweighs any harm to the Air Force's purported interests—particularly when, as noted above, the Air Force doesn't take those interests all that seriously when the basis for an exemption request is medical, rather than religious.

An injunction also will not disserve the public interest. To the contrary, it will serve the public interest by protecting First Amendment and RFRA rights. *See SEALs*, 2022 WL 34443, at *13 (citing *Jackson Women's Health Organization v. Currier*, 760 F.3d 448, 458

22

n.9 (5th Cir. 2014)) ("An injunction does not disserve the public interest when it prevents constitutional deprivations."). As the Supreme Court has urged, "even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn,* 141 S. Ct. at 68. Here too, the military's mandate "strike[s] at the very heart of the First Amendment's guarantee of religious liberty." *Id.* And it aims its strike at those who have dedicated their lives to defending those rights. This Court should enjoin Defendants from taking any further adverse actions against Plaintiffs and those similarly situated.

## III.   The Requested Injunction Does Not Prevent Defendants from Making Operational Decisions.

Plaintiffs ask this Court to enjoin Defendants' discriminatory and unlawful course of adverse action against servicemembers who request religious accommodations. Specifically, Plaintiffs ask this Court to enjoin Defendants from:

1. across-the-board denial of religious accommodation requests for COVID-19 vaccination;

2. differential treatment of accommodation requests for the COVID-19 vaccination for secular reasons and accommodation requests for religious reasons;

3. retributive or negative action against servicemembers who make or have made religious accommodation requests; and

4. subject to the limitation below for *bona fide* operational decisions, making non-receipt of COVID-19 vaccination or submission of a request for a religious accommodation from COVID-19 vaccination a basis for any adverse action against any servicemembers including, but not limited to:

   - administrative counselings, admonishments, or reprimands;
   - nonjudicial punishment or separation from service;
   - involuntary placement in the Individual Ready Reserve;
   - change in job titles or duties, removal from assignments, or non-issuance of assignments;

- negative performance reviews, promotion recommendations, or stratifications;
- giving a less than honorable discharge;
- recoupment of education or training expenses;
- determination of medical disqualification or non-deployability;
- loss or delay of promotion, training opportunities, or retirement;
- loss of bonuses, pay or benefits; or
- precluding servicemembers from traveling to and performing duty in person,

*unless* Defendants can prove that failing to take a particular adverse action against the servicemember in question would likely have a real and concrete (not theoretical) adverse impact on a compelling government interest.

Defendants will no doubt cry that the sky will fall if this Court enjoins them from taking adverse actions against Plaintiffs and prospective class members because of their religious accommodation requests and unvaccinated status. Plaintiffs, who are Air Force officers themselves, do not contest that the courts should not interfere in true military operational decisions. But the requested relief does not prohibit Defendants from making any such decisions. Plaintiffs merely ask this Court to enjoin Defendants from taking unlawful adverse action against them and the prospective class members on the basis of their RARs or unvaccinated status when there is no real risk to compelling interests. The Air Force's own policy require that assessment.[19] But the facts make clear that Defendants have not acted in accordance with those regulations, or with the demands of RFRA and the Free Exercise Clause. Plaintiffs simply ask that Defendants be ordered to comply with the law.

---

[19] *See Air Force Policy Directive 52-2: Accommodation of Religious Practices in the Air Force*, Sec'y of the Air Force (July 28, 2020), https://static.e-publishing.af.mil/production/1/af_hc/publication/afpd52-2/afpd52-2.pdf.

As it stands, the facts clearly show that Defendants are not making reasoned, non-discriminatory operational decisions. No operational decision could justify allowing medically or administratively exempt Airmen to continue to perform their job duties, with no threat of discipline or separation from the Air Force, while punishing those who seek otherwise identical religious exemptions. As Justice Kavanaugh wisely explained in another COVID case, "judicial deference in an emergency or a crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 74 (Kavanaugh, J., concurring). Plaintiffs respectfully ask this Court to enjoin Defendants' discriminatory policies and practices.

## CONCLUSION

When Plaintiffs swore to serve our country, they swore to support and defend the United States Constitution. They have borne "true faith and allegiance to the same," knowing that to do so may one day require the ultimate sacrifice. The promise of the First Amendment and of RFRA is that the government may neither single out the religious for special burdens, nor impose burdens on sincere religious exercise unless it has a compelling interest and the burden is the least restrictive means of achieving that interest. Defendants' conduct makes plain that they have no such interest in vaccinating religious requesters, and that their discriminatory policies are not the least restrictive means of achieving any interest they may have. Plaintiffs now ask that this Court vindicate their constitutional and statutory rights to religious liberty and swiftly enter a temporary restraining order and preliminary injunction to stop Defendants from imposing further harm.

May 27, 2022

Respectfully submitted,

*/s/ Cristina M. Squiers*
Gene C. Schaerr*
  D.C. Bar No. 416368
Cristina M. Squiers
  Texas Bar No. 24093764
  *Counsel of Record*
Annika M. Boone* **
  Utah Bar No. 17176)
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
gschaerr@schaerr-jaffe.com
csquiers@schaerr-jaffe.com
aboone@schaerr-jaffe.com

Kelly J. Shackelford
  Texas Bar No. 18070950
Jeffrey C. Mateer
  Texas Bar No. 13185320
David J. Hacker
  Texas Bar No. 24103323
Michael D. Berry
  Texas Bar No. 24085835
Roger Byron
  Texas Bar No. 24062643
First Liberty Institute
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
rbyron@firstliberty.org

26

Jordan E. Pratt*
  Florida Bar No. 100958
227 Pennsylvania Ave, SE
Washington, DC 20003
(972) 941-4444
jpratt@firstliberty.org

*Counsel for Plaintiffs and the
Proposed Class*

*Pro hac vice* motions forthcoming
** Not yet admitted in D.C. Practicing
under the supervision of D.C. attorneys.

27