## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force, <br><br> *Defendants*. | Case No: 4:22-cv-453-O |

**APPENDIX IN SUPPORT OF BRIEF SUPPORTING PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiffs file this Appendix in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and, in support thereof, show the Court as follows:

**APPENDIX**

| EX. NO. | DESCRIPTION | APP. RANGE |
|---|---|---|
| 1 | Memorandum of Lloyd J. Austin, III, Sec'y of Defense, *Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members*, Aug. 24, 2021 | 1–3 |

1

| EX. NO. | DESCRIPTION | APP. RANGE |
|---|---|---|
| 2 | Memorandum of Frank Kendall, Sec'y of the Air Force, *Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members*, Sept. 3, 2021<br>Attach. 1: Austin Memorandum, Aug. 24, 2021<br>Attach. 2: Department of the Air Force COVID-19 Vaccination Implementation Guidance, Sept. 2, 2021 | 4–29 |
| 3 | Memorandum of Frank Kendall, Sec'y of the Air Force, *Supplemental Coronavirus Disease 2019 Vaccination Policy*, Dec. 7, 2021<br>Attach. 1: Supplementary Guidance for Members of the Air Force Reserve<br>Attach. 2: Supplementary Guidance for Members of the Air National Guard | 30–36 |
| 4 | Declaration of Lieutenant Colonel Bryan Patrick Spence, May 26, 2022 | 37–48 |
| 5 | Declaration of Lieutenant Colonel Tyler William Stef, May 26, 2022 | 49–71 |
| 6 | Declaration of Major Ryan Corcoran, May 24, 2022 | 72–80 |
| 7 | Declaration of Lieutenant Mitchell Brandon Pike, May 25, 2022 | 81–88 |
| 8 | Declaration of Major Steven Randall Haynes, May 23, 2022 | 89–101 |
| 9 | Declaration of Lieutenant Colonel Andrew Grieb, May 25, 2022 | 102–115 |
| 10 | Declaration of Major Danielle Andrea Runyan, May 23, 2022 | 116–125 |
| 11 | Declaration of Christopher Ming-Chieh Wu, May 26, 2022 | 126–138 |
| 12 | Declaration of Captain Alan C. Sosebee, May 23, 2022 | 139–149 |

May 27, 2022                              Respectfully submitted,

*/s/ Cristina M. Squiers*

Kelly J. Shackelford                      Gene C. Schaerr*
  Texas Bar No. 18070950            D.C. Bar No. 416368
Jeffrey C. Mateer                         Cristina M. Squiers
  Texas Bar No. 13185320            Texas Bar No. 24093764
David J. Hacker                             *Counsel of Record*
  Texas Bar No. 24103323          Annika M. Boone* **
Michael D. Berry                            Utah Bar No. 17176
  Texas Bar No. 24085835          SCHAERR | JAFFE LLP
Roger Byron                               1717 K Street NW, Suite 900
  Texas Bar No. 24062643          Washington, DC 20006
First Liberty Institute                   Telephone: (202) 787-1060
2001 W. Plano Pkwy., Ste. 1600            Facsimile: (202) 776-0136
Plano, Texas 75075                        gschaerr@schaerr-jaffe.com
Tel: (972) 941-4444                       csquiers@schaerr-jaffe.com
jmateer@firstliberty.org                  aboone@schaerr-jaffe.com
dhacker@firstliberty.org
mberry@firstliberty.org                   * Pro hac vice motions forthcoming
rbyron@firstliberty.org                   ** Not yet admitted in D.C. Practicing under
                                          the supervision of D.C. attorneys.
Jordan E. Pratt*
Florida Bar No. 100958
227 Pennsylvania Ave, SE
Washington, DC 20003
(972) 941-4444
jpratt@firstliberty.org

*Counsel for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2022, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

*/s/ Cristina M. Squiers*
Cristina M. Squiers

# EXHIBIT 1



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

AUG 24 2021

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP
                  COMMANDERS OF THE COMBATANT COMMANDS
                  DEFENSE AGENCY AND DOD FIELD ACTIVITY DIRECTORS

SUBJECT: Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense
              Service Members

       To defend this Nation, we need a healthy and ready force. After careful consultation with medical experts and military leadership, and with the support of the President, I have determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people.

       Mandatory vaccinations are familiar to all of our Service members, and mission-critical inoculation is almost as old as the U.S. military itself. Our administration of safe, effective COVID-19 vaccines has produced admirable results to date, and I know the Department of Defense will come together to finish the job, with urgency, professionalism, and compassion.

       I therefore direct the Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve, including the National Guard, who are not fully vaccinated against COVID-19.

       Service members are considered fully vaccinated two weeks after completing the second dose of a two-dose COVID-19 vaccine or two weeks after receiving a single dose of a one-dose vaccine. Those with previous COVID-19 infection are not considered fully vaccinated.

       Mandatory vaccination against COVID-19 will only use COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance. Service members voluntarily immunized with a COVID-19 vaccine under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing in accordance with applicable dose requirements prior to, or after, the establishment of this policy are considered fully vaccinated. Service members who are actively participating in COVID-19 clinical trials are exempted from mandatory vaccination against COVID-19 until the trial is complete in order to avoid invalidating such clinical trial results.

       Mandatory vaccination requirements will be implemented consistent with DoD Instruction 6205.02, "DoD Immunization Program," July 23, 2019. The Military Departments should use existing policies and procedures to manage mandatory vaccination of Service members to the extent practicable. Mandatory vaccination of Service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy. The Military Departments may promulgate appropriate guidance to carry out the requirements set out above. The Under Secretary of Defense for Personnel and



Readiness may provide additional guidance to implement and comply with FDA requirements or Centers for Disease Control and Prevention recommendations.

The Secretaries of the Military Departments should impose ambitious timelines for implementation. Military Departments will report regularly on vaccination completion using established systems for other mandatory vaccine reporting.

Our vaccination of the Force will save lives. Thank you for your focus on this critical mission.

**3**

# EXHIBIT 2

**4**



**SECRETARY OF THE AIR FORCE**
WASHINGTON

3 September 2021

MEMORANDUM FOR DEPARTMENT OF THE AIR FORCE COMMANDERS

SUBJECT: Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force
Military Members

On 24 August 2021, the Secretary of Defense issued a mandate for all members of the
Armed Forces under Department of Defense authority on active duty or in the Ready Reserve,
including the National Guard, to immediately begin full vaccination against COVID-19.

Effective immediately, commanders in the Department of the Air Force shall take all
steps necessary to ensure all uniformed Airmen and Guardians receive the COVID-19 vaccine,
which includes issuing unit-wide and individual orders to their military members. Commanders
must take action systematically and as expeditiously as possible to ensure prompt and full
vaccination of Service members. Unless exempted, Active Duty Airmen and Guardians will be
fully vaccinated by 2 November 2021. Unless exempted, Ready Reserve, to include National
Guard, Airmen and Guardians will be fully vaccinated by 2 December 2021. To aid in the
process, there are additional resources available in the COVID-19 Commander's Toolkit,
available at https://usaf.dps.mil/teams/COVID-19/SitePages/Home.aspx.

Only COVID-19 vaccines that receive full licensure from the Food and Drug
Administration (FDA) will be utilized for mandatory vaccinations unless a military member
volunteers to receive a vaccine that has obtained U.S. Food and Drug Administration Emergency
Use Authorization or is included in the World Health Organization's Emergency Use Listing.
Individuals with previous COVID-19 infection or positive serology are not considered fully
vaccinated and are not exempt.

Pursuant to my authority under Article 22 of the Uniform Code of Military Justice and
Rules for Courts-Martial 306, 401, and 601, I hereby withhold initial disposition authority from
all commanders within the Department of the Air Force who do not possess at least special court-
martial convening authority and who are not in the grade of O-6 with respect to any alleged
offense that constitutes refusal or failure to obtain the COVID-19 vaccine. Commanders are
advised to consult with their servicing staff judge advocate for further guidance.

Together, we will win this fight against COVID-19. *One Team, One Fight*.

Frank Kendall

**5**

2 Attachments:
1.  Secretary of Defense Memorandum, "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members," 24 August 2021
2.  Department of the Air Force COVID-19 Vaccination Implementation Guidance, 2 September 2021

cc:
AF/CC
SF/CSO

**6**



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

AUG 24 2021

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP
                COMMANDERS OF THE COMBATANT COMMANDS
                DEFENSE AGENCY AND DOD FIELD ACTIVITY DIRECTORS

SUBJECT:  Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense
             Service Members

       To defend this Nation, we need a healthy and ready force. After careful consultation with medical experts and military leadership, and with the support of the President, I have determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people.

       Mandatory vaccinations are familiar to all of our Service members, and mission-critical inoculation is almost as old as the U.S. military itself. Our administration of safe, effective COVID-19 vaccines has produced admirable results to date, and I know the Department of Defense will come together to finish the job, with urgency, professionalism, and compassion.

       I therefore direct the Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve, including the National Guard, who are not fully vaccinated against COVID-19.

       Service members are considered fully vaccinated two weeks after completing the second dose of a two-dose COVID-19 vaccine or two weeks after receiving a single dose of a one-dose vaccine. Those with previous COVID-19 infection are not considered fully vaccinated.

       Mandatory vaccination against COVID-19 will only use COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance. Service members voluntarily immunized with a COVID-19 vaccine under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing in accordance with applicable dose requirements prior to, or after, the establishment of this policy are considered fully vaccinated. Service members who are actively participating in COVID-19 clinical trials are exempted from mandatory vaccination against COVID-19 until the trial is complete in order to avoid invalidating such clinical trial results.

       Mandatory vaccination requirements will be implemented consistent with DoD Instruction 6205.02, "DoD Immunization Program," July 23, 2019. The Military Departments should use existing policies and procedures to manage mandatory vaccination of Service members to the extent practicable. Mandatory vaccination of Service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy. The Military Departments may promulgate appropriate guidance to carry out the requirements set out above. The Under Secretary of Defense for Personnel and



OSD007764-21/CMD010116-21

Readiness may provide additional guidance to implement and comply with FDA requirements or Centers for Disease Control and Prevention recommendations.

The Secretaries of the Military Departments should impose ambitious timelines for implementation. Military Departments will report regularly on vaccination completion using established systems for other mandatory vaccine reporting.

Our vaccination of the Force will save lives. Thank you for your focus on this critical mission.

**8**

CONTROLLED UNCLASSIFIED INFORMATION

**COVID-19 MANDATORY VACCINATION IMPLEMENTATION**

**GUIDANCE FOR SERVICE MEMBERS**

**Deputy Director of Staff for COVID-19**

**3 September 2021**

CONTROLLED UNCLASSIFIED INFORMATION

CONTROLLED UNCLASSIFIED INFORMATION

**Chapter 1 – INTRODUCTION**                                              **1**

Section 1.1      Purpose                                                   1

Section 1.2      Background                                                1

Section 1.3      Key Messages                                             1

Section 1.4      Applicability and Scope                                  2


**Chapter 2 – ROLES AND RESPONSIBILITIES**                               **3**

Section 2.1      HAF/DDS COVID-19                                         3

Section 2.2      AF/SG                                                    3

Section 2.3      MAJCOMS and FLDCOMS                                      3

Section 2.4      Installation Commanders                                  3

Section 2.5      Public Affairs                                           4

Section 2.6      Legal                                                    4

Section 2.7      Chaplain                                                 4

Section 2.8      Unit Commanders                                         4

Section 2.9      Military Treatment Facility Commanders or Local Equivalent   5

Section 2.10     Vaccine Site Coordinator                                 5

Section 2.11     Individuals Receiving Vaccination                        6


**Chapter 3 – EDUCATION PLAN FOR MANDATORY VACCINATION**                 **7**

Section 3.1      General                                                  7

Section 3.2      Key Messages                                             7

Section 3.3      Education for Individuals                                7

Section 3.4      Education for Medical Personnel                          8


**Chapter 4 – MEDICAL ISSUES**                                           **9**

Section 4.1      Vaccine Administration                                   9

Section 4.2      Pregnancy and Nursing Considerations                     9

Section 4.3      Pre-Vaccination Screening                                9

Section 4.4      Adverse Reactions                                        9

Section 4.5      Medical Exemptions                                      10

Section 4.6      COVID-19 Vaccine Tracking and Documentation             11

CONTROLLED UNCLASSIFIED INFORMATION

CONTROLLED UNCLASSIFIED INFORMATION

Section 4.7     Medical Logistics/Vaccine Distribution                    11

Section 4.8.    Aircrew Management                                        11


**Chapter 5 – ADMINISTRATIVE ISSUES**                                    **13**

Section 5.1     Exemptions                                                13

Section 5.2     Healthcare Access Guidelines                              13

Section 5.3     Refusal Management                                        13


**ATTACHMENTS**                                                          **15**

1 - Religious Accommodation Requests                                      15

2 - Medical Exemption Requests                                            16

# Chapter 1

# INTRODUCTION

**1.1.  Purpose.**  This document provides Department of the Air Force implementation guidance pursuant to the 24 August 2021 Secretary of Defense memorandum and the subsequent 3 September 2021 Secretary of the Air Force memorandum.  Accomplishment of mandatory COVID-19 vaccinations will be carried out as soon as possible after receiving this implementation guidance.

**1.2.  Background.**

1.2.1.  On 23 August 2021, the US Food and Drug Administration (FDA) approved the Pfizer-BioNTech mRNA COVID-19 vaccine which will be now be marketed as "COMIRNATY®"  for prevention of COVID-19 disease in individuals 16 years of age and older.  The vaccine also continues to be available under Emergency Use Authorization (EUA) for individuals 12 through 15 years of age and for the administration of a third dose in certain immunocompromised individuals.

1.2.1.1.  The FDA approved COMIRNATY® and the FDA authorized Pfizer-BioNTech COVID-19 vaccine under emergency use authorization have the same formulation and can be used interchangeably.

1.2.1.2.  Providers can use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine according to the FDA.  Other vaccines may be added to this list in the future.

1.2.2.  All other vaccines authorized by the FDA under an EUA will remain voluntary until they receive full FDA approval.

1.2.3.  Following the FDA news release, the Secretary of Defense announced that the COVID-19 vaccine would be a requirement for all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve, including National Guard.

1.2.4.  Service members voluntarily immunized with a COVID-19 vaccine under FDA EUA or World Health Organization (WHO) Emergency Use Listing (EUL) IAW applicable dose requirements prior to, or after, the establishment of this policy are considered fully vaccinated.

**1.3.  Key Messages.**  Education of all levels of the command structure is imperative to ensure the success of this program.  The key messages for this vaccination effort are:

1.3.1.  Your health and safety are our #1 concern.

1.3.2.  The vaccine is safe and effective.

**12**

1.3.3.  The threat from COVID-19 is real and deadly.

1.3.4.  Vaccination offers a layer of protection, in addition to hand washing, use of cloth face masks, social distancing, tele-working, and other non-pharmaceutical interventions.

**1.4.  Applicability and Scope.**

1.4.1.  All individuals identified in section 1.2.3.

1.4.2.  All other eligible personnel are strongly recommended to voluntarily receive either the approved COMIRNATY®  or other FDA EUA or WHO EUL COVID-19 vaccines.

1.4.3.  Members who are actively participating in COVID-19 clinical trials are exempt from mandatory vaccination against COVID-19 until the trial is complete.

**13**

## Chapter 2

## ROLES AND RESPONSIBILITIES

**2.1.  AF/DDS COVID-19.**

2.1.1.  As OPR for implementation of the vaccination mandate, develop and implement necessary DAF policy.

2.1.2.  Provide program oversight.

2.1.3.  Coordinate with other Services and agencies on policy implementation and execution as appropriate.

2.1.4.  Review and coordinate requests from MAJCOMs and FLDCOMS for exceptions to policy.

**2.2.  AF/SG.**

2.2.1.  Coordinate with DHA Director.

2.2.2.  Serve as the final appeal authority for all denials of requests for religious accommodations per DAFI 52-201.

**2.3.  MAJCOMs and FLDCOMs.**

2.3.1  Designate a staff element as OPR for management of implementation of this guidance. (Designate any OCRs as deemed necessary.)

2.3.2.  Consult with installations on vaccination issues which require command support.

2.3.3.  Coordinate requests for exceptions to policy with installations and HAF/DDS COVID-19.

2.3.4.  Adjudicate religious exemptions per DAFI 52-201.

**2.4.  Installation Commander.**

2.4.1.  Ensure compliance with this guidance by maintaining oversight and ownership of the installation's implementation plan for mandatory vaccination.

2.4.2.  As needed, develop a base implementation plan consistent with DoD and DAF guidance.  The Department of the Air Force plan may be used as the foundation for the installation's implementation plan.

**14**

2.4.3.  As needed, designate a senior line officer as the installation OIC to oversee the implementation of this guidance and the vaccination mandate.

2.4.4.  Direct the Medical Treatment Facility (MTF) Commander or Senior Officer in the Reserve Medical Unit to coordinate the medical administrative and clinical functions of COVID-19 vaccination pursuant to this guidance.

2.4.5.  Ensure all installation personnel receive education on the ma as outlined in Chapter 3 of this plan.

2.4.6.  Submit requests for exception to policy to MAJCOM and FLDCOM OPRs for coordination.

## 2.5.  Public Affairs.

2.5.1.  Prioritize community education and provide support to command teams.

2.5.2.  Coordinate responses to media inquiries.

## 2.6.  Legal.

2.6.1.  Educate base personnel as needed on relevant legal issues.

2.6.2.  Answer any inquiries regarding legal issues related to mandatory vaccination and this guidance (e.g., Freedom of Information Act requests and refusals to receive mandatory vaccinations) and provide guidance to commanders as needed/requested.

## 2.7.  Chaplain.

2.7.1. Assist with vaccine exemptions based on religious accommodations IAW DAFI 52-201. The senior chaplain leads the RRT in providing recommendations to commanders on how to resolve religious matters.  See Attachment 1, Religious Accommodation Requests.

## 2.8.  Unit Commanders.

2.8.1.  Ensure unit personnel are educated on the vaccine and the vaccination requirement IAW Chapter 3 of this plan.  Helpful documents such as "DoD & MHS Talking Points – COVID-19 Updates (29 Jul 21)", "COVID19 Vaccine FAQs_V1_3Aug 2021" and others are accessible from https://www.milsuite.mil/book/groups/daf-covid-19-vaccine-confidence-working-group-cvcwg.

2.8.2.  Enforce compliance with the mandate from the Secretary of Defense and the Secretary of the Air Force by issuing an order for all unvaccinated members under the unit's command to receive the COVID-19 vaccine.

**15**

2.8.3.  For personnel subject to the vaccination mandate, manage cases of individual refusal to receive the vaccine IAW section 5.3 of this plan.  Begin taking refusal management steps as soon as possible following notification by the MTF of vaccine refusal by a unit member.

**2.9.  Military Treatment Facility Commander or Local Equivalent.**

2.9.1.  Provide oversight for all medical administrative and clinical aspects of vaccination IAW DHA-IPM 20-004.

2.9.2.  Assign medical provider(s), as needed, to support:

2.9.2.1.  The installation's Religious Resolution Team (RRT) and medical counseling for personnel requesting religious waivers;

2.9.2.2.  The medical evaluation of personnel requiring a medical exemptions; and

2.9.2.3.  Notification of commanders if the initial refusal of the COVID-19 vaccine takes place in the MTF or Points of Dispensing (PODs). (See paragraph 5.3.2.)

2.9.3.  Ensure appropriate medical personnel are educated on the clinical and policy aspects of the vaccine program (see Chapter 3).  Be prepared to provide additional information to Commanders and individuals.

2.9.4.  Ensure a process is in place for access to health care for individuals who may have an adverse reaction to the vaccine.

2.9.5.  Ensure those receiving vaccination are offered education prior to vaccine administration.

2.9.6.  Oversee management of adverse events IAW DHA-IPM 20-004.

2.9.7.  Ensure providers are educated on evaluation for vaccine exemption requests.  (See paragraph 3.4.)

**2.10.  Vaccine Site Coordinator.**

2.10.1.  Ensure education and training of vaccinators on current vaccination policy is accomplished IAW DHA-IPM 20-004 and any supplemental guidance from DHA-IHD.

2.10.2.  Ensure the most current version of the FDA Fact Sheet is readily available/distributed at education venues and within the MTF until an Advisory Committee on Immunization Practices (ACIP)-approved Vaccine Information Statement (VIS) becomes available.

2.10.3.  Continue to coordinate with the vaccine coordinators and logistics champions.

**16**

2.10.4.  For deployers going to countries where yellow shot record is required, ensure COVID-19 vaccine is also documented in their yellow shot record.

**2.11. Individuals Receiving Vaccination.**

2.11.1.  Receive education on the COVID-19 disease threat and information on the vaccine.

2.11.2.  Read the FDA Fact Sheet.

2.11.3.  Address any concerns with medical staff prior to receiving the vaccine.

2.11.4.  Air Reserve Component (ARC) members who receive vaccination outside a military facility will provide documentation to their unit health monitor and reserve medical unit within 72 hours of vaccination.

**17**

**Chapter 3**

**EDUCATION PLAN FOR VACCINATION**

**3.1.  General.**  Education is the key to a successful COVID-19 vaccination program. Commanders at all levels are responsible for educating their personnel before vaccination.  This educational program will inform personnel of the following:

3.1.1.  The Food and Drug Administration (FDA) has licensed the Pfizer-BioNTech mRNA COVID-19 vaccine, now marketed as "COMIRNATY®," for prevention of COVID-19 disease as well as preventing COVID-19-related serious negative outcomes.  (Note: IAW FDA guidance, COMIRNATY® has the same formulation and can be used interchangeably with the FDA-authorized Pfizer-BioNTech COVID-19 Vaccine.  Providers can use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine.)

3.1.2.  Known and potential benefits and risks of COMIRNATY®.

3.1.3.  Only an FDA-licensed vaccine may be mandated; however, Service members may be voluntarily immunized with a COVID-19 vaccine under FDA Emergency Use Authorization (EUA) or World Health Organization (WHO) Emergency Use Listing prior to or after the establishment of this policy and are considered fully vaccinated.

3.1.4.  The FDA and Centers for Disease Control and Prevention (CDC) have monitoring systems in place to ensure that any safety concerns continue to be identified and evaluated in a timely manner.

**3.2.  Key Messages.**

3.2.1.  Your health and safety are our #1 concern.

3.2.2.  The vaccine is safe and effective.

3.2.3.  The threat from COVID-19 is real and deadly.

3.2.4.  Vaccination offers a layer of protection, in addition to hand washing, use of cloth face masks, social distancing, tele-working, and other non-pharmaceutical interventions.

**3.3.  Education for Individuals.**  All unvaccinated personnel (as identified in section 1.2) must receive education on the COVID-19 vaccinations before receiving the vaccine.  This applies to individuals initiating or continuing the vaccination series.

3.3.1.  The primary mode of providing education to individuals is the FDA Fact Sheet that will be disseminated at the Immunizations Clinic and/or PODs at minimum.  Prior to

**18**

receiving a fully FDA-approved COVID-19 vaccine or an EUA/EUL COVID-19 vaccine, individuals must have had the opportunity to review the product-specific information.

    3.3.1.1.  Upon arrival at the MTF to receive the COVID-19 vaccine, individuals will be offered a copy of the product specific Fact Sheet.  Prior to administering the COVID-19 vaccine, the immunization technician will confirm the individual has understood the information within the FDA Fact Sheet.  Any questions should be addressed prior to vaccination.

**3.4.  Education for Medical Personnel.**  Medical personnel are the primary source of information on the disease, the vaccine, and vaccine side effects.  For those individuals who experience an adverse event associated with the vaccine, medical personnel will provide the appropriate treatment and referral, if necessary, for diagnosis and treatment of medical conditions.

    3.4.1.  Military Treatment Facility Commander or local equivalent will ensure that healthcare professionals and vaccinators involved in COVID-19 vaccination review and comply with implementation guidance.

    3.4.2.  Medical personnel involved with vaccination must understand healthcare-access guidance, procedures for reporting in the Vaccine Adverse Events Reporting System (VAERS) and reasons for medical exemption.

    3.4.3.  Understand the healthcare provider's roles and responsibilities with medical and administrative exemptions to include religious exemptions.

    3.4.4.  Personnel providing COVID-19 immunizations must acknowledge training IAW DHA-IPM 20-004.

    3.4.5.  The Chief of Medical Staff (SGH) will ensure education on the vaccine and the vaccination requirement is accomplished for: clinical supervisors of vaccinators, preventive medicine and public health staff, relevant healthcare providers (e.g., allergy-immunology, ambulatory care, flight medicine, emergency care), and any other provider designated by the Medical Commander.  Education must also include the components listed in 3.1.

**19**

# Chapter 4

## MEDICAL ISSUES

**4.1.  Vaccine Administration.**

4.1.1.  Administer COVID-19 vaccine IAW DHA-IPM 20-004.

4.1.2.  ASIMS will turn "yellow" for not fully vaccinated personnel on 3 September 2021.  ASIMS will turn "red" for those not fully vaccinated personnel by the respective timelines.

4.1.3.  An order to receive the COVID-19 vaccine is not related to the colors in ASIMS.  The colors are for MTF tracking purposes only.

4.1.4.  For individuals recently diagnosed with COVID-19, treated with monoclonal antibodies, or treated with convalescent plasma, administer COVID-19 immunization in accordance with recommendations from the CDC, recommendations from the CDC's Advisory Committee on Immunization Practices (ACIP), and FDA guidelines.

**4.2.  Pregnancy and Nursing Considerations.**  The COVID-19 vaccine is recommended during pregnancy.

4.2.1.  Pregnant Service members (unless under medical exemption) are recommended to receive COVID-19 vaccination consistent with guidance from the CDC, American College of Obstetricians and Gynecologists (ACOG), and the Society for Maternal-Fetal Medicine (SMFM); however, a pregnant Service member with concerns about vaccination during pregnancy may pursue a temporary medical exemption following vaccine counseling from her healthcare provider, as per paragraph 2-6.a.(1)(a) of AFI 48-110.

4.2.2.  As needed, consult medical providers to weigh the benefit/risk of getting COMIRNATY®  during pregnancy.

4.2.3.  Nursing mothers (unless under a medical exemption) are mandated to receive COMIRNATY®.

4.2.4.  Individuals seeking information related to vaccination during pregnancy or while nursing are encouraged to access the following website: https://www.acog.org/womens-health/faqs/coronavirus-covid-19-pregnancy-and-breastfeeding.

**4.3.  Pre-vaccination Screening.**  Medically screen patients prior to administering the COVID-19 vaccine to ensure there are no contraindications for receiving the vaccine.

**4.4.  Adverse Reactions.**

4.4.1  General Information.  Medical personnel must be prepared to manage perceived or actual adverse events after vaccination: how to minimize them, respond to them, and report

**20**

them IAW AFI 48-110.  Treat each concern with care; some symptoms following COVID-19 vaccination may or may not be caused by the vaccination, but all deserve individual attention.

4.4.2  Immunization Technician's Role.  Immunization technicians will have the most current version of the FDA Fact Sheet and other sources of information available in the clinic, which provide details on potential side effects.  If a patient returns to the clinic after receiving a vaccination and indicates that they had an adverse reaction, the immunization technician can, again, provide these information sources to the patient.  If the adverse reaction is anything more than a mild, local reaction, they should be referred to a provider.  In every case, the patient should be given the option of seeing a provider.

4.4.3  Any serious adverse event temporally associated with receipt of a dose of a fully FDA-approved COVID-19 vaccine or an EUA/EUL COVID-19 vaccine should be immediately evaluated by a privileged healthcare provider.  Adverse event management should be thoroughly documented in medical records.

4.4.4.  Adverse reactions from DoD-directed immunizations are Line of Duty (LOD) conditions.

4.4.5.  Adverse event reporting follow the procedures IAW DHA-IPM 20-004.

**4.5.  Medical Exemptions.**

4.5.1.  Granting medical exemptions is a medical function that must be performed by a privileged military health care provider IAW AFI 48-110.  Medical exemptions may be based on pre-existing conditions or result from vaccine adverse reactions and should be consistent with the CDC Interim Clinical Considerations for Use of COVID-19 Vaccines: https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fvaccines%2Fcovid-19%2Finfo-by-product%2Fclinical-considerations.html#vaccinated-part-clinical-trail. See the Medical Exemption Process Attachment for more detail.

4.5.1.1.  For the COVID-19 vaccines, IAW CDC guidance, contraindications include: 1) severe allergic reaction (anaphylaxis) after previous dose or to a component of the specific COVID-19 vaccine; 2) immediate allergic reaction of any severity to a previous dose or known (diagnosed) allergy to a component of the specific COVID-19 vaccine; and 3) development of pericarditis or myocarditis after the first dose.

4.5.1.2.  Previous infections or positive serology do not exempt Service members from full vaccination requirements.  (At this time, DoD, consistent with CDC recommendations, has not determined that a serological test is sufficient to meet the immunization requirements.)

**21**

4.5.1.3.  Only "MT" or "Medical, Temporary" medical exemption code should used in ASIMS.  A temporary medical exemption for up to 365 days allows future evaluation against other fully approved/biologics license application vaccines.

4.5.2.  Granting of medical exemptions may require a duty status change or deployment limitation for the individual.  Any change in duty status/deployment eligibility/assignment limitation due to a medical exemption must be processed IAW applicable AFIs.

4.5.2.1.  Use of medical exemption codes in ASIMS must be IAW AFI 48-110, Table C-1.

## 4.6.  COVID-19 Vaccine Tracking and Documentation.

4.6.1.  The Public Health Office or the Base Operational Medicine Clinic (BOMC) will assist commanders and their designees with ASIMS access.

4.6.2.  COVID-19 vaccination documentation will ensure clinical decision making is captured.

4.6.2.1 Vaccination sites using MHS GENESIS will continue to use this EHR platform for vaccination documentation.

4.6.2.2 Vaccination sites using AHLTA will use either ASIMS or AHLTA.  Do not double document.  Data entered into ASIMS or AHLTA will flow to the other.

4.6.2.3 ASIMS can be used as an alternate in locations (Guard/Reserve) who do not have access to AHLTA/MHS GENESIS but do have ASIMS/ Health Artifact and Image Management Solution (HAIMS) capabilities.

4.6.3.  ASIMS will serve as the tracking mechanism for immunizations of Airmen and Guardians.

4.6.4   For deployers going to countries where yellow shot record is required, document COVID-19 vaccine in their yellow shot record.

## 4.7.  Medical Logistics/Vaccine Distribution.  The US Army Medical Materiel Agency (USAMMA) is responsible for coordinating the distribution of COVID-19 vaccine within DoD.

4.7.1.  Base level medical logistics personnel can order the COVID-19 vaccine from USAMMA.

4.7.2.  Ensure proper COMIRNATY® storage requirements are met.

4.7.3.  Monitor for any relevant shelf-life extensions.

## 4.8.  Aircrew Management.

**22**

CONTROLLED UNCLASSIFIED INFORMATION

    4.8.1.  Adverse reactions are rare for all vaccines.  Benefits of administration of vaccine for this population far outweigh the risks. After receiving COVID-19 vaccine, all flyers, controllers, and special warfare airmen (DD Form 2992 holders) will maintain access to medical care on the ground and not perform aviation-related duties (e.g., flying, controlling, or jumping) for a period of 48 hours after each dose IAW Department of the Air Force Memorandum, "HAF SII 20-02: DNIF Guidance for COVID Vaccines," December 21, 2020.  No formal grounding is required for uncomplicated immunizations.

**23**

# Chapter 5

# ADMINISTRATIVE ISSUES

**5.1.  Exemptions.**

5.1.1.  Guidance for religious accommodations is found in DAFI 52-201.  The MAJCOM, FLDCOM, DRU or FOA commander is the approval and denial authority for religious exemptions.  AF/SG is the appellate authority for any religious vaccine exemption requests.

5.1.2.  Administrative and medical exemptions are handled and coded IAW AFI 48-110.

5.1.2.1.  The only administrative exemption is for members on approved terminal leave.

5.1.2.1.1.  Official documentation from the Squadron Commander including the administrative code and duration (specific date, temporary, indefinite) of exemption will be presented to the Immunization Clinic.  Validated administrative exemptions will then be entered into ASIMS by the Immunization Clinic staff.

5.1.2.2. Medical Exemptions may be authorized under AFI 48-110.  See paragraph 4.5.1. for procedures.

**5.2.  Healthcare Access Guidelines**.  At the time of immunization, all vaccine recipients will be provided information on potential adverse events.

5.2.1.  Whenever an individual presents to an MTF expressing a belief that the condition for which the treatment is sought is related to an immunization received in a DoD clinic, they are authorized initial or emergency care to evaluate and treat an actual or perceived adverse reaction.  Care may also be provided by a civilian medical facility in the following circumstances: an individual believes the situation to be an emergency and the civilian hospital is the nearest facility or an individual is on leave status, TDY or in a non-duty status (ARC personnel) and there are no MTFs within 50 miles.  Pre-approval may still be required depending on the specific circumstances when not an emergent situation.  Refer to AFI 48-110 for additional guidance.

5.2.1.1.  ARC Personnel.  If a member suffers an adverse reaction from a DoD-directed immunization while in an approved duty status, it is an LOD condition.

**5.3.  Refusal Management.**

5.3.1.  Military Members.  A commander ordering a military member to take the COVID-19 vaccine constitutes a lawful order.  However, the member's commander may exercise his or her discretion in handling refusal cases.  When issuing an order to a military member to take the COVID-19 vaccine, if an individual indicates he or she is going to refuse the COVID-19 vaccination or has initially refused the vaccination the following approach should be used:

**24**

5.3.1.1.  Find out why the individual is reluctant.

5.3.1.2.  Provide the member with appropriate education.

5.3.1.3.  Combinations of concerns may require education by a number of people; for example:

> 5.3.1.3.1.  Concerns with vaccine safety, efficacy, or health risks should be sent to the supporting medical organization (if not previously accomplished).  Medical education should be tailored to the specific concerns of the individual (efficacy, reproduction, allergic reactions, etc.) and should be accomplished by a health care provider knowledgeable about the COVID-19 vaccine and who is able to address the specific medical concerns of the individual.  The medical counseling will be documented in the individual's medical record.

> 5.3.1.3.2.  If the member is still reluctant after additional education, send the member to the Area Defense Counsel for an explanation of the potential consequences of his/her refusal.

5.3.1.4.  The commander should ensure the order, and accompanying counseling on appropriate resources, is documented in writing.

5.3.1.5.  If the member refuses to follow the order to vaccinate, consult with the servicing Staff Judge Advocate's office for appropriate action.

5.3.1.6.  Notify the Immunization Clinic of the decision so the proper administrative code can be entered in ASIMS.

5.3.2.  Management of Vaccine Refusal in the Immunization Clinic.

5.3.2.1.  If an individual subject to the vaccination requirement, as identified in paragraph 1.2.3 of this plan, refuses a fully FDA-approved COVID-19 vaccine, the technician should notify the Immunization Clinic NCOIC/OIC before that individual leaves the clinic.  The NCOIC/OIC (or technician if they are not available) should verify again that the individual has been offered the FDA Fact Sheet and the opportunity to ask questions.  Notify the SGH.  (Note: IAW FDA guidance, COMIRNATY® has the same formulation and can be used interchangeably with the FDA-authorized Pfizer-BioNTech COVID-19 Vaccine.  Providers can use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine.)

5.3.2.2.  SGH will ensure appropriate commanders are aware of refusals.

5.3.2.3.  Vaccine refusal should be handled with the appropriate regard to the individual's privacy.

**25**

**ATTACHMENT 1 – RELIGIOUS ACCOMMODATION REQUESTS**

| Post-Accession Immunization Exemption Requests | | |
|---|---|---|
| **STEPS** | | **NOTES** |
| 1 | **Member** requests exemption of immunization requirements via letter addressed to the appropriate approval authority (MAJCOM/FLDCOM) for immunizations) | Include, at a minimum, the name, grade, DoD Identification number, faith group, unit, and specialty code of the Airman or Guardian; the nature of the accommodation requested; the religious basis for the request; a comment on the sincerity of the request; and the substantial burden on the member's expression of religion. (DAFI 52-201, par. 5.3)<br>• Example at DAFI 52-201, Attachment 6.<br>• Decision authority is member's MAJCOM/FLDCOM, DRU or FOA commander (DAFI 52-201, par. 6.6.1)<br>• Member has a *temporary exemption* from immunization while request is processing (DAFI 52-201, par. 2.12) |
| 2 | Unit **commander** counsels the requestor after receiving the request | CC should counsel member that noncompliance with immunization requirements may adversely affect readiness for deployment, assignment, international travel, or result in other administrative consequences (DAFI 52-201, par. 6.6.1.1)<br><br>CC's counseling must be documented in a memorandum and included with the religious accommodation request package. |
| 3 | Military **medical provider** counsels the requestor | Counseling must be documented in a memorandum and included with the request package (DAFI 52-201, par. 6.6.1.)<br><br>Military provider must ensure member is making an informed decision and should address, at minimum, specific info about the disease concerned, specific vaccine info (including product constituents, benefits, risks), and potential risks of infection for unimmunized individuals (AFI 48-110, para 2-6b.(3)(a)2.) |
| 4 | Military **Chaplain** interviews the requestor | Chaplain must complete Interview Checklist (Attachment 5) and draft written memo (DAFI 52-201, par. 5.4) |
| 5 | Submit package to the Religious Resolution Team (**RRT**) for review. | At Installation level, the RRT will include the commander (or designee), Senior Installation Chaplain (or equivalent), public affairs officer, and staff judge advocate, and a medical provider (DAFI 52-201, par. 3.8.1.1)<br><br>Wing/Delta Chaplain, as lead for RRT, shall write the memo to the decision authority detailing the RRT recommendation and any dissenting views of others (DAFI 52-201, par. 5.6.3) |
| 6 | **Staff judge advocate** will draft a written legal review. | The review will also state whether the request and enclosures are complete within the provisions of the DAFI 52-201. |

| | | |
|---|---|---|
| 7 | **Each commander** shall endorse the request with recommendation for approval or disapproval and forward through the chain of command to the decision authority. | Endorsements must address (DAFI 52-201, par. 6.6.1.5):<br>• If there is a compelling government interest and any effect the accommodation will have on readiness, unit cohesion, good order and discipline, health, or safety, and impact on the duties of the member<br>• whether **less restrictive means** can be used to meet the government's compelling government interest<br>• **30 business days** for CONUS requests (**60 business days** for OCONUS requests and requests from Reserve Component members not on active duty) from the date of submission to unit to final action by MAJCOM/FLDCOM commander and notification to the member (DAFI 52-201, Table 2.1)<br><br>NOTE: Although AFI 48-110 says the AF only grants temporary immunization exemptions, the newer DAFI 52-201 states that approvals will remain in effect during follow-on duties, assignments, or locations, and for the duration of a Service member's military career. However, there may be a change in circumstances that requires the accommodation to be reevaluated in the future (e.g., deployment, new duties, or other material change in circumstances). (DAFI 52-201, par. 5.7.2)<br>• DAFI 52-201, par. 5.7.3. New requests for the same accommodation are not necessary upon new assignment, transfer of duty stations, temporary duty, or other significant changes in circumstances, including deployment unless noted on the approval memorandum.DAFI 52-201, par. 5.7.4. Approved accommodations will continue unless the member's commander determines a compelling government interest exists requiring a temporary or permanent withdrawal of the approval. (T-1). |
| 8 | **MAJCOM/FLDCOM, DRU, or FOA commander determines whether approval, or partial / complete denial is appropriate** | If denial - he/she will indicate so on the memorandum, indicate the reasoning for disapproval and forward it to the servicing FSS (DAFI 52-201, par. 6.6.1.6). |
| 9 | **Servicing FSS ensures a copy of the final decision is included in the member's automated personnel records.** | DAFI 52-201, par. 6.6.1.6 |
| 10 | **Member's commander should notify the member of the final decision.** | DAFI 52-201, par. 6.6.1.6 |

**27**

| 11 | Member may appeal decision to AF/SG | Member shall address a memorandum to the appeal authority with a copy given to the previous disapproval authority and provide the memorandum to the unit commander for processing (DAFI 52-201, par. 5.8.2)<br><br>AF/SG is ultimate appeal authority for immunization exemptions (DAFI 52-201, Table 6.1)<br><br>30 business days to resolve appeal (DAFI 52-201, par. 2.10) |
|---|---|---|

| Checklist for Required Package Items | |
|---|---|
| | Member's request letter *(DAFI 52-201, par. 5.3 and 6.6.1)* |
| | Unit CC's Written Counseling w/ requestor *(DAFI 52-201, par. 6.6.1.1)* |
| | Chaplain's Interview Memo w/ requestor *(DAFI 52-201, par. 5.4 and 4.2.7)* |
| | Military Medical Provider Counseling Memo w/ requestor *(DAFI 52-201, par. 6.6.1.2 and AFI 48-110, par. 2-6b.(3)(a)2.)* |
| | SJA Legal Review (DAFI 52-201, par. 5.6.2) |
| | RRT's Recommendation from Wing Chaplain to Unit CC (DAFI 52-201, par. 5.6.1 and 6.6.1.3) |
| | Chain of Command Recommendations (DAFI 52-201, par. 6.6.1.5). NOTE: there may be a change in circumstances that requires the accommodation to be reevaluated in the future (e.g., deployment, new duties, or other material change in circumstances). (DAFI 52-201, par. 5.7.2). We recommend CC endorsements consider whether to include any recommended circumstances that would require reevaluation (such as overseas PCS or deployments). |

**28**

**ATTACHMENT 2 - MEDICAL EXEMPTION REQUESTS**

| Immunization Medical Exemption Requests | | |
|---|---|---|
| **STEPS** | | **NOTES** |
| 1 | **Member** requests medical exemption of COVID-19 immunization requirements | - Member notifies commander of possible contraindication to vaccine |
| 2 | Unit **commander** ensures member is evaluated by military medical provider | |
| 3 | Military **medical provider** evaluates member | - Provider evaluates potential contraindication based on the health of vaccine candidate and the nature of the vaccine under consideration; counsels member on vaccine compliance |
| 4 | **Medical provider makes determination** | - Provider documents exemption in ASIMS and electronic health record |
| 5 | **Commander** reviews ASIMS | - Commander has awareness of member's readiness status |

**29**

# EXHIBIT 3

# SECRETARY OF THE AIR FORCE
## WASHINGTON

0 7 DEC 2021

MEMORANDUM FOR  ALMAJCOM-FLDCOM-FOA-DRU/CC
DISTRIBUTION C

SUBJECT: Supplemental Coronavirus Disease 2019 Vaccination Policy

    This memorandum establishes specific policy and provides guidance applicable to regular Air Force and Space Force members, Air Force Reserve and Air National Guard members. This memo includes supplemental guidance concerning those who requested separation or retirement prior to 2 November 2021, those whose requests for medical, religious or administrative exemption from the COVID-19 vaccine are denied, and those who refuse to take the COVID-19 vaccine.  Compliance with this memorandum is mandatory.

    As the Secretary of the Air Force, it is my responsibility to promote the health, safety and military readiness of all Air Force and Space Force personnel, regardless of duty status, to include Air National Guard performing any duty or training under both Title 10 and Title 32 of the United States Code. COVID-19 poses a direct risk to the health, safety, and readiness of the force. Vaccination against COVID-19 is an essential military readiness requirement for all components of the Air Force and Space Force to ensure we maintain a healthy force that is mission ready.

    Commanders will take appropriate administrative and disciplinary actions consistent with federal law and Department of the Air Force (DAF) policy in addressing service members who refuse to obey a lawful order to receive the COVID-19 vaccine and do not have a pending separation or retirement, or medical, religious or administrative exemption. Refusal to comply with the vaccination mandate without an exemption will result in the member being subject to initiation of administrative discharge proceedings. Service characterization will be governed by the applicable Department of the Air Force Instructions.

    Pending Separation or Retirement - unvaccinated regular Airmen and Guardians who submitted a request to retire or separate prior to 2 November 2021, with a retirement or separation date on or before 1 April 2022, may be granted an administrative exemption from the COVID-19 vaccination requirement until their retirement or separation date.

    Medical, Religious or Administrative Exemption - unvaccinated regular Airmen or Guardians with a request for medical, religious, or administrative exemption will be temporarily exempt from the COVID-19 vaccination requirement while their exemption request is under review.  Service members who receive a denial of their medical, religious, or administrative exemption request have five (5) calendar days from that denial to do one of the following: 1) Begin a COVID-19 vaccination regimen.  If the service member indicates his or her intent is to begin the vaccination regimen, commanders may use their discretion to adjust the timeline based on local COVID-19 vaccination supplies; 2) Submit an appeal to the Final Appeal Authority or

**31**

request a second opinion (medical). If a final appeal or exemption is denied, the service member will have five (5) calendar days from notice of denial to begin the COVID-19 vaccination regimen; 3) If able, based upon the absence of or a limited Military Service Obligation (MSO), and consistent with opportunities afforded service members prior to 2 November 2021, request to separate or retire on or before 1 April 2022, or no later than the first day of the fifth month following initial or final appeal denial.

Regular service members who continue to refuse to obey a lawful order to receive the COVID-19 vaccine after their exemption request or final appeal has been denied or retirement/separation has not been approved will be subject to initiation of administrative discharge. Discharge characterization will be governed by the applicable Department of the Air Force Instructions. Service members separated due to refusal of the COVID-19 vaccine will not be eligible for involuntary separation pay and will be subject to recoupment of any unearned special or incentive pays.

Commanders will ensure all unvaccinated service members comply with COVID-19 screening and testing requirements and applicable safety standards. Leaders should continue to counsel all unvaccinated individuals on the health benefits of receiving the COVID-19 vaccine.

Unique guidance associated with the Air Force Reserve is provided at Attachment 1. Unique guidance associated with the Air National Guard is provided at Attachment 2.

This Memorandum becomes void one-year after date of issuance.

Frank Kendall
Secretary of the Air Force

Attachments
1. Supplementary Guidance for Members of the Air Force Reserve
2. Supplementary Guidance for Members of the Air National Guard

**32**

**Attachment 1**

**Supplementary Guidance for Members of the Air Force Reserve**

1. This supplementary addendum establishes specific policy and provides guidance applicable to Air Force Reserve (AFR) members, pursuant to Secretary of Defense and Secretary of the Air Force guidance as well as AFRC/CD's *AFRC Vaccine Guidance* memo, dated 24 September 2021. Compliance with this guidance is mandatory.

2. Effective 2 December 2021, all AFR members were required to fall into one of the following categories to comply with the vaccination mandate:

    a. Completed a vaccination regimen.
    b. Have requested or received a medical exemption.
    c. Have requested or received a Religious Accommodation Request (RAR).
    d. Have requested or received an administrative exemption.

3. Unvaccinated members who request a medical exemption or RAR will be temporarily exempt from the COVID-19 vaccination requirement while their exemption request is under review. For those members who have declined to be vaccinated, or have not otherwise complied with the guidance above, they are potentially in violation of the Uniform Code of Military Justice (UCMJ) by refusing to obey a lawful order. Commanders should use their discretion as appropriate when initiating disciplinary action.

4. Traditional Reserve (TR) and Individual Mobilization Augmentee (IMA) members who fail to be vaccinated and have not submitted an exemption or accommodation will be placed in a no pay/no points status and involuntarily reassigned to the Individual Ready Reserve (IRR). Active Guard and Reserve (AGR) members who fail to be vaccinated and have not submitted an exemption or accommodation will have their AGR tour curtailed and involuntarily reassigned to the IRR.

5. Members whose medical exemption or RAR is denied have five (5) calendar days from receipt of their denial to do one of the following:

    a. Begin a COVID-19 vaccination regimen.
    b. Request a second opinion (medical) or submit an appeal to the final RAR appeal authority (AF/SG). If a final appeal is denied, the member will have five (5) calendar days from notice of denial to begin the COVID-19 vaccination regimen.
    c. If eligible to retire:
        i. IMAs and TRs may request to retire with a retirement date on or before 1 June 2022 and will be placed in a no pay/no points status not later than 60 calendar days post RAR/appeal notification.

3

**33**

      ii. AGR members may be able to retire if they begin terminal leave status NLT 60 calendar days from RAR/appeal notification.

6. Immediately following notification of final adjudication, AFR members must comply with the vaccination requirement.  Any refusal to receive the COVID-19 vaccine, absent an approved exemption, may be punishable under the UCMJ. Continued refusal will result in involuntary reassignment to the IRR.

7. Members will be subject to recoupment for any unearned special, incentive pays or certain training.

8. Where required, AFR Airmen will complete all out-processing requirements, to include the Transition Assistance Program or Permanent Change of Station actions.

4

**34**

**Attachment 2**

**Supplementary Guidance for Members of the Air National Guard**

1. This supplementary addendum establishes specific policy and provides guidance applicable to Air National Guard (ANG) members pursuant to Secretary of Defense and Secretary of the Air Force guidance. Compliance with this guidance is mandatory.

2. IAW 32 U.S.C. 328, the Secretary of the Air Force hereby withdraws consent for members not fully vaccinated to be placed on or to continue on previously issued Title 32 Active Guard and Reserve (AGR) orders.

3. By 31 December 2021, ANG members, regardless of status, will be classified in the following categories:

    a. Completed or have started a vaccination regimen.
    b. Have requested or received a medical exemption.
    c. Have requested or received a Religious Accommodation Request (RAR).
    d. Have requested or received an administrative exemption.
    e. Declined to be vaccinated.

4. Unvaccinated members who request a medical exemption or RAR will be temporarily exempt from the COVID-19 vaccination requirement while their exemption request is under review.

5. Excluding members with pending or approved medical, religious, or administrative exemption requests, ANG members that have not initiated a vaccination regimen by 31 December 2021 may not participate in drills, training, or other duty conducted under Title 10 or Title 32 U.S.C., and those with a remaining Military Service Obligation will be involuntarily assigned to the Individual Ready Reserve (IRR) in accordance with 10 U.S.C. §651 and DoDI 1235.13.

6. Members whose medical exemption or RAR is denied have five (5) calendar days from receipt of their denial to do one of the following:

    a. Begin a COVID-19 vaccination regimen.
    b. Request a second opinion (medical) or submit an appeal to the final RAR appeal authority (AF/SG). If a final appeal is denied, the member will have five (5) calendar days from notice of denial to begin the COVID-19 vaccination regimen.
    c. If eligible to retire:
        i. Title 32 Drill Status Guardsmen, to include Dual Status Technicians, may request to retire with a retirement date on or before 1 April 2022.
        ii. Active Guard and Reserve (AGR) members may be able to retire if they begin terminal leave status NLT 60 calendar days from the RAR/appeal notification.

7.  Immediately following notification of final adjudication, ANG members must comply with the vaccination requirement. Those with a remaining Military Service Obligation who continue to refuse vaccination, will be involuntarily assigned to the IRR.

8.  Members will be subject to recoupment for any unearned special, incentive pays or certain training.

9.  Where required, ANG members will complete all out-processing requirements, to include the Transition Assistance Program or Permanent Change of Station actions.

**36**

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated, | Case No: 22- |
| *Plaintiffs*, | |
| v. | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force, | |
| *Defendants*. | |

**DECLARATION OF LIEUTENANT COLONEL BRYAN PATRICK SPENCE**

**38**

DocuSign Envelope ID: 298C83B0-01D7-46F9-93C0-7119C75CAEA0

Pursuant to 28 U.S.C. §1746, I, Lieutenant Colonel Bryan Patrick Spence, under penalty of perjury, declare as follows:

1.  I am over the age of eighteen and am competent to make this declaration.

2.  I presently reside in Texas.

3.  I have served as a Department of the Air Force ("Air Force") active-duty service member since May 28, 2003. I transitioned to the reserves in 2014.

4.  Over the course of my career, I have received the following awards: Meritorious Service Medal, Air Medal with 4 Oak Leaf Clusters, Aerial Achievement Medal, Air Force Commendation Medal with Oak Leaf Cluster, Meritorious Unit Award, AF Outstanding Unit Award with 4 Oak Leaf Clusters, and Combat Readiness Medal with 4 Oak Leaf Clusters.

5.  I have also been considered a top performer amongst my peers with numerous accolades such as Top Gun awards, Company Grade Officer awards, Flight Commander of the Year, outstanding flight check rides, mission commander, considered the "Subject Matter Expert" in enemy Integrated Air Defense Networks, and was designated as a "Distinguished Graduate" during the course of my Professional Military Education at Maxwell Air Force Base.

6.  I am an instructor pilot and mission commander in the F-16.  As a combat F-16 fighter pilot, I have deployed numerous times in support of operations across the globe.  Namely, two deployments to Iraqi 2007 and 2008, one to Afghanistan in 2016, another to Pakistan in 2011, Romania in 2018, and even an exchange tour to Poland in 2017.  During one deployment to Iraq, I promoted to the rank of Captain, which was captured as a notable event in the Air Force Times. https://www.f-16.net/f-16-news-article2367.html. I have

**39**

accumulated nearly 2,500 hours of F-16 flight time, of which over 550 are combat hours providing close air support to our troops on the ground. To borrow the phrase; it is the lion's share of flight experience in the F-16.

7.  At no time during my career have I received any form of punishment or reprimand.

8.  I am presently assigned to Naval Air Station Joint Reserve Base Fort Worth, Texas, where my job title is F-16 Instructor Pilot. I have been assigned to that unit since September 2014.

9.  On August 24, 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

10. On September 3, 2021, the Secretary of the Air Force issued a similar mandate ("COVID-19 Vaccine Mandate") requiring that commanders in the Air Force take all steps necessary to ensure all uniformed Airmen and Guardians received the COVID-19 vaccine, which included issuing unit-wide and individual orders to their military members.

11. On October 5, 2021, my commander issued me an order to receive the COVID-19 vaccine.

12. In response to the COVID-19 Vaccine Mandate, service members were permitted to submit a request for either a religious or medical exemption.

13. On October 12, 2021, I submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.

**40**

14. In my RAR, I requested a religious accommodation from immunizations which utilize aborted fetal tissue in their development, manufacturing, testing, or research. Additionally, I sought exemptions from immunizations that alter the body's natural process for acquiring immunity by using synthetic or artificial processes. This appeal is not seeking exemption from all immunizations, only those narrowly defined above.

15. My turning point came after the death of my newborn daughter Vaea in January 2021 after my wife contracted COVID-19. A few months after my daughter's death, my wife and I visited a memorial Cook's Children Hospital established to immortalize children like my daughter who died, but through their organ donations, could save the lives of others. Surrounding the name of my daughter are the names of hundreds of children; each with their own story of grieving parents. Through the death of my daughter, I realized that I can no longer turn a blind eye to the pain that our Father in heaven must feel when he sees the senseless death of innocent children to create or develop these vaccines.

16. In light of the vaccine mandates that threaten, "vaccinate or lose your job," I am reminded of scripture. In Revelations 13:17, it is clear that during the end of days, "No one can buy or sell or engage in commerce, unless he has the mark." Without these vaccines, society is saying that we cannot travel, eat in local restaurants, or even hold a job without them. In essence; engage in commerce. While the mark is not fully defined, I sincerely believe that vaccines will lead to the mark of the beast known throughout the book of Revelation. My hope is to abstain from actions that would condone the mark and lead those who are not yet believers down a path which ultimately would condemn them to hell, separated from Christ, for eternity. Scripture is clear to those that would take the

**41**

mark of the beast, "He also will drink the wine of God's wrath, poured full strength into the cup of his anger, and he will be tormented with fire and sulfur in the presence of the holy angels and in the presence of the Lamb. And the smoke of their torment goes up forever and ever, and they have no rest, day or night, these worshipers of the beast and its image, and whoever receives the mark of its name." Revelation 14:10-11.  It is unknown if I have natural immunity, but I currently have not been infected despite constant exposure to my wife and child in the NICU, both of whom were COVID positive.

17. As a requirement of the RAR process, on or about October 24, 2021, I was interviewed by the 301 FW/Wing Chaplain regarding my sincerely held religious beliefs.

18. On October 24, 2021, the chaplain determined that my religious beliefs were sincere.

19. As an additional requirement of the RAR process, on October 17, 2021, I was counseled by Lieutenant Colonel Jason Rogers, 301FW Medical Group, about the risks of not being vaccinated and becoming ill with COVID-19.

20. On October 20, 2021, I was counseled by my commander that noncompliance with immunization requirements may adversely affect readiness for deployment, assignment, international travel, or result in other administrative consequences.  "Administrative consequences" include adverse administrative actions such as, Letters of Admonition, Letters of Counseling, and Letters of Reprimand, which, if received, would detrimentally impact my career and could negatively impact my chances of promoting to the next rank.

21. In addition to administrative consequences, I could face nonjudicial punishment, which is a career ender.  I would not be able to promote further despite a promising career to this point.  I would no longer be considered for command, nor for career broadening educa-

**42**

tional experiences.  To use the vernacular, I would have a scarlet letter on my record.  The DoD has indicated that an increasing level of pressure will be implemented to encourage vaccination, but ultimately resulting in discharge from the military, or in my situation as a reservist; placed involuntarily into the Individual Ready Reserves (IRR) without due process or recourse.  While in the IRR, reservists are placed in a "no pay-no points" status, which will prevent me from accumulating points to earn a "good year."  The consequence of this action is that despite still being "in the military," I would not be allowed to satisfy the requirements of military service despite remaining in the military beyond 20 years of service.  In essence, the command would prevent me from earning a retirement despite the fact that I am mere months from retirement eligibility after 19 years of honorable service, not withstanding the four years served at the Air Force Academy beginning in 1999.

22. I performed my job duties with no interruptions and no harm to my job performance from March 2020, when COVID-19 mitigation measures were put into effect, until May of this year, when I was removed from attending a training exercise to San Antonio due to Air Force Reserve Command (AFRC) policy that prevents non-vaccinated members from performing any temporary duty (TDY).  Prior to this, I successfully carried out my unit's mission and at no time was there an impact to the mission as a result of COVID-19 to include a TDY to Savanna Georgia to support Presidential protection under Operation Noble Eagle (ONE). In fact, on December 6, 2021, Lieutenant Colonel David Snodgrass, USAF, Commander of the 457th Fighter Squadron, the squadron to which I am attached, submitted a memorandum to the Surgeon General of the Air Force in support of granting

a religious accommodation.  In his memo, Lt Col Snodgrass affirmed that granting my RAR would have no impact on my ability to carry out my duties at home station.  He also affirmed granting my RAR would have no impact on my ability to carry out my duties at a deployed location, unless a COVID-19 vaccination was mandatory for deployment.  In that event he affirmed I would be just as vital to mission accomplishment by remaining at home station and training the second rotation pilots for deployment.  He affirmed granting my RAR would not impact the squadron's ability to accomplish the wing mission of training and deploying combat ready airmen.  He affirmed that due to the persistent shortage of fighter pilots, granting my RAR would improve the overall military readiness of the squadron while failing to do so would reduce overall squadron readiness and increase workload on the remaining pilots.  He affirmed that granting my RAR would have no impact on unit cohesion or good order and discipline.  He affirmed that the single-seat F-16 mission does not require close contact or sharing confined space with other personnel.  He affirmed that means less restrictive than requiring the COVID-19 vaccination – wearing a mask, social distancing, and periodic testing – had been effective for the squadron for the preceding 19 months and could meet the government's interests.  He repeatedly asserted that granting my RAR and allowing the squadron commander to manage how squadron personnel are employed would provide the best outcome for his squadron's readiness and ability to execute its mission.  Thus far, my local command has remained amicable and supportive during this process.

23. Since March of 2020, my job duties included F-16 Instructor Pilot and 301FW Flight Safety Officer while stationed at Naval Air Station Joint Reserve Base Fort Worth, Texas.

DocuSign Envelope ID: 298C83B0-01D7-46F9-93C0-7119C75CAEA0

24. After submitting my RAR on October 12, 2021, on December 1, 2021, I received the initial denial of my RAR.

25. The denial was issued by Lieutenant General Richard W. Scobee, USAF, Commander Air Force Reserve Command, and the reasons cited were risk to the mission, specifically the health, safety and readiness of the force which he claimed is the compelling government interest.

26. However, I was perplexed General Scobee cited those reasons when considering the March 1st DoD guidance which eliminates masking and other requirements for service members, federal civilian workers, and contractors, and also does not require vaccination status to be a factor in the workplace. These same federal civilian contractors, whose vaccine mandate is not presently in effect, are permitted to work in close proximity in our squadron on a daily basis. Thus, General Scobee considers the unvaccinated a threat to mission accomplishment yet part of that mission includes a large civilian workforce that are not vaccinated. For example, our squadron outsources our F-16 simulators to BGI LLC, a government contractor, with numerous employees in close proximity to military members. Other members of my unit are Air Reserve Technicians (ARTs) whose positions are tied to a military position; usually a Traditional Reservist (TR). As an ART, their status falls under the Federal Civilian Employee that holds dual status as a member of the Reserves. Thus, one position is tied to the other. Crew Chiefs, who are responsible for preparing the aircraft prior to each flight, are often ARTs. Several crew chiefs in my unit were placed on a "no pay no points" military status after being denied their own religious accommodation to vaccination, but are still performing their roles in a civilian

**45**

capacity; yet oddly, still required to wear the military uniform while doing so.  They are currently barred from reenlistment, thus will lose their civilian jobs at the completion of their Federal Civilian Employee contract because their military position is being taken from them.  It is a back-door way to circumvent the March 1st guidance.

27. On 7 December 2021, I submitted a Freedom of Information Act request for my package in anticipation of a denial.

28. On 7 March 2022, I received a highly redacted file that offered no insight into the deliberation process of my accommodation request.

29. On December 8, 2021, I submitted my appeal to the Air Force Surgeon General and am awaiting a final response.

30. Pursuant to Department of the Air Force Instruction 52-201, *Religious Freedom in the Department of the Air Force*, dated June 23, 2021, paragraph 2.10, I would expect to receive my appeal denial any day now, which means that administrative consequences will swiftly follow.  That paragraph specifically states that "[a]ppeal of a disapproved religious accommodation request must be resolved no later than 30 business days following the member's written notification of intent to appeal to the next higher decision authority in the chain of command."

31. My civilian employment is as a pilot for American Airlines.  I am a first officer flying the Airbus 320 domestically out of Dallas Fort Worth International Airport.  Under the executive mandate issued by POTUS, I was directed to vaccinate by American Airlines, or risk termination.  I submitted for and was granted an accommodation against vaccination utilizing the same arguments I presented in my RAR to the Air Force.  The stipulations of

**46**

the approved accommodation ask that I simply assess my health prior to each flight, and if I am sick, to stay home, while additionally adhering to CDC social distancing and face mask guidance. Thankfully, regardless of my vaccination status, I am allowed to fly anywhere in the world that does not require a vaccine, which thus far has had zero impact on my domestic routes.

32. While I was mentally distraught over having to decide between my career to be able to provide for my family of four, or violating my sincerely held religious beliefs, I made the difficult decision to hold true to my faith and did not receive a COVID-19 vaccine. The emotional distress this decision is having on me and my family is overwhelming. I go to bed each night thinking my next flight will be my last, and that I then will be forced out of the military, losing my medical coverage and educational benefits for my children. The joy in our family has been replaced by frustration, stress, and confusion over how we have fought for a country that espouses religious freedoms, yet discriminates against those that are now fighting to protect it. I am told my lack of vaccination status is not conducive towards military service despite numerous studies stating that these vaccines do not prevent infection or transmission of COVID-19.

33. However, others who perform the same duties as me and who were granted medical exemptions to the COVID-19 Vaccine Mandate are still able to fly fighters for the Air Force. In fact, I have personal, first-hand knowledge that some of those individuals have been granted medical exemptions and can perform their job duties.

34. Without immediate relief, I am facing administrative consequences to include letters of council and letters of reprimand being placed into my permanent military file; being

**47**

forced into a "no pay, no points" status; and then being involuntarily forced into the Individual Ready Reserve (IRR) without ability to appeal, and eventually being administratively separated from the Air Force despite an honorable 19 year career when I could otherwise retire with honor after 20 years of service. I stand to lose both my military retirement due to not being able to earn a final "Good Year" and the educational benefits I transferred to my nearly four year old son. An injunction will allow me to accumulate enough points for my final "Good Year" and retire with honor. I currently plan to meet the requirements of a Good Year by the end of June 2022. If I am put into a "no pay no points" status prior to the end of June 2022, I will be ineligible for retirement, nor able to meet the obligations for transferring my education benefits to my children.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 26, 2022.

DocuSigned by:

*Bryan Spence*

EBFFDE82002649C...

Bryan P. Spence

**48**

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated, | Case No: 22- |
| *Plaintiffs*, | |
| v. | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force, | |
| *Defendants*. | |

**DECLARATION OF LIEUTENANT COLONEL TYLER WILLIAM STEF**

**50**

Pursuant to 28 U.S.C. §1746, I, Lieutenant Colonel Tyler William Stef, under penalty of perjury, declare as follows:

1. I am over the age of eighteen and am competent to make this declaration.

2. I presently reside in Newark, Texas.

3. I have served in the Department of the Air Force ("Air Force") as an active-duty service member since May 31, 2006.

4. Over the course of my career, I have received the following awards: The Air Education and Training Command Commander's Trophy for being the top graduate in my pilot training class, the Air-to Air Weapon System Evaluation Program "Top Gun" Award for being the top performer in the exercise, the Academic Excellence Award from MQ-9A Training as the top academic graduate, multiple Company Grade Officer, Field Grade Officer, and Instructor Pilot of the Quarter awards, two Air Force Commendation Medals, and three Meritorious Service Medals.

5. I have also been a Distinguished Graduate in multiple programs throughout my career. I was a Distinguished Graduate from the United States Air Force Academy, Undergraduate Pilot Training, Introduction to Fighter Fundamentals, and RQ-170 Initial Qualification Training. I have also been considered a top performer throughout my career and been ranked #1 twelve times by my squadron and group leadership. I was competitively selected to be an inaugural Combat Air Force's Fellow and most recently asked to command the Air Force's premier Combat Training Squadron ("CTS"), the 414th CTS (RED FLAG), where I commanded a 72-member squadron responsible for training 17,100 United States, Joint, and Coalition personnel annually in the largest Department

**51**

of Defense live-fly air-air large-force-exercise.  This position is normally filled by a senior Colonel and I accomplished the job as a new Lieutenant Colonel.

6. At no time during my career have I received any form of punishment or reprimand, other than the punishment I recently received related to the Air Force's COVID-19 vaccination requirement, which is explained in more detail below.

7. I am presently assigned to the 90th Flying Training Squadron at Sheppard Air Force Base ("Sheppard") in Wichita Falls, Texas.  I have been assigned to Sheppard since October of 2021.  I was previously assigned to Nellis Air Force Base ("Nellis") in Nevada from June 2017 to October 2021 where I last served as the Deputy Commander and then Commander of the 414th Combat Training Squadron.

8. From March of 2020 until October 2021, my job duties included commanding a 118-member military, civilian, and contractor team, leading multiple large-force exercises for 372 United States, Allied, and Coalition units, directing operational control and logistics support for 1,200 aircraft and 17,100 personnel annually while overseeing a $23.5 million annual budget. My duty station was Nellis Air Force Base, Nevada.

9. As of October 2021, my job duties include assisting with squadron scheduling duties. However, my job duties would be instructing student pilots in the T-38C and a significant leadership role within the 80th Flying Training Wing if I was not removed from instructor pilot training.

10. Since COVID-19 mitigation measures were put into effect in March of 2020, there have been no interruptions to my job duties or my job performance.  In fact, I successfully carried out my units' missions, and at no time was there an impact to the mission as a result of COVID-19. I was responsible for saving two RED FLAG exercises during the

**52**

time when COVID mitigation efforts were in effect by creating rule-sets that allowed

world-class air-combat training to 3,100 service members

(https://www.nellis.af.mil/News/Article-Display/Article/2721513/red-flag-21-3-uses-

joint-training-to-enhance-interoperability/).

11. On August 24, 2021, the Secretary of Defense issued a mandate for all members of the

Armed Forces under Department of Defense authority on active duty or in the Ready

Reserve, including the National Guard, to immediately begin full vaccination against

COVID-19.

12. On September 3, 2021, the Secretary of the Air Force issued a similar mandate

("COVID-19 Vaccine Mandate") requiring commanders in the Air Force to take all steps

necessary to ensure all uniformed Airmen and Guardians received the COVID-19

vaccine, which included issuing unit-wide and individual orders to their military

members.

13. In response to the COVID-19 Vaccine Mandate, service members were permitted to

submit a request for either a religious or medical exemption.

14. On September 8, 2021, my then-supervisor, the Commander of the 414th Combat

Training Squadron at Nellis, issued me a verbal order during a phone call to receive the

COVID-19 vaccine.  At that time, I was the Deputy Commander of the 414th Combat

Training Squadron.

15. During the call, I told my Commander that my intention was to seek a Religious

Accommodation Request ("RAR").  My Commander stated that he would support and

recommend approval of my RAR.

**53**

16. As a requirement of the Air Force's RAR process, on September 15, 2021, I was interviewed by the Nellis Deputy Wing Chaplain to discuss my sincerely held religious beliefs. Our conversation resulted in the chaplain affirming my sincerely held beliefs while supporting and recommending approval of my RAR. He also stated in the memorandum that memorialized my interview that "[a]ccommodation for immunization waivers have been made previously for currently serving members of the USAF and DoD."

17. That same day, I was counseled by my commander that noncompliance with immunization requirements may adversely affect deployment, assignment, international travel, or result in other administrative consequences. "Administrative consequences" include written counseling and administrative separation, which, if received, would detrimentally impact my career. Noncompliance could also result in nonjudicial punishment under Article 15 of the Uniform Code of Military Justice. This is where the commander offers to issue a service member punishment subject to the member's consent to be tried exclusively by the commander. As part of this process, the member could decide to turn down this offer and elect to be tried by court-martial.

18. However, on September 21, 2021, my commander issued a memorandum for all review authorities determining that there was not a compelling government interest to disapprove my RAR. He recommended approval of my request, stating that he took into account the fact that the Air Force has a compelling government interest in mission accomplishment and the effect my accommodation would have on readiness, unit cohesion, good order and discipline, health, and safety of the unit and myself, and the impact on my duties. He also stated that there were less restrictive means that can be used to meet the

**54**

government's compelling interest by mandating that I continue to practice social

distancing and disciplined mask wear.

19. On September 20, 2021, as an additional requirement of the Air Force RAR process, I

attended medical counseling at the 99th Medical Group at Nellis.  The purpose of the

counseling was to inform me of the dangers of COVID-19 if I were to remain

unvaccinated and the benefits of receiving the COVID-19 vaccine.

20. On September 22, 2021, I submitted my RAR requesting to be exempted from the

COVID-19 vaccine requirement.  However, as I explain below, I later found out that my

RAR was never processed while I was assigned to Nellis.

21. While my RAR was pending, on or about October 1, 2021, I traveled on official orders to

my now-duty station at Sheppard.

22. On October 5, 2021, I arrived at Sheppard, and on October 6, 2021, I went on temporary

duty orders to Wright-Paterson Air Force Base in Ohio for training purposes.  I traveled

back to Sheppard during the evening hours of October 7, 2021.

23. On October 8, 2021, I began Pilot Instructor Training ("PIT") at Sheppard.  The purpose

of me being assigned to Sheppard was so I could become qualified as an instructor pilot

and train student pilots on the T-38C.

24. On October 18, 2021, while still in training, my commander, 90th Flying Training

Squadron, reached out to me via text message asking what my vaccination status was.  I

immediately returned his call and told him that I had submitted a RAR at Nellis in

September of 2021 and that I was not vaccinated.  My commander's response was that I

could continue training at that time.

**55**

25. On October 20, 2021, my commander asked me to meet with him in his office.  He immediately removed me from PIT and placed me on "Admin Hold"[1] because of an August 31, 2021, 19th Air Force Commander policy stating that any officer in a formal flying course will be placed on Admin Hold because of their unvaccinated status while seeking an exemption.  I was removed from PIT despite the fact that all certified instructor pilots who work and instruct in the same spaces and around the same personnel as PIT students like myself at Sheppard who were seeking RARs at that time were allowed to keep performing their duties without being placed on "Admin Hold."

26. On October 27, 2021, I filed an Equal Opportunity complaint against the 19th Air Force Commander on the basis that his August 31, 2021, policy was discriminatory and in direct violation of Department of the Air Force Instruction 52-201, para. 1.3, Department of Defense Instruction 1300.17, para. 1.2b, and Air Force Policy Directive 52-2, para. 1.6. My Equal Opportunity complaint argues that my removal from training is a clear case of religious discrimination as I am either being ordered to violate the tenants of my religious faith or face punitive action and denial of training that I had been scheduled to attend for over two years.  Instead, I was assigned to other tasks such as assisting the squadron front office and scheduling duties, which are normally reserved for a Lieutenant, rather than attend required upgrade training for my job as an assigned T-38C instructor pilot.

27. In the meantime, on October 26, 2021, I received the results of my COVID-19 antibody test, which substantiated that I had overwhelming antibodies to the COVID-19 virus.

---

[1] Admin Hold is a policy commanders can use to pause students in their training for purposes other than medical needs or performance below minimums.  This is typically used when students are dealing with major life events that would detract from training or other similar situations.

**56**

28. On November 1, 2021, I received a phone call from my commander letting me know that my major command, Air Education Training Command ("AETC"), was requesting to take over my RAR processing from my prior major command, Air Combat Command ("ACC").[2]

29. On November 2, 2021, I submitted all of my original RAR documents to my 90th Flight Training Squadron commander.

30. On or about November 7, 2021, I updated my RAR to include a memo requesting that I be exempt from all vaccines and medicines produced or developed using /or containing fetal cell lines or mRNA technology.

31. In my RAR, I explained that I am a devout Christ follower who believes in the sanctity of human life from the point of conception. Any attempt to end that life equates to murder, in my mind. I cannot be a part of any process that utilizes or creates benefit from murdering a baby. Each life is created in God's image. Further, I explained that utilizing mRNA technology in vaccines usurps God's creation of the human genome.

32. On November 29, 2021, my commander informed me that the Religious Resolution Team ("RRT") completed their review of my RAR. But the next day, my commander called me to confirm which RAR I wanted to submit (either my original RAR regarding only the COVID-19 vaccine or the updated version where I requested an exemption to all vaccines). I informed him that I was seeking the exemption to all vaccines to fetal cell lines or mRNA technology, which prompted the need for me to reaccomplish my medical counseling and chaplain interview.

---

[2] My unit at Sheppard falls under AETC, and my prior unit at Nellis falls under ACC.

33. On December 2, 2021, I completed my medical counseling over the phone with Sheppard Flight Medicine.  I was counseled on the risks, benefits, and alternatives of receiving or declining vaccinations that utilize genomic technologies or incorporate fetal cell matter for vaccine development or manufacture. I was later advised that I did not need to complete another chaplain interview.

34. December 6, 2021, was the first day of required COVID-19 testing for unvaccinated Airmen.  All of the unvaccinated were required to meet in the Operations Group auditorium for testing each week.  I have tested negative for COVID-19 every week through May 16, 2022, which was my most recent test date.

35. During the 2021 Christmas break, I learned that the Centers for Disease Control ("CDC") guidance stated that if you have allergies to ingredients in the COVID-19 vaccine, you should not get the vaccine.[3]  This information was significant because in my family, my wife and some of my children have significant allergies and autoimmune diseases. Specifically, my wife and some of my children have Celiac disease, and we have known allergies to gluten and dairy. My children also have sensitivities to mold, heavy metals, and many other substances. One of my daughters, had a severe allergic reaction to a vaccine when she was two years old. Her entire body broke out in a rash, she vomited profusely, and had trouble breathing. Given these unique circumstances, we have spent the last 11 years seeking answers and healing for our family. This journey led us to functional medicine which seeks whole body solutions and healing rather than just treating symptoms. It has solidified our belief in a medical model to promote, seek, and maintain optimal wellness. Due to these concerns, my spouse and children are not

---

[3] https://www.cdc.gov/ coronavirus/2019-ncov/vaccines/ recommendations/specific-groups/allergies.html

**58**

vaccinated. One of my other daughters was recently hospitalized in April 2021. My mother was vaccinated four days prior to visiting us for a few days. On the second day of her visit, my daughter became very lethargic and within 48 hours had broken into a whole-body rash, her eyes became completely bloodshot, she had a high fever, and her resting heartrate was in the 160s. We rushed her to the emergency room where she was immediately admitted to the ICU. She was hospitalized for seven days and was diagnosed with Multi-System Inflammatory Syndrome in Children (MIS-C) as a result of being around my vaccinated mother, according to the attending physician. We had two other doctors confirm this link to her disease. She now has to be seen by a cardiologist for the rest of her life due to damage to her heart. I was, and still am, sincerely concerned for the health of myself and my family due to shared genetics and the link to the vaccine.

36. Considering my family's long history with vaccine-related issues, a close friend informed me that it was possible to test for allergies to the specific components of the COVID vaccine to find out if there would be an adverse reaction. I was relieved, because there was finally a valid avenue in place to address my and my family's medical concerns.

37. Based on my friend's recommendation, I decided to see Dr. Alfred Johnson, D.O., who was a doctor other service members had used for allergy testing.  On Dr. Johnson's website, a few of his credentials are stated as follows: "A fellow, former board member, and Instructional Course Director of the American Academy of Environmental Medicine, Dr. Johnson is also a member of the American college of Osteopathic Internists, the Joint Council of Allergy and Immunology, Pan American Allergy Society (and a former board member), the American Osteopathic Association and the Texas Osteopathic Association,

in which he formerly served as vice president of the Dallas chapter."

(https://www.johnsonmedicalassociates.com/about-dr-johnson/)

38. On January 12, 2022, I met Dr. Johnson and had testing done.

39. On January 14, 2022, I received a letter from Dr. Johnson showing that I tested positive for having a reaction to polyethylene and polysorbate, which are ingredients in the COVID-19 vaccines.

40. On January 18, 2022, I visited with my squadron's assigned flight surgeon to complete my annual physical.  During the visit, I showed the doctor my allergy test results and receive a 365-day temporary medical exemption.  He told me that the exemption was in accordance with Air Force and Sheppard procedures and that he could create the exemption.

41. On January 19, 2022, I let my commander know that I had an approved medical exemption and that I would like to start training on February 8, 2022, the start of the next PIT class.

42. On February 7, 2022, when I arrived at work, I checked my Individual Medical Readiness status.  It stated that I was grounded from flying with no explanation.  I immediately went to my commander who said he was unaware of this development and that I should still expect to start training the following day.

43. Later that day, my commander called me and advised that I was removed from training and that I was back on "Admin Hold."  I was told to continue my telework schedule.  The catalyst for this grounding and removing me from training again was directly related to my submission of allergy testing and subsequent temporary medical exemption.

**60**

44. On February 9, 2022, my commander issued me my initial denial of my RAR.  I did not
    sign it but acknowledged that I had five days to appeal.  I then sent my commander an
    email request for Privacy Act documents related to my RAR denial and asked for an
    extension of time to file my appeal until I had all the documents related to my denial.
    The commander denied that request.

45. The initial denial of my appeal was issued by Lieutenant General Marshall Webb, AETC
    Commander, and the reasons cited were that, although my beliefs are sincere, the Air
    Force's compelling government interest outweighs my individual beliefs and that there
    are no lesser means to satisfy the government's interests. Additionally, he stated that an
    exemption would undermine my authority and credibility as an officer, detracting from
    good order and discipline.

46. However,  Lieutenant General Webb did not state that any consideration was given to the
    fact that the extreme measures needed to combat COVID-19 by AETC during its early
    stages were no longer required (i.e. maximum telework was no longer directed or
    required, occupancy limitations were no longer in effect, I have zero need to interact with
    Basic Military Training personnel, and I will never have to attend Professional Military
    Education again to successfully serve through retirement).  Further, he did not consider
    my ability to socially distance within the 90th Flying Training Squadron and successfully
    complete my duties (my current duties include working in the same spaces and
    interacting with the same personnel that I would be if I was accomplishing duties as an
    instructor pilot), he did not consider that there are zero stateside restrictions that would
    impact my ability to go on temporary duty, he did not consider the fact that I am not
    deployable as a PIT trainee or that I could opt-out of future deployments, he did not

61

consider my natural immunity, he did not consider that "herd immunity" has been created in the 90th Flying Training Squadron with a 95.5% vaccination rate, and he did not consider my offer to continue to test weekly as a lesser restrictive means through retirement.

47. That same day, February 9, 2022, I was advised that I needed to meet with my commander the next day.  When we met, I was issued formal notice that I was under a Commander Directed Investigation ("CDI").  The reasons for the CDI were that it was alleged I, with the intent to deceive, made a false official statement, to wit: proffering a doctor's memorandum reflecting an allergy to polyethylene glycol and polysorbate, which record was totally false, and then known by me to be false and that I feigned an allergy to the COVID-19 vaccine for the purpose of avoiding the mandatory COVID-19 vaccine.

48. At no time did I proffer a false doctor's memo and at no time did I feign an allergy to the COVID-19 vaccine for the purpose of avoiding the mandatory COVID-19 vaccine.  Dr. Johnson has provided other service members with allergy testing that established the basis for such members' presently valid medical exemptions.  For Reservists, the testing has been paid for by the DoD's TriCare Reserve Select insurance.

49. On February 11, 2022, my commander told me that once I appealed my RAR, I would no longer be eligible for a retirement option when the appeal is denied.

50. On February 14, 2022, I submitted my appeal to the Air Force Surgeon General.

51. On or about that same day, I met with the Investigating Officer for the CDI and gave a short statement regarding my visit with the allergy doctor.

**62**

52. From February 15 until February 22, 2022, while on leave in Las Vegas to visit my wife and kids who had not yet moved to Texas, I met with a different allergy, asthma, and immunology doctor, Dr. Matt Morgan, who was a board-certified allergist, for a second opinion on Dr. Johnson's allergy test.  These confirmatory test results again reflected that I tested positive for a reaction to polyethylene and polysorbate.

53. On March 21, 2022, my appeal to the Air Force Surgeon General was denied.  It was clear that the March 1 DoD guidance that eliminates masking and other requirements for service members, federal civilian workers, and contractors and also does not require vaccination status to be a factor in the workplace was not considered as part of the Surgeon General's decision.  Also, federal civilian worker and federal civilian contractor vaccination mandates were not and are still not presently in effect, and those individuals are permitted to work in close proximity with the vaccinated on a daily basis.  I know of one unvaccinated federal employee who I worked with daily during my time at Nellis who continues to work in close proximity to active-duty Air Force officers and pilots.

54. After receiving my appeal denial, I was given five days to get a COVID-19 vaccine or face disciplinary action.

55. The reasons cited for the denial were that the government had a compelling government interest to vaccinate me and that there were no lesser restrictive means to accommodate my request, specifically teleworking or maintaining adequate social distancing.

56. On March 23, 2022, I had a phone interview with an Air Force allergist to determine whether I had an allergy to the COVID-19 vaccines. I told him about the confirmatory test results from Dr. Morgan, and he asked me to submit those as part of my Air Force medical records. I did so on or about March 28, 2022.

**63**

57. On March 28, 2022, I was given the results of the CDI, which were heavily redacted. The results stated that I submitted a false official statement by submitting my record of testing from Dr. Alfred Johnson, D.O.; attempted to disobey a lawful order to receive the mandatory COVID-19 vaccine; and committed an overt act by negligently feigning an allergy to components of the COVID-19 vaccine without proper medical testing or approval.  I was given two weeks to respond to the findings, so I worked with my Area Defense Counsel ("ADC") and delivered a response on April 11, 2022.  My response reiterated my Christian beliefs, summarized my family's diverse medical history, explained my medical concerns and potential link to my daughter's MIS-C diagnosis, my experience being made aware of CDC guidance about allergies to components of the COVID-19 vaccines, and my experience and trust in Dr. Johnson's   allergy testing. At no point did I ever intend to deceive, nor did I deceive, nor did I make a statement that I knew to be false. Acknowledging my family's history of allergies, vaccine reactions, and history of autoimmune issues (specifically in my children), I sought out medical advice from an allergist so that I could be tested for the components of the COVID vaccine. I never once tried to hide the fact that I was trying to see if I was allergic to the COVID vaccine.

58. Additionally, the findings of the CDI determined that Dr. Alfred Johnson was not deemed a legitimate doctor by the Air Force. There was and is no evidence of this based on my own research.  He is a doctor of internal medicine who received over a 4.0/5 rating online, he has a legitimate website, he is licensed to practice in three states, and he sat on the Texas State Medical Board.  There was no reason for me to believe that Dr. Johnson's testing was fraudulent or not reliable, and before going to his office, I had no idea what

**64**

my test results were going to be. Had they turned out negative, it would have alleviated the grave concern I had for my and my family's health. When the test results came back positive, I had no reason to disbelieve the test results and every reason to trust the test results, particularly since other service members have active medical exemptions based on Dr. Johnson's testing. I submitted the test results to my flight doctor, he accepted the results, and I received a medical exemption from taking the COVID vaccine. At every single step in these processes, I was always taking the legal methods and avenues that were available to me.

59. On April 7, 2022, a doctor at the San Antonio Military Medical Treatment Facility called me and let me know he reviewed Dr. Morgan's testing and results. He confirmed that everything was accomplished according to standard allergist care. We collectively decided that I should do in-person allergy testing at that military medical facility. An appointment was then made for May 12 and 13, 2022 for confirmatory allergy testing.

60. On May 2, 2022, I was given a Letter of Admonishment ("LOA") from my wing commander for attempting to disobey a direct order because I went to an out of network doctor (Dr. Johnson) who was deemed illegitimate by the Air Force and for seeking a medical exemption in January 2022 rather than September 2021. Specifically, my wing commander determined that my submission of the allergy test results from Dr. Johnson was an attempt to disobey the direct order to receive the COVID-19 vaccine.

61. On May 9, 2022, my ADC submitted my LOA response to my wing commander.

62. On May 11, 2022, I traveled to the San Antonio military facility for my third allergy test. While I had responses to polyethylene, the allergist there determined that I was not allergic and the recommendation was that I return the following day for a quick follow up

**65**

to receive the Pfizer vaccine with a 4-hour observation period post vaccine administration.

63. On May 13, 2022, I declined the Pfizer vaccine and, at that point under significant duress, let the San Antonio allergist know that I would consider the Johnson and Johnson vaccine. Due to the military allergist witnessing my vasovagal syncope (a sudden drop in heart rate and blood pressure leading to fainting) during skin testing, he stated that I should find an allergist to administer the shot or a flight medicine doctor or clinic that is familiar with allergies and vasovagal syncope. I am advised to not go to a pharmacy to receive a COVID-19 shot.

64. That same day, my ADC asked me to get a Memorandum for Record from the San Antonio military allergist memorializing that my visit with him was appropriate, given the results of my prior allergy test. The military allergist stated that his notes in my medical records would be a more appropriate source document legitimizing my visit to the San Antonio clinic.

65. On May 14, 2022, the pressure to get vaccinated continued to mount, and the stress was becoming unbearable. I informed my commander about the results of the San Antonio allergy test and that I was seriously considering getting the Johnson and Johnson shot. I informed him that the San Antonio allergist recommended that I receive the vaccine only from an allergist or doctor familiar with allergic reactions. However, I was unable to find a local allergist or clinic that would observe me and had the Johnson and Johnson vaccine available.

66. I informed my commander that I was unable to find an allergist to administer the Johnson and Johnson vaccine and he recommended that I just get the vaccine at a pharmacy and

**66**

then drive to an allergist to be observed or hire an allergist to accompany me to the pharmacy.  I looked through the CDC vaccine finder website for clinics that had experience with allergies and had the appropriate vaccine, I called the Sheppard Immunizations Clinic to see if they had the Johnson and Johnson vaccine, I called the local health district, and I called pharmacies that had the Johnson and Johnson vaccine to ask if they would sell me a vial of the Johnson and Johnson vaccine so I could bring it to an allergist, clinic, or my MTF for administration of the vaccination and subsequent observation, all to no avail.

67. On my drive home from work that day, my commander called me and suggested that I should be careful where I get the vaccine and that the establishment should be "above reproach," like a CVS or Walgreens.  He stated that he had conversations with some folks and that I needed to be careful on where I got the vaccine (so that the establishment would not be questioned). This advice on going to a pharmacy like CVS or Walgreens was completely contrary to the San Antonio allergist's recommendations.

68. At this point, I felt hopeless and like I had zero options left and that I had no choice but to violate my sincerely held religious beliefs and receive the vaccine.  I felt it was the only way I could keep my job and continue to provide for my family and to be able to support them in the future.  I immediately started praying for forgiveness and for protection for both myself and my family.

69. On May 17, 2022, my ADC sent my wing commander the San Antonio allergist's notes confirming that I had a valid reason for the visit and the follow-up allergy testing.  My ADC then informed me that the wing commander was planning on upholding my LOA

**67**

and that the Staff Judge Advocate (the wing commander's legal advisor) stated that "it wouldn't hurt" my chances of the LOA being rescinded if I were to receive the vaccine.

70. I then received multiple texts and a call from my commander asking if I got the vaccine. I told him that I had until close of business on May 18, 2022, to receive it, but he told me I must get it first thing in the morning on May 18 to not jeopardize the 5-day timeline. I was still very troubled by having to violate my sincerely held beliefs and the added pressure of having to get the vaccine the following morning was overwhelming.

71. On May 19, 2022, my commander sent me a text message asking me if there are any vaccines available overseas that meet my religious concerns. I was not aware of any of the top of my head, but told him I would look into the World Health Organization approved vaccine lists. I found one vaccine, COVAXIN, available in India, that (based on limited research) looked as though it might meet my religious concerns and communicated that to my commander via text message. He did not respond.

72. On May 23, 2022, my commander issued me a Letter of Counseling ("LOC") stating that I am expected to comply with the order directing me to get the COVID-19 vaccine now that my appeal has been denied, that my unwillingness to follow orders is an act of insubordination, and that any future misconduct may result in more severe action to include administrative actions and involuntary separation, which I can be subject to at any given moment from this day forward. In fact, I suspect that involuntary separation will be the next step my commander will take since he has punished a fellow airman in this manner for also refusing the COVID-19 vaccine. During the meeting with my commander while receiving the LOC, he asked if I had thought about the overseas vaccine option. I told him that I did not know what he meant by that statement because he

**68**

had only asked me if there were any available overseas that met my religious requirements. He asked if I knew a certain captain in the 80th Flying Training Wing. I did not, but my commander told me to look him up and call him as soon as possible. My commander then stated that I must make the decision about the overseas vaccine option without delay. I clarified that if I chose to travel for a vaccine, that it would be self-funded, and he affirmed. After the LOC issuance, I made a few phone calls to people I work with on base to inquire about this captain. I learned that his commander offered and granted him Permissive Temporary Duty (where the member does not need to take time off, but the government does not fund the trip) to travel to India to receive the COVAXIN vaccine. He is now deemed in compliance with the vaccine mandate.

73. Having a LOA and LOC on my record has already significantly impacted my ability to attend future professional military education opportunities and my opportunity to promote to Colonel, thereby depriving the Air Force of a leader with impeccable character and demonstrated leadership ability.

74. While I have been mentally distraught over having to decide between my career, being able to provide for my family of eight on only my income, and violating my sincerely held religious beliefs, I have made the difficult decision to hold true to my faith and not receive a COVID-19 vaccine. My family has been under unimaginable stress and mental anguish throughout this entire process. I have had to constantly defend my faith, while still working in an environment and around the same people (all-the-while remaining healthy and free of COVID-19). Further, I had to defend my integrity and credibility as a Christian, officer, father, husband, and human being for seeking a legal process to validate my immense medical concerns for myself and family. Every single day is filled

**69**

with stress due to the unpredictable and punitive nature of seeking a religious and medical accommodation from the COVID-19 vaccine while trying to figure out and manage my family's future.

75. Further, I have been grounded and unable to fly or complete my instructor training since October 2021.  I cannot get flight hours necessary for me to seek employment with the airlines should I be administratively separated from the Air Force.  I will not receive a paycheck should I be kicked out (we are a single income family that relies on my income to survive – my wife is a stay-at-home mom who homeschools our six children) and will not have access to other benefits, such as healthcare.  I will be unable to complete my remaining 4 years of service and receive retirement income should I be kicked out—this equates to about $3 million in income should I live until the normal life expectancy in the United States.  Should I receive anything other than an honorable discharge, I will lose the GI bill that I transferred to my daughter.  Additionally, I am eligible for retention bonuses this year that would equate to between $105K and $140K given I serve through 20 years of service; I will be unable to receive this should I be kicked out.

76. Without immediate relief, I am facing further adverse administrative actions, and the imminent likelihood of involuntary separation.  These actions will undoubtedly put an end to my career, will have a significant impact on my ability to send my 18-year-old daughter to college later this year, and will eliminate any chance of seeking retention bonuses or a retirement income.  Should a bad conduct code be added to my DD214 upon separation, as is happening across the DOD, it would affect my ability to garner any meaningful employment outside of the military.  Only immediate injunctive relief at this point can stop the progression of these real harms from happening.

I declare (or certify, verity, or state) under penalty of perjury that the foregoing is true and correct.  Executed on May 26, 2022.

_____
Tyler William Stef

**71**

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated, | Case No: 22- |
| *Plaintiffs*, | |
| v. | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force, | |
| *Defendants*. | |

**DECLARATION OF MAJOR RYAN CORCORAN**

**73**

Pursuant to 28 U.S.C. §1746, I, Major Ryan Corcoran, under penalty of perjury, declare as follows:

1. I am over the age of eighteen and am competent to make this declaration.

2. I presently reside in Montgomery, Texas.

3. I have served with the Department of the Air Force ("Air Force") since December 20, 2002.

4. Over the course of my career, I have received many awards including two Meritorious Service Medals, an Air and Space Achievement Medal, an Afghanistan Campaign Medal, and an Iraq Campaign Medal.

5. I am presently assigned to Headquarters, United States Air Forces in Europe / Air Forces in Africa at Ramstein Air Force Base where my job title is Individual Mobilization Augmentee to the Deputy Chief Regional Analysis Branch. I have been assigned to that office since November 1, 2015.

6. On August 24, 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

7. On September 3, 2021, the Secretary of the Air Force issued a similar mandate ("COVID-19 Vaccine Mandate") requiring that commanders in the Air Force take all steps necessary to ensure all uniformed Airmen and Guardians received the COVID-19 vaccine, which included issuing unit-wide and individual orders to their military members.

**74**

8.  On October 7, 2021, my commander issued me an order to receive the COVID-19 vaccine.

9.  In response to the COVID-19 Vaccine Mandate, service members were permitted to submit a request for either a religious or medical exemption.

10. On October 24, 2021, I submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.

11. In my RAR, I explained my sincerely held religious objection to receiving medication that was developed with the aid of aborted fetal cells.  I also explained my sincere belief that my body is a temple unto the Lord, and that I should refrain from injecting substances into it that might compromise my body.

12. As a requirement of the RAR process, on November 8, 2021, I was interviewed by the Ramstein Air Force Base chaplain regarding my sincerely held religious beliefs.

13. On November 8, 2021, the chaplain determined that my religious beliefs were sincere and that my beliefs would be substantially burdened if I was required to take a COVID-19 vaccine.  The chaplain report noted that my broader theological convictions are consistent with my system of belief.  He went on to underscore my position that, if there were not a "morally dubious" vaccine, I would be open to receiving the vaccine.

14. As an additional requirement of the RAR process, on November 5, 2021, I was counseled by Philip Oro, MD of the 86th Medical Group about the risks of not being vaccinated and becoming ill with COVID-19.

15. On October 29, 2021, I was counseled by my commander that noncompliance with immunization requirements may adversely affect readiness for deployment, assignment, international travel, or result in other administrative consequences.  "Administrative

**75**

consequences" include non-judicial punishment, which, if received, would detrimentally impact my career and retirement benefits which I have earned.

16. On December 7, 2021 I received a memo from my commander listing alternative vaccines which are WHO-approved, not FDA-approved and which do not carry Emergency Use Authorization.  This memo inquired as to my willingness or unwillingness to accept any of these alternatives to those available in the United States. As was within my rights, I declined to make what I saw as a commitment to take a foreign alternative which I knew nothing about.  Furthermore, as a career civilian pilot, the Federal Aviation Administration (FAA) makes mention only of the three Covid-19 shots available in the US and does not appear to have reviewed those foreign alternative vaccines.  By taking one, I may be putting my FAA Medical Certificate in jeopardy.

17. Furthermore, it is contradictory that the Air Force is willing to subject me to a foreign product which has not been tested and approved by the US government, while at the same time discounting the natural immunity to Covid-19 which I have attained after having recovered from the illness in January of 2022, and for which I can provide documentation.

18. On December 12, 2021 I sent my commander an addendum letter to General Harrigian in which I further detailed the traumatic memories my family and I had been forced to relive by the Air Force's process for Religious Accommodation.  In that memo I further offered a way forward, namely to perform my duties one last time from Kelly Air Force Base in San Antonio, TX and then to retire on January 1, 2023.

19. As explained more fully below, I am at the end of a 20-year career with the Air Force— my anniversary is December 20, 2022.  Receipt of an administrative action is a terrible

**76**

way of ending my career a mere several months before the end.  It would taint my

spotless service record, which is something that no amount of money can rectify.

Additionally, I believe that, in accordance with a December 7, 2021, memorandum from

the Secretary of the Air Force, my command is refusing to act on my application for

retirement, which is set for January 1, 2023, until I receive the vaccine.

20. Since COVID-19 mitigation measures were put into effect in March of 2020, there have

been no interruptions to my job duties or my job performance.  In fact, I successfully

carried out my unit's mission on a mostly remote basis and at no time was there an

impact to the mission as a result of COVID-19.

21. From March of 2020 until most recently, my job duties included classified intelligence

review and providing analysis to my command.  My assigned duty station has remained

Ramstein Air Force Base and I have performed my duties remotely from Kelly Air Force

Base in San Antonio Texas in order to support my unit of assignment's mission.

22. After submitting my RAR on October 24, 2021, on March 2, 2022, I received the initial

denial of my RAR.

23. The denial was issued by Gen. Jeffrey Harrigian and the reasons cited were that my

remote working solution was not a "long-term solution" and that my refusal to obtain a

vaccine would place Department of Defense ("DoD") personnel at risk.

24. However, Gen. Harrigian's decision did not state that any consideration was given to my

addendum memorandum dated December 12, 2021.  In that memorandum, I detail, at

length, the trauma my family faced due to loss of pregnancy and how abortion personally

affects deeply held religious conviction.  The decision also did not consider and the

March 1, 2022, DoD guidance that eliminates masking and other requirements for service

members, federal civilian workers, and contractors and also does not require vaccination

status to be a factor in the workplace.  Also, the federal civilian worker and federal

civilian contractor vaccination mandates are not presently in effect and that those

individuals are permitted to work in close proximity with me on a regular basis in the

physical contexts referenced by Gen. Harrigian's decision.  Furthermore, as stated above,

I am able to provide documentation of Covid-19 Antibodies due to having had Covid-19

in January 2022.

25. On March 8, 2022, I submitted my appeal to the DAF Surgeon General.

26. On April 10, 2022, my appeal was denied, and I was advised of its denial on April 22,

2022.  I was then ordered to begin the Covid-19 vaccine regimen within one week or

submit for voluntary separation from the Air Force.  I was further advised that per

Secretary of the Air Force guidance, if a member chooses to retire, that member must

retire no later than the first day of the fifth month following their final denial of a

religious accommodation.  Therefore, since my request for retirement falls outside of this

timeline, I am ineligible to retire and must either take the vaccine in violation of my

sincerely held religious beliefs or request voluntary separation rather than retirement.

27. The reasons cited for the denial were that my non-vaccinated status would prevent the Air

Force from effectively leveraging me and that remote work would not be an acceptable

solution.

28. On April 29, 2022, I submitted a request for reconsideration as my circumstances had

changed.  After I submitted my exemption requests, and before I received my final

denial, I completed my full-service requirement to satisfy a "good year" per the Air Force

Reserve and I have a pending retirement application.  The practical consequence of this is

**78**

that I have alleviated all of the concerns outlined in the initial denial of my exemption requests: 1) I have already completed my retirement requirements, and 2) I have already completed my last day in uniform.  I now simply require an accommodation to reach my 20th year of service on December 20, 2022, and retire on January 1, 2023.

29. This process has caused me to be immensely mentally and emotionally distraught.  As outlined in my addendum to my initial application, this ordeal has forced me to relive painful memories from my early childhood.  By being forced to choose between my career and the vaccine, I am being forced to relieve these memories for which no amount of money can make me whole.

30. My commander has indicated to me that the Air Force will process a Letter of Reprimand against me and that it will be delivered to my file soon, which means I could receive it today.  This could have a detrimental effect to both my career and retirement.

31. Without immediate relief, I am facing irreparable harms.  Receiving administrative action (Letter of Reprimand) in contravention of my constitutional rights is not something that can be rectified later with money.  If I were to receive the vaccine to stop the Letter of Reprimand from hitting my file, then I have taken an action that cannot be undone, and it would have been a functionally-compelled action in violation of my sincerely held religious belief.  In addition, reliving, and continuing to relive the trauma of my childhood due to this ordeal is not something that can be rectified later or rectified with funds.

32. In fact, I have already faced the harms that come from extreme mental and emotional anguish, and the burden of having to choose between saving a distinguished twenty-year

**79**

military career or violating my sincerely held religious belief.  No service member should have to be in this position.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 24, 2022.

_____
Ryan Corcoran

**80**

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated, | Case No: 22- |
| *Plaintiffs*, | |
| v. | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force, | |
| *Defendants*. | |

**DECLARATION OF LIEUTENANT MITCHELL BRANDON PIKE**

**82**

Pursuant to 28 U.S.C. §1746, I, 1st Lieutenant Mitchell Brandon Pike, under penalty of perjury, declare as follows:

1. I am over the age of eighteen and am competent to make this declaration.

2. I presently reside in New Mexico.

3. I have served as a Department of the Air Force ("Air Force") service member since May 11, 2019. I was hired by the 457th Fighter Squadron at Naval Air Station Joint Reserve Base Forth Worth, Texas as the number 1 pick out of a 500-person applicant pool for the June of 2018 hiring board.

4. At no time during my career have I received any form of punishment or reprimand.

5. I am presently assigned to 8th Fighter Squadron at Holloman Air Force Base in Alamogordo where my job title is F-16 Student Pilot. I have been assigned to that unit since February 2, 2022. Upon completion of F-16 initial qualification training in September of 2022, I will be gained by my home reserve unit at Naval Air Station Joint Reserve Base, Fort Worth, Texas for permanent duty.

6. On August 24, 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

7. On September 3, 2021, the Secretary of the Air Force issued a similar mandate ("COVID-19 Vaccine Mandate") requiring that commanders in the Air Force take all steps necessary to ensure all uniformed Airmen and Guardians received the COVID-19 vaccine, which included issuing unit-wide and individual orders to their military members.

**83**

8. During September of 2021, while I was at training, I received a phone call from my commander instructing me to receive the vaccine.

9. In response to the COVID-19 Vaccine Mandate, service members were permitted to submit a request for either a religious or medical exemption.

10. On October 12, 2021, I submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.

11. In my RAR, I explained that 1) I am a Christian, 2) abortion conflicts with my sincerely held religious beliefs, 3) I believe my body is a temple of the Holy Spirit, and 4) abstaining from the COVID vaccination prevents evil from entering my life. I am willing to comply with less burdensome and lesser restrictive protective measures than taking the COVID-19 vaccine.  I am open to a number of accommodations, including testing and masking.

12. As a requirement of the RAR process, on October 14, 2021, I was interviewed by the Air Force base chaplain at Randolph Air Force Base regarding my sincerely held religious beliefs.

13. On October 14, 2021, the chaplain determined that my religious beliefs were sincere and that my beliefs would be substantially burdened if I was required to take a COVID-19 vaccine.  The chaplain stated that she was impressed with my desire to do what is right in accordance with the Air Force's guidelines and the fact that I was open to a number of less restrictive reasonable accommodations.

14. As an additional requirement of the RAR process, on October 14, 2021, I was counseled by Lisa Taylor, FNP-C from the Department of the Army about the risks of not being vaccinated and becoming ill with COVID-19.

**84**

15. On October 14, 2021, I was counseled by my commander that noncompliance with immunization requirements would preclude me from attending F-16 initial qualification training. However, nearly three months later, I was able to initially participate in the training due to a 365-day medical exemption I received in January of 2022 for being allergic to two ingredients that are present in the COVID-19 vaccines.

16. As a result, I participated in initial qualification training until April 6, 2022. At that time, my training manager informed me that I had to call the immunology department at Joint Base San Antonio Lackland, Texas about the validity of my medical exemption due to a vaccine allergy. When I spoke with that department, I was told that the allergy test I received from Dr. Alfred Johnson was insufficient and that my medical exemption was being pulled.

17. After submitting my RAR on October 12, 2021, on January 7, 2022, I received the initial denial of my RAR.

18. The denial was issued by Lieutenant General Richard Scobee and the reasons cited were simply that less restrictive means were unavailable. General Scobee specifically stated that, "since less restrictive means of protecting our force from COVID-19 are unavailable, all uniformed Airmen must be fully vaccinated against COVID-19 and other infectious diseases."

19. I received my medical exemption on January 10, 2022, which was three days after my RAR was denied. Because I received my medical exemption around the same time my RAR was denied, my training manager told me that I could enter initial qualification training without submitting my appeal for my RAR.

**85**

20. After my medical exemption was pulled and I was removed from initial qualification training, I submitted my appeal to the Air Force Surgeon General on April 6, 2022.

21. On May 18, 2022, I received official notice via telephone that my appeal was denied. I was given five days to receive a COVID-19 vaccine.

22. Since I do not have a copy of the denial letter, I cannot comment on the reasons the Air Force Surgeon General cited as the basis for denial.

23. Since I did not get vaccinated by the close of business on Monday, May 23, 2022, I will soon receive adverse administrative action and could receive nonjudicial punishment after that. I expect to receive a Letter of Reprimand ("LOR") for not getting vaccinated because another student at Holloman received an LOR for refusing vaccination.

24. Any administrative action or nonjudicial punishment will undoubtedly have a harmful effect on my career. To start, I have wanted to be an Air Force pilot since I was five years old. My father was an Air Force pilot, and I have always wanted to follow in his footsteps. I am presently three years into my training. However, last year, I had an episode of kidney stones, and I received a rare waiver that allows me to continue flying. That waiver expires in November of 2024. Every day that I do not train threatens my ability to become a fighter pilot. If that waiver expires without my training being complete, then I may never be able to complete my path to becoming a fighter pilot. There is no amount of money that can rectify that situation, and the substantial likelihood of that harm increases with each day.

25. Additionally, if I am discharged with any characterization that is less than an honorable discharge, I will not be able to pursue a six-month TriCare extension, I will lose

**86**

healthcare as I try to keep the kidney stones at bay, and my chances of being hired by a commercial airline will be destroyed.

26. Since my training has been paused, my life has been on administrative hold, and the mental and emotional stress that comes with that has caused mild depression which is beginning to take a physical toll on my health.

27. I should be continuing training right now, as I have safely and successfully performed all of my job duties since the beginning of the pandemic in March of 2020.  There have been no interruptions to my job duties or my job performance.  I successfully carried out my unit's mission and at no time was there an impact to the mission as a result of COVID-19.

28. While I have been mentally distraught over having to decide between my career, being able to provide for myself, and violating my sincerely held religious beliefs, I made the difficult decision to hold true to my faith and have not received a COVID-19 vaccine.

29. Without immediate relief, I am facing the incredibly and increasingly difficult decision of choosing between my sincerely held religious beliefs and my life-long dream of becoming a fighter pilot, all because my constitutional rights are being violated.  A discharge at this early stage of my career along with a documented LOR before I have accumulated enough flying hours to secure a civilian job as a commercial airline pilot will make a future career in aviation nearly impossible.  Thus, not only am I looking at the loss of my military career, but without an injunction, the way in which my military career will end will cause any future civilian aviation career to become unfeasible.  And, finally, as previously mentioned, because of my unique status with the medical flight waiver for kidney stones, each day that passes further compromises my ability to complete my training to become a fighter pilot.

**87**

I declare (or certify, verity, or state) under penalty of perjury that the foregoing is true

and correct.  Executed on May ⎯25⎯, 2022.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Mitchell Brandon Pike

**88**

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated, | Case No: 22- |
| *Plaintiffs*, | |
| v. | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force, | |
| *Defendants*. | |

**DECLARATION OF MAJOR STEVEN RANDALL HAYNES**

**90**

Pursuant to 28 U.S.C. §1746, 1, Major Steven Randall Haynes, under penalty of perjury, declare as follows:

1.  I am over the age of eighteen and am competent to make this declaration.

2.  I presently reside in Oklahoma.

3.  I will have served 16 years as a Department of the Air Force ("Air Force") Officer as of May 31, 2022, while currently serving as an Active Guard Reserve member.

4.  Over the course of my career, I have received the following awards: Squadron Field Grade Officer of the Year (2017), Squadron Field Grade Officer of the Quarter x4, Squadron Pilot of the Year 2015 and Reservist of the Quarter.

5.  At no time during my career have I received any form of punishment or reprimand, other than the punishment I received as a result of the Air Force's COVID-19 vaccination requirement, which is explained in more detail below.

6.  I am presently assigned to 5th Flying Training Squadron at Vance Air Force Base in Enid, Oklahoma, where my job title is Assistant Flight Commander/Instructor Pilot. I have been assigned to that unit since April of 2019.

7.  On August 24, 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

8.  On September 3, 2021, the Secretary of the Air Force issued a similar mandate ("COVID-19 Vaccine Mandate") requiring that commanders in the Air Force take all steps necessary to ensure all uniformed Airmen and Guardians received the COVID-19 vaccine, which included issuing unit-wide and individual orders to their military members.

**91**

9. On September 24, 2021, my commander issued me an order to receive the COVID-19 vaccine.

10. In response to the COVID-19 Vaccine Mandate, service members were permitted to submit a request for either a religious or medical exemption.

11. On October 12, 2021, I submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.

12. In my RAR, I explained that my religious beliefs include eating clean meat in accordance with Leviticus 11, keeping the commandments of God per 1 Corinthians 7:19 and Revelation 14:12, and the sanctity of human life. Other applicable beliefs I referenced included, "Be Holy because I am Holy" from Leviticus 11:44 and 1 Peter 1:15-16 which relates to not eating unclean animals, keeping the Sabbath and loving our brothers and avoiding sorcery among other things. I explained 2 Corinthians 6:17 says, "Come out from them be separate, says the Lord. Touch no unclean thing, and I will receive you…let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God." I explained I believe that our "bodies are the Temples of the Holy Spirit (1 Corinthians 6:19)" and we are directed to "be Holy because I [the Lord] am Holy" (1 Peter 1:16) which draws from Leviticus 11:44 (clean and unclean foods), Leviticus 19:2 (keeping the Sabbath and various rules towards loving your brother as yourself), Leviticus 20:7 (judgment towards persons that seek mediums and spiritists). I explained I believe we are "fearfully and wonderfully made (Psalm 139:14)" in "the image of God (Genesis 9:6)" and our bodies are "temples of the Holy Spirit (1 Corinthians 6:19)." Thus, we should not do harm to our bodies and souls by intentionally ingesting or injecting unclean foods/animal cells, aborted fetal cells, gelatins from pigs or other unclean animal cells, or known toxins among other things. I explained it is my

**92**

belief that the COVID-19 vaccines contain some or all of these unclean things, and it is my belief that receiving the COVID-19 vaccines would be unholy and desecrate my body as a temple of the Holy Spirit.

13. In my RAR I explained that on the morning of September 6, 2020, while I was in Colorado hunting with my father, I was startled awake from a dream.  I began praying and the interpretation of the dream from the Holy Spirit was, "They are going to force unclean things on you." Dreams are consistent with my faith as Joel 2:28 states, "it will come to pass that I will pour out My Spirit on all mankind; and your sons and daughters will prophesy, your old men will dream dreams, your young men will see visions."  I explained I believe that this dream and its interpretation applies to the COVID-19 vaccinations and is a command from God that I am not to receive the vaccinations.

14. In my RAR, I explained that I believe that injecting unnatural substances such as (4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate), as well as a man-made mRNA coded particle have both negative spiritual and physical implications. The spiritual consequences, while not visible, are significant and can manifest into our physical lives. I explained I believe violating the guidance of the Holy Spirit by receiving the COVID-19 vaccines would be to separate myself from the Lord's will and walk in violation of His will for my life. This is important because Jesus warns us that, "Not everyone who says to Me, 'Lord, Lord,' will enter the kingdom of heaven, but he who does the will of My Father who is in heaven will enter (Matthew 7:21)." Thus, if I do not do the Father's will, I may be excluded from the promise. I explained this spiritual act of disobedience manifests itself in the physical world as Paul describes to the disobedient church at Corinth, "For this reason many among you are weak and sick, and many have fallen asleep [in death] (1 Corinthians 11:30)."  Thus, accepting this vaccine is both

**93**

spiritually and physically unclean and sinful to me, a clear violation of God's Word, a violation of my conscience and my sincerely held religious belief.

15. As a requirement of the RAR process, on September 8, 2021, and October 4, 2021, I was interviewed by the Vance Air Force Base chaplain regarding my sincerely held religious beliefs.

16. On October 4, 2021, the chaplain determined that my religious beliefs were sincere and that my beliefs would be substantially burdened if I was required to take a COVID-19 vaccine. He also determined I would be sinning against God if I were to receive the currently available COVID-19 vaccines and recommended that I be granted a religious accommodation waiver from having to receive the COVID-19 vaccination.

17. As an additional requirement of the RAR process, on September 29, 2021, I was counseled by Major Alyssa Turner, USAF, NC, Aeromedical Nurse Practitioner, Vance Air Force Base, about the risks of not being vaccinated and becoming ill with COVID-19.

18. On September 29, 2021, I was counseled by my commander that noncompliance with immunization requirements may adversely affect readiness for deployment, assignment, international travel, or result in other administrative consequences. "Administrative consequences" include written counseling and administrative separation, which, if received, would detrimentally impact my career. Noncompliance could also result in nonjudicial punishment under Article 15 of the Uniform Code of Military Justice. This is where the commander offers to issue a service member punishment subject to the member's consent to be tried exclusively by the commander. As part of this process, alternatively, the member could turn down this offer and elect to be tried by court-martial.

**94**

19. Since COVID-19 mitigation measures were put into effect in March of 2020, my vaccination status did not prevent me from continuing to execute the mission to train pilots or support the Air Force Reserves in that endeavor. Since March of 2020, I have flown 351 sorties which totaled to 497 flight hours and provided approximately 684 hours of instruction to student pilots in training. Additionally, I have carried out my primary duties within my squadron by writing numerous orders for 12 traditional reservists and ensured travel vouchers were completed, leave was processed, awards and performance evaluations were written, a change of command was planned down to individuals seats and other nuanced duties of daily operations.   There have been no interruptions to my job duties or my job performance throughout this time.  In fact, I successfully carried out my unit's mission and at no time was there an impact to the mission as a result of COVID-19.

20. In March of 2020 until October 2020, my job duties included teaching principles of flying and evaluating overall student performance and training as a T-6 IP.  In October of 2020, I became part of Squadron leadership as Assistant Flight Commander and assist the flights 16 reserve T-6 IPs in support of the mission. My purpose is to lead, mentor, & evaluate flight members.  Additionally, I ensure their operational, administrative, personnel and training issues with the reserve system are taken care of along with their day-to-day order and pay issues are resolved.

21. Presently, my job duties include all the aforementioned Assistant Flight Commander duties minus being an Instructor Pilot due to the fact that I have been suspended from aviation duties.

22. After submitting my final RAR documents on October 7, 2021, on January 7, 2022, I received the initial denial of my RAR. I was officially notified of the denial on January 9, 2022.

**95**

23. The denial was issued by Lieutenant General Richard W. Scobee, USAF, Commander Air Force Reserve Command, and the reason cited was mission accomplishment, specifically the health, safety, and readiness of the force.

24. However, Lieutenant General Scobee did not address or attempt to rationalize the 2 pilots within my unit that have the same potential to impact mission success but are medically exempt from taking the COVID-19 vaccine and can still perform flying duties. There was never a requirement, to my knowledge, that they would be required to submit documents and rationale for how many people they came in contact with on a daily basis or meetings that they would attend or teleworking because the risk was too high for the vaccinated to be in there presence. Furthermore, the base and flying squadrons have both government civilian employees and contractors working among the same offices and buildings with unknown immunity status. The same threat to spread and infection exists among those employees, however, it was not even addressed in General Scobee's denial letter.

25. On January 14, 2022, I submitted my appeal to the Air Force Surgeon General. In my appeal I explained I have personally recovered from the SARS-COV-2 virus (a mild case with no lasting effects), as evidenced by two serological tests taken one year apart, dated October 20, 2020 and October 12, 2021. Results from the first serological test are in my official medical record.

26. On March 31, 2022, my appeal was denied. On April 15, 2022, Lieutenant Colonel Marcus D. Hutson, Commander 5th Flying Training Squadron, ordered me to receive an initial dose of a COVID-19 vaccine and provide proof of same by April 20, 2022.

27. The reasons cited for the denial of my appeal were prevention of the spread of disease among the force; that my present duty assignment requires intermittent to frequent contact with others and is not fully achievable via telework or adequate distancing; that

**96**

my required in-person meeting attendance includes prolonged, intermittent contact with multiple individuals; that my instructor role requires frequent contact and immersion with multiple individuals, which would significantly impact training accomplishment if I, my trainees, or my fellow instructors were exposed or actively infected; that my status as a non-immunized individual, aggregated with other non-immunized individuals in steady state operations, would place health and safety, unit cohesion, and readiness at risk; and that foregoing the immunization requirement would have a real adverse impact on military readiness and public health and safety.  The denial did not state that any consideration was given to the natural immunity I acquired by contracting and recovering from the SARS-COV-2 virus.

28.  While I have been mentally distraught over having to decide between my career, providing for my family of six and violating my sincerely held religious beliefs, I made the difficult decision to hold true to my faith and what the Lord has warned me that I should not receive a COVID-19 vaccine.  Throughout this ordeal I have lost hours of sleep and quality time with my family writing, researching and reading everything I can find on the subject voraciously.  I have loathed putting by uniform on and going to work to do a job I used to find fulfilling.  The entire religious accommodation process has felt like a futile effort and waste of man-hours leading to the almost certain conclusion where I am denied a religious accommodation with mere quotations of mere regulations rather than using the actual gravity of the situation. Through all this, however, my faith and Jesus and God's will for me remains.  The Lord is good and has a plan for me and my family and my hope is not in this document, a religious accommodation process, a general, an election, a politician or a judge.  My hope is in the Lord because His people are His portion and His delight.

**97**

29. As a result of not taking the vaccine, on April 21, 2022, I was suspended from aviation
    service and my flight incentive pay and duties were suspended. My aviation incentive
    pay amounts to ($1,000) per month. My Aviation Retention Bonus amounts to ($2,917)
    per month. I was later notified via a memo from my Commander on May 4th citing
    AFMAN 11-402 paragraph 6.2.2.4 for the suspension. This reference directs
    commanders to suspend aviatic n service for Involuntary Discharge proceedings.
    However, I emailed and explained to my Commander that this reference was not
    appropriate since I am technically not being Involuntarily Discharged. If that were the
    case, then I should receive due process and be provided a Board of Inquiry to present my
    case for retention. After another individual brought up this issue, my commander
    notified me via a memo on May 9th that the reason for my suspension had changed to
    paragraph 6.2.2.5. This paragraph states that a member should be suspended from
    aviation service when there are pending Uniform Code of Military Justice ("UCMJ")
    actions. However, I have not been notified of any "pending" UCMJ actions, Article 15's
    or investigations. Ultimately, they are not following the regulation on the subject, and I
    have submitted an Inspector General complaint asking that they reinstate my aeronautical
    order and aviation pay based on the regulation.

30. It is my understanding that a Letter of Reprimand has been written for me, is being
    reviewed by the 22nd AF Commander, and will be delivered and placed in my permanent
    personnel file within the next few weeks, which guarantees I will not be promoted. I was
    also removed from my duties as an Instructor Pilot and presently do all the required
    office, meetings and paperwork as the Assistant Flight Commander.

31. Currently, I am awaiting a Letter of Reprimand within a week or two for not receiving
    the COVID-19 vaccine. The Letter of Reprimand will be untimely due to a Promotion

**98**

Board that my record is about to go to in June for consideration for the rank of Lieutenant Colonel.  Additionally, my Squadron Commander told me that I was ranked last against my peers within the squadron instead of 2nd or 3rd (out of 5) because my Appeal to the denied RAR was not likely to succeed. The Operations Group Commander, that is one tier in the chain of command above my squadron commander, deemed that the overall recommendation of "Definitely Promote" be taken from me and given to another person more deserving because the Letter of Reprimand is pending. However, I have not received the Letter of Reprimand or been given an opportunity to make a rebuttal. If I were to receive a Letter of Reprimand at this point, an Unfavorable Information File will be established within my official record containing the Letter of Reprimand and I will not promote.  If by chance, I do not receive the LOR until after the Promotion Board, my Commander told me, that it is possible that the Promotion Board's recommendation for Lieutenant Colonel will be rescinded and that I would not be able to assume the rank. While an LOR and losing rank is likely a career-killer, the ultimate harm will be the process to curtail (i.e. cancel) my AGR orders that will immediately follow.  I will lose my position in the unit of which there are only 5 AGR positions that I could fill at the rank of Major and 4 other AGR positions that I could fill as a Lieutenant Colonel. However, the Lieutenant Colonel positions are for progression and leadership usually picked from the service members in the position filled by Majors.  The Major positions tend to fill quickly and stay filled for 3 or 4 years until they move into a Lieutenant Colonel position making it difficult to reacquire a position after I have been removed from it. Or, I have been passed over for the position because I have fallen out of favor. More importantly, however, I will lose my primary source of income and my health insurance.  Currently, my daughter is seen by a Pulmonologist for Asthma and a Pediatric

**99**

Gastroenterologist for intestinal issues on a regular basis. The disruption to her care will cause additional stress on top of seeking additional employment. I may need to move to another state and uproot my family from a town that we had hoped to stay in.

32. This entire process has been juxta opposed by the Medical Exemption process. Others who perform the same duties as me and who were granted medical exemptions to the COVID-19 Vaccine Mandate are still able to perform the normal duties as if they were vaccinated. For instance, one service member is able to travel with the Presidential Advance Team because it is considered an essential Temporary Duty. This team is responsible for coordinating with the Secret Service in preparation for Air Force One movements supporting the President's travel. For instance, the service member with the Medical Exemption traveled to Poland before the President recently traveled to Europe to plan for the President's arrival. The other individual is currently not able to go on Temporary Duty trips unless they are deemed essential. Both of these service members brief in and attend packed staff meeting offices where social distancing is not even feasible.

33. My Lieutenant Colonel Promotion board is scheduled for June. Without immediate relief, a Letter of Reprimand will be placed in my personnel file and will ensure I am not promoted. I was also told by my Commander, that an LOR after my promotion board could result in the promotion being rescinded. Additionally, I have submitted an application for a Lieutenant Colonel Active Guard Reserve position within my unit. Due to my vaccination status I was not allowed to fill that position since the policy of the 340th Operations Group (the level of command above my Squadron) has been to deny applications for those who are not in compliance with the vaccination mandate which includes those who are seeking a religious accommodation request. Additionally,

**100**

without immediate relief and following a Letter of Reprimand being placed in my personnel file and the respective response process, the Air Force will initiate the cancellation of my Active Guard Reserve Orders and all associated pay and benefits. I signed a contract to fulfill a four year Title 10 AGR order through November of 2024.  In this position, I am a full-time employee of the Reserves and receive all my benefits as if I am in an Active Duty position.  If my order is canceled, I will be required to quickly find employment, change insurance policies for my family and live off of savings until I am able to secure employment that does not mandate the COVID-19 vaccine or at least allows for religious accommodations.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 23, 2022.

Steven Randall Haynes

**101**

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated, | Case No: 22- |
| *Plaintiffs*, | |
| v. | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force, | |
| *Defendants*. | |

**DECLARATION OF LIEUTENANT COLONEL ANDREW GRIEB**

**103**

Pursuant to 28 U.S.C. §1746, I, Lieutenant Colonel Andrew Grieb, under penalty of perjury, declare as follows:

1. I am over the age of eighteen and am competent to make this declaration.

2. I presently reside in Oklahoma.

3. I am currently serving as a T-6 Instructor/Evaluator Pilot, which is coded as a T11K3F, Air Force Specialty Code in the United States Air Force Reserve. I am currently serving in the 5th Flight Training Squadron at Vance Air Force Base ("AFB") in Enid, Oklahoma.  I am a Traditional Reservist, meaning that I am not full time in the Air Force Reserve, and I have always maintained a civilian job for the past 20 years, in addition to my military service.  I am currently employed as a commercial airline pilot for United Airlines on the Boeing 737.

4.  United Airlines granted my request for a religious accommodation, and I am currently attending training to become a Captain for United Airlines on the Boeing 737. Unfortunately, I am being distracted from my airline training on a daily basis by the current threat of losing my Air Force career and retirement.

5. My military career began on February 27, 2001, when I was enlisted in the Maryland Air National Guard.  On April 26, 2002, I received my commission as a 2nd Lieutenant, and served as a Pilot on the C-130J.  I was activated and placed on active-duty orders for both Operation Iraqi Freedom and Operation Enduring Freedom, where I deployed on five combat rotations in theater during three different theatres of operation. I have flown the C-130J to over 47 countries. I was qualified as an Aircraft Commander, which is the civilian equivalent of the "Pilot In Command" or the equivalent of an Airline Captain.

**104**

6. Over the course of my career, I have received many awards including the following: Meritorious Service Medal; Aerial Achievement Medal; Air and Space Commendation Medal; 5th Flight Training Squadron Exceptional Performer of the Quarter (1st Quarter 2016); 5th Flight Training Squadron Reservist of the Quarter (2nd Quarter, 2017); 33rd Flight Training Squadron Reservist of the Quarter (1st Quarter 2016); Sturon (Student Squadron) Reservist of the Quarter (2017 and 2018); Sturon Reservist of the Year 2017.

7. Most recently, I was recognized for being the 5 FTS "T-6 High Flyer" in December 2021 and January 2022, which means I was the reservist with the most T-6 sorties and flight time in support of the Active Duty Undergraduate Pilot Training (UPT) mission.

8. In 2012, I wanted to be a role model for new Lieutenants attending pilot training in the Air Force. I transferred from the Maryland Air National Guard to the U.S. Air Force Reserve and attended Pilot Instructor Training and became a T-6 Instructor Pilot at Vance AFB in Enid, Oklahoma.

9. At no time during my career have I received any form of punishment or reprimand, other than the punishment I will now face as a result of the Air Force's COVID-19 vaccination requirement, which is explained in more detail below.

10. I have served honorably for over 21 years, and I will continue to do so, God willing. Throughout my career, I deployed to Iraq, Afghanistan, and participated in numerous humanitarian assistance/disaster relief missions, such as Hurricane Katrina in 2005, flying to the gulf coast within hours of the storm. I have accrued over 13 years of Active-Duty Service points towards my retirement, during my 21 years of Guard and Reserve service.

**105**

11. As a T-6 Instructor Pilot in the Air Force Reserve, I am required to work a minimum of 6 days a month, 72 days a year, in addition to my United Airlines schedule. I typically work a minimum of 20 to 24 days a month in total between my flying with United Airlines and my Air Force Reserve service commitment.

12. On August 24, 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

13. On September 3, 2021, the Secretary of the Air Force issued a similar mandate ("COVID-19 Vaccine Mandate") requiring that commanders in the Air Force take all steps necessary to ensure all uniformed Airmen and Guardians received the COVID-19 vaccine, which included issuing unit-wide and individual orders to their military members.

14. I was initially ordered by my Squadron Commander to receive a COVID-19 vaccine on September 28, 2021, following the August 24, 2021, Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

15. On October 1, 2021, I submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.

16. In my RAR, I explained that I am a Christian and a member of the Roman Catholic Church, that I believe my body is a temple to the Holy Spirit, that life is sacred at all stages (starting at conception) and that using a vaccine that was tested using aborted fetal

**106**

cells is repugnant to my religion, that blood is sacred and that it is against my faith to inject my blood with DNA-altering materials.  Also, I explained that I had already contracted COVID in April of 2020 and that I had natural immunity, thereby allowing me to safely perform my job without a vaccination (as I had done for 19 months before I was ordered to receive the vaccine).

17. As a requirement of the RAR process, on October 13, 2021, I was interviewed by the Vance Air Force base chaplain regarding my sincerely held religious beliefs.

18. On October 14, 2021, the chaplain determined that my religious beliefs were sincere and that my beliefs would be substantially burdened if I was required to take a COVID-19 vaccine.

19. As an additional requirement of the RAR process, on October 1, 2021, I was counseled by Captain Andrew Carey, Flight Surgeon at Vance Air Force Base about the risks of not being vaccinated and becoming ill with COVID-19.

20. On October 1, 2021, I was counseled by my commander, and in his memorandum he stated that, *"...noncompliance with immunization requirements may adversely affect assignment, international travel, or result in other administrative consequences."* "Administrative consequences" include written counseling and administrative separation, which, if received, would detrimentally impact my career.  Noncompliance could also result in nonjudicial punishment under Article 15 of the Uniform Code of Military Justice.  This is where the commander offers to issue a service member punishment subject to the member's consent to be tried exclusively by the commander.  As part of this process, alternatively, the member could turn down this offer and elect to be tried by court-martial.

**107**

21. Receipt of administrative action or nonjudicial punishment would be detrimental to my career. I am two years away from a full retirement that I wish to complete. Voluntarily retiring now would negatively impact my family's financial position. If I do not acquiesce and retire now, I will be placed in the Inactive Ready Reserve ("IRR") where I am no longer allowed to purchase Tri-Care for my family's medical needs or have access to other military benefits.

22. On January 13, 2022, I received an initial denial Memorandum stating that Lieutenant General Scobee, the Air Force Reserve Command Commander, had denied my RAR and that I had until January 15, 2022 to appeal or receive my vaccination within 5 days. Specifically, the Memorandum stated, "since less restrictive means of protecting our force from COVID-19 are unavailable, all uniformed Airmen must be fully vaccinated against COVID-19 and other infectious diseases."

23. However, General Scobee and his team did not state that any consideration was given to my natural immunity (note that I had tested positive for antibodies as recently as January 15, 2022, without a second illness) and my ability to have successfully executed my mission for the past 19 months without a vaccine as I stated in my initial RAR and subsequent appeal.

24. I appealed the initial denial on January 15, 2022.

25. After I submitted my appeal, there have been increases in restrictions to the duty I am allowed to perform. As of March 2022, unvaccinated members of my squadron are no longer allowed to perform temporary duty assignments, despite the fact that we have been traveling off station to accomplish necessary flight training operations for the past 24 months without issue. Instructor Pilots, such as myself, are expected to fly weekend

**108**

"cross country" student training events that involve overnight trips to other locations. This provides real world, first-hand experience for Air Force Students at busy Civilian Air Traffic Control locations other than Vance, AFB.  Typical travel includes travel to states within a 700 mile radius from Enid, Oklahoma.  I believe that this type of duty is being taken away because it is viewed as a "good deal" by Air Force management. Flying student sorties to other locations allows us to instruct students, while flying to other locations such as Albuquerque NM, Denver, CO, Texas, New Orleans LA, Destin FL, and a variety of other locations that are more desirable to visit than Enid, OK.  These overnight trips are an added perk of instructing in the T-6 that makes the job desirable and the Air Force is restricting this. This TDY policy is inconsistent because we are still allowed to do day trips to other locations for training, but we are required to return to Vance the same day.  I recently flew to Santa Fe, NM to pick up a T-6 aircraft and return the same day.  This TDY order restriction is clearly not a health and safety requirement and is retaliatory and discriminatory.

26. TDY and duties that involve travel can also include special duty assignments.  Two recent job opportunities that I would have applied for required travel to Georgia or Texas. However, I was told that I am not allowed to be considered because of my vaccination status.

27. As of March 22, 2022, extended Active-Duty Orders for unvaccinated reservists have been severely limited in my squadron.  I am no longer being permitted to serve on additional active-duty tours of over 30 days due to my unvaccinated status, which is discriminatory treatment because orders longer than 30 days include additional special pays and benefits that I will not receive if I perform duty for 29 days.

**109**

28. Since October 1, 2021, I served on two different sets of full-time orders, (November 5, 2021 to December 26, 2021 and February 6, 2022 to March 25, 2022) totaling over 92 days of active duty so far this year, which is in addition to my normal reserve duty 72-day requirement. These orders required serving at Vance AFB as a full time T-6 Instructor Pilot.  Because of the March 2022 policy change limiting my duty time to 29 consecutive days, I will only be allowed to serve on orders that are 29 days or less doing the exact same job.  This is significant to me financially because active-duty orders must be over 30 days or more in order to receive full active duty pay and benefits (described below).

29. In a March 22nd, 2022 email from the 5th Flight Training Squadron Director of Operations in my squadron, Lieutenant Colonel Ian Bass, to our flight commanders outlining this new policy, he stated: *Unvaccinated members may accomplish MPA and strings of MPA that DO NOT require a COW* (Continuous Orders Worksheet)*, orders must be 29 days or less.  ...Unfortunately, this means that a member will have to work all weekends and federal holidays, will not accrue leave, will not be eligible for TRICARE Prime, and will only get Type 2 BAH.  Please make sure that your member is aware of this before they sign up for this plan.*" BAH stands for Base Housing Allowance and BAH 2 is worth approximately 60% of full time BAH 1 if we are on long term orders. This coercive policy is retribution for not receiving the COVID-19 vaccine, as it is only for unvaccinated members and has no bearing on our mission effectiveness other than to punish us financially. Prior to my final RAR denial by the Surgeon General, I was still allowed to come in on short tours of active duty and perform the same duties.

30. The loss of long-term orders over 30 days amounts to a loss of approximately a $500 per month difference between BAH Type I and reduced BAH Type II (housing allowance).

**110**

Authentisign ID: 6C66903A-9FDC-EC11-B656-501AC586DF9D

Additionally, long-term orders allow members 10.5 days of paid time off per month, because members only are expected to work five out of every seven days, receiving essentially four weekends off per month.  In addition to weekends off, members also earn 2.5 days of paid annual leave per month of long-term orders.  Full-time members are entitled to "Tricare Prime" health insurance coverage which is free to the member, which is an additional savings me of over $300 per month as a family of six.

31. I am aware of two members in my 5FTS squadron that have received Medical Exemptions to the COVID-19 shot requirement.  Both of these members are on long term orders and I know both of them personally.  The first individual has a previous history in her medical record of allergic reactions to previous vaccinations.  To my knowledge, she did not request a RAR, but she did tell me personally that her Medical Exemption was approved.  She is a Delta Airlines Pilot on military leave and is currently on full-time orders at the 5FTS. She does not want to be highlighted for fear of having her exemption cancelled.  She is not allowed to conduct any TDY travel.

32. The other member also did not submit a RAR, but requested a Medical Exemption due to proof of past infection from COVID-19 in November of 2021.  According to Air Force regulation AFI 48-110, members are exempt from vaccination with proof of immunity. It states, *"Evidence of immunity (for example, by serologic antibody test ); documented previous infection (for example, chickenpox infection); natural infection presumed (for example, measles, if born before 1957)."*  He received a 120-day exemption from receiving the COVID-19 vaccine.  He told me directly that he has passed the expiration date of his exemption and he has not been pursued by our Squadron or the Vance AFB Medical Group to receive his shot at this time.  He believes he has fallen through the

**111**

cracks and he does not want to be highlighted and be forced to get the shot. He is currently on full-time orders and is currently allowed to TDY to stateside and international locations for his work duties.

33. I also have previously contracted COVID-19 in April of 2020 and I have submitted all of my positive tests with my RAR request accompanied by AFI 48-110. I have a positive PCR Test from April 13, 2020 indicating I had COVID-19, along with multiple Positive Anti-body tests from as early as May 15, 2020 and most recently as January 12, 2022 still testing positive for antibodies.  I am blessed that I am one of the people that recovered from COVID-19 due to my healthy immune system that God has given me, and I am protected from getting COVID-19 due to natural immunity and a reliance upon God's protection consistent with Psalm 91, Isaiah 53:5, and Psalm 103.

34. On April 28th, 2022, my appeal was denied, and I was given until May 3, 2022, to receive a COVID-19 vaccine.

35. The reasons cited for the denial of my appeal were that telework is not an option, and my aircraft instructor duties would place me in confined spaces with other Air Force members.

36. On April 28, 2022, I requested that the Air Force allow me extra time to consider my options while I am not available to be on military status due to my five week 737 Captain upgrade training program for United Airlines.

37. This request was denied on the same day.  My Squadron Commander expected me to sign and complete paperwork for the Reserve Squadron while I am not on a paid status with the Air Force.

**112**

38. Now that my appeal is denied, my Squadron Commander advised me that I will soon receive a Letter of Reprimand ("LOR") that will go in my permanent record and will negatively impact my discharge, which will be "less-than-honorable." This service characterization will make obtaining new flying employment exceedingly difficult if not impossible should I need to seek other employment.  This LOR destroys a record and career that I have worked hard to build over two decades.

39. I have already been placed on No Points No Pay status, which means I cannot perform any type of duty in a pay status and conduct Reserve Duties or earn points towards retirement.

40. As a result of my appeal denial, on May 4, 2022, I was not only adversely placed on No Points No Pay status for failing to receive a vaccination, but I was also removed from my duties as an aviator and presently am not allowed to provide any service to the Air Force. At present, my otherwise flawless and distinguished service record is now capped with an entry in my personnel record stating that I have been "suspended" from flying service, and that "Permanent Disqualification Action Pending." This means that I am no longer allowed to fly and instruct in a position that I love.  It means that since recovering from COVID in the past 24 months, I have flown more than 290 hours in the T-6 Texan as an Instructor Pilot without catching COVID again, but I am suddenly no longer suitable to fly because of my vaccination status.  It means that I will not to get a traditional military retirement ceremony for my friends and family to attend.  This is typically where the pilot goes on one last "fini-flight", where the pilot gets to fly the plane, taxi to a stop in front of family, and then her or she is ceremonially hosed down with a fire truck and its fire

**113**

hose in the hands of the pilot's spouse and children.  Because I am no longer on flying

status, it means I will not receive this recognition for 21 years of service to my country.

41. I would like to reiterate that Since COVID-19 mitigation measures were put into effect at

the beginning of the pandemic, in March of 2020, and until the recent revocation of my

flight orders, there have been no interruptions to my job duties or my job performance.

In fact, I successfully carried out my unit's mission and at no time was there an impact to

the mission as a result of COVID-19.

42. From March of 2020 until May 4, 2022, my job duties included serving as a T-6

instructor and evaluator pilot at Vance Air Force Base with no issue.

43. While I was mentally distraught over having to decide between my career, being able to

provide for my family of 4 children and my wife, or violating my sincerely held religious

beliefs, I made the difficult decision to hold true to my faith and did not receive a

COVID-19 vaccine.  This has been an incredibly stressful ordeal.  Due to the stress, my

wife and I have begun going to marriage counseling.  Due to the time-consuming nature

of seeking an exemption, I have missed many family activities with my children.

Additionally, my wife and I have had to sell some of our property to ensure that we can

sustain ourselves in the event that I am ultimately kicked-out of the Air Force.

44. Without immediate relief, I am facing an imminent issuance of a LOR to my file, which

will negatively impact my discharge characterization.  The stress, mental, and emotional

harm to my family continues to increase every day.  And being forced to choose between

tarnishing my nearly two-and-a-half-decade long career or violating my sincerely held

religious beliefs in order to provide for my family is a harm that cannot be repaired with

money, and it is a harm that happens every day that this process drags on.  My wife and I

**114**

continue to attend counseling through this ordeal in order to provide a stable, happy environment for our children. As this coercion continues to exert stress on my wife, my children, and me, I am being forced to defend my military career, which I love and very much wish to continue.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 23, 2022.

*Andrew T Grieb*                05/25/22

_____

Andrew T. Grieb

**115**

# EXHIBIT 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force,<br><br>*Defendants*. | Case No: 22- |

## DECLARATION OF MAJOR DANIELLE ANDREA RUNYAN

**117**

Pursuant to 28 U.S.C. §1746, I, Major Danielle Andrea Runyan, under penalty of perjury, declare as follows:

1. I am over the age of eighteen and am competent to make this declaration.

2. I presently reside in Illinois.  My place of civilian employment is in Texas, and I will become a Texas resident in June of 2022.

3. I have served as a Department of the Air Force ("Air Force") service member since March 20, 2012.  I was also a GS employee for the Air Force from February 2016 through December 2021.

4. Over the course of both of my Air Force careers, the following is a list of some of the awards I have received: Air Force Commendation Medal with one oak leaf cluster; 36th Wing Staff Civilian Category III of the Quarter for April – June 2016, October – December 2016, January – March 2017, April – June 2017, July – September 2017; 36th Wing Civilian Category III of the Quarter, April – June 2016; Air Force Award for Civilian Achievement, 2017; Senior Level Civilian of the Quarter, January – March 2019; Senior Level Civilian of the Quarter, January – March 2019; Department of Defense 2021 Spirit of Service Award.

5. Over the course of my Reserve career, I have been selected for the Key Personnel List, meaning that I was ranked top among my peers to be called for special duties and assignments, and was appointed as the Air Force Global Strike Command representative for The Judge Advocate General's Reserve Junior Officer Council, which is a position I have held since 2020.

6. At no time during either of my Air Force careers have I ever received any form of punishment or reprimand.

**118**

7. I am presently assigned as an Individual Mobilization Augmentee Reservist to 8th Air Force ("8 AF") in Louisiana as an Assistant Staff Judge Advocate.  I have been assigned to that unit since October 2019.

8. On August 24, 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

9. On September 3, 2021, the Secretary of the Air Force issued a similar mandate ("COVID-19 Vaccine Mandate") requiring that commanders in the Air Force take all steps necessary to ensure all uniformed Airmen and Guardians received the COVID-19 vaccine, which included issuing unit-wide and individual orders to their military members.

10. On October 14, 2021, my commander issued me an order to receive the COVID-19 vaccine.

11. In response to the COVID-19 Vaccine Mandate, service members were permitted to submit a request for either a religious or medical exemption.

12. On October 28, 2021, I submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.

13. In my RAR, I explained that I have a sincerely held religious belief that would be substantially burdened by taking the COVID-19 vaccine, particularly when I have already recovered from COVID-19, have antibodies, and have been able to perform my job duties safely and effectively since March 2020.  Requiring me to be vaccinated is not the least restrictive means of achieving the government's compelling interest of mission readiness.

**119**

14. As a requirement of the RAR process, on November 9, 2021, I was interviewed by an Air Force chaplain regarding my sincerely held religious beliefs.

15. In a memorandum dated November 10, 2021, the chaplain determined that my religious beliefs were sincere and that the COVID-19 vaccine requirement places a significant burden on my religious beliefs.

16. As an additional requirement of the RAR process, I was also counseled about the risks of not being vaccinated and becoming ill with COVID-19.

17. On November 1, 2021, I was counseled by my supervisor that noncompliance with immunization requirements may adversely affect readiness for deployment, assignment, international travel, or result in other administrative consequences. "Administrative consequences" include written counseling and administrative separation, which, if received, would detrimentally impact my career. Noncompliance could also result in nonjudicial punishment under Article 15 of the Uniform Code of Military Justice. This is where the commander offers to issue a service member punishment subject to the member's consent to be tried exclusively by the commander. As part of this process, alternatively, the member could turn down this offer and elect to be tried by court-martial.

18. Another administrative consequence that largely applies to Reservists, is the possibility of being involuntarily placed into the Individual Ready Reserve ("IRR") without due process or recourse. While in the IRR, service members are placed in a "no pay-no points" status that prevents them from accumulating the points required to earn a "good year." The consequence of this action is that despite still being "in the military," I would not satisfy the minimum requirements of military service, I would lose the points and

**120**

time necessary to be eligible for promotion and retirement in the standard course, I would be ineligible for TriCare health benefits, which is my family's only healthcare, and I would be involuntarily separated if not reinstated to my present status within one year in the IRR.

19. Since I received my initial denial of my RAR on April 29, 2022 and submitted my appeal on May 4, 2022, it is my understanding that any of the above-mentioned potential adverse actions could happen within a matter of days.  Pursuant to Department of the Air Force Instruction 52-201, *Religious Freedom in the Department of the Air Force*, dated June 23, 2021, paragraph 2.10, I expect to receive my appeal denial no later than June 10, 2022. That paragraph specifically states that "[a]ppeal of a disapproved religious accommodation request must be resolved no later than 30 business days following the member's written notification of intent to appeal to the next higher decision authority in the chain of command."  If I receive my final denial at any time before the second week of June, I will be precluded from performing my duty that is necessary for me to have a "good year" and a complete Officer Performance Report.

20. Since COVID-19 mitigation measures were put into effect in March of 2020, neither my job duties nor my job performance were ever hindered due to COVID-19 illness.  As a reservist, for the past two years, I successfully carried out my unit's mission and at no time was there an impact to the mission as a result of me or any of the other members of my team contracting COVID-19 while I was on duty.  I successfully performed my job duties both in person and by way of telework.

21. From March of 2020 until the present, my job duties as a Reservist and Assistant Staff Judge Advocate include backfilling for leadership positions, as needed, providing legal

**121**

advice to commanders, and providing higher-level legal review of military justice and civil law matters.

22. In March of 2021, I performed the duties of a Deputy Staff Judge Advocate in person. As such, I successfully and safely engaged with leaders, attended in-person meetings, and assisted with the oversight and supervision of a legal office all while masking procedures were in place.

23. Despite the fact that I have a proven track record of safely and successfully performing my job duties as a Reservist without a COVID-19 vaccine during the entire pandemic, the Air Force Global Strike Command commander ("AFGSC/CC") denied my request for a religious exemption to the COVID-19 vaccine.

24. In his denial, AFGSC/CC states that "the Department of Defense and the Department of the Air Force have a compelling government interest in maintaining a healthy and ready military force through vaccination. Any less restrictive means of ensuring military readiness for mission accomplishment, such as masking, physical distancing, and teleworking are insufficient and would not be as effective as vaccination at reducing disease transmission and severity among our personnel."

25. The denial further states that, "[i]n your duties as a reserve Assistant Staff Judge Advocate, your job duties include client meetings, processing legal documents, and advising commanders and senior 8 AF leaders on sensitive matters. This job cannot be accomplished by telework or other remote means. It also requires you to physically interact with others where you cannot always maintain adequate physical distancing. Furthermore, without proper vaccinations, you are not worldwide qualified and unable to travel to your unit to backfill active duty judge advocates whose duties also include in-

**122**

person, direct exposure to other people.  Your inability to travel to backfill active duty judge advocates causes an additional burden on your unit and career field as a primary duty of a reservist is to backfill critical voids in your unit due to active duty deployments and absences."

26. Not only did the AFGSC/CC not consider my offer to be subject to any and all testing requirements, masking, and social distancing, but there was also no consideration given to the fact that I have natural immunity.  The denial also seemed to completely disregard the March 1, 2022 DoD guidance that eliminates masking and other requirements for service members, federal civilian workers, and contractors and also does not require vaccination status to be a factor in the workplace.  It also appeared to disregard the fact that the federal civilian worker and federal civilian contractor vaccination mandates are not presently in effect and that those individuals are permitted to work in close proximity with service members without regard for their vaccination status.

27. On Friday, April 29, 2022, my supervisor contacted me to let me know that my appeal was denied.  I was also issued an April 29, 2022 order requiring me to either get vaccinated within 5 days or appeal the initial denial of my RAR.  While the option to elect for voluntary separation was referenced, that option was not available to me.

28. In response to receiving the April 29, 2022 order, I requested a two-week extension of time to consider my options and respond, accordingly.  My supervisor denied that request and also denied my request to review all information and documentation reviewed by AFGSC/CC in making his decision to deny my RAR.  As a result, I submitted my appeal under duress on May 4, 2022.

**123**

29. In the meantime, I am performing Reserve duty by way of telework.  I have been denied the opportunity to travel to my home unit to perform duty due to my unvaccinated status.

30. Since the time I submitted my RAR until now, I have been under an insurmountable amount of stress knowing that, statistically speaking, my appeal will be denied and that I will, for the first time in my life, receive adverse action that will be extremely damaging to my career and my future civilian endeavors, simply for exercising my constitutional rights.  I have worked extremely hard my entire life to be a top performer and a team player.  From my college lacrosse days of being honored as a three-time All-American lacrosse player and Johns Hopkins University's Female Athlete of the Year, to receiving my most recent 2021 award from the Department of Defense for my commitment to serving others in any way that I can, I strive for excellence in all that I do, and there is no reason why I should be punished and removed from my job when I have proven that I am neither a threat nor a liability to the Air Force.  My husband, children, and relationships with extended family and friends have all suffered greatly as a result of my stress over this situation since last fall.  My time is consumed with attempting to find reasonable answers and solutions to this issue because I cannot imagine that removing valuable people who have dedicated their lives to military service is a reasonable approach to the government's compelling interest in mission readiness.

31. Without judicial intervention, my career will essentially be over once I receive administrative action, which could happen in a matter of days.  At best, I will lose the opportunity to promote to the next rank and will be a less than desirable option for many high-level follow-on assignments.  And at worst, without immediate judicial intervention, my career will be over, and I will have no recourse for being reinstated to my current

**124**

position as an Individual Mobilization Augmentee Reservist.  I will also lose my health benefits and retirement benefits since any possibility of retiring is over 10 years away. None of these harms can be remedied at a later date or through monetary compensation.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on May 23, 2022.

DANIELLE A. RUNYAN

**125**

# EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force,<br><br>*Defendants*. | Case No: 22- |

**DECLARATION OF CHRISTOPHER MING-CHIEH WU**

**127**

DocuSign Envelope ID: BD8C271D-3257-405D-B590-3AD04A8E7CC9

Pursuant to 28 U.S.C. §1746, I, Christopher Ming-Chieh Wu, under penalty of perjury, declare as follows:

1. I am over the age of eighteen and am competent to make this declaration.

2. I presently reside at Joint Base Andrews, Maryland.

3. I have served as a Department of the Air Force ("Air Force") active-duty service member since February 14, 2007.

4. Over the course of my career, I have received the following awards:  Defense Meritorious Service Medal, Air Force Meritorious Service Medal with 2 oak leaf clusters, Joint Service Commendation Medal, Air and Space Commendation Medal with 1 oak leaf cluster, Joint Service Achievement Medal, National Defense Service Medal, Afghanistan Campaign Medal, Iraq Campaign Medal, Global War on Terrorism Service Medal, and NATO Medal.  I also received the Small Arms Expert Marksmanship Ribbon with 1 service star in addition to other ribbons.

5. I have also been considered a top performer while deployed and at my home station.  For example, while deployed to the legal office in support of the 4-star command in Iraq, I was rated number 1 of 4 Air Force Captains.  While deployed to the legal office in support of the 4-star NATO command in Afghanistan, I was rated 1 of 4 Air Force Majors.  I have also received high ratings in my performance reports.  I have also been competitively selected for various assignments, to include selection for the LL.M. (Master of Laws) program at the The Judge Advocate General's Law Center and School, Virginia; Staff Judge Advocate at Pope Army Airfield, North Carolina; Deputy Chief of the Commercial Litigation Field Support Center at Joint Base Andrews, Maryland; and

**128**

DocuSign Envelope ID: BD8C271D-3257-405D-B590-3AD04A8E7CC9

most recently, to be the Staff Judge Advocate at Patrick Space Force Base, Florida, supporting a 1-star commander.

6. At no time during my career have I received any form of punishment or reprimand.

7. I am presently assigned to the Department of the Air Force's Commercial Litigation Field Support Center at Joint Base Andrews, Maryland, where my job title is Deputy Chief. I have been assigned to that unit since June 30, 2020.

8. On August 24, 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

9. On September 3, 2021, the Secretary of the Air Force issued a similar mandate ("COVID-19 Vaccine Mandate") requiring that commanders in the Air Force take all steps necessary to ensure all uniformed Airmen and Guardians received the COVID-19 vaccine, which included issuing unit-wide and individual orders to their military members.

10. On September 23, 2021, my commander issued me an order to receive the COVID-19 vaccine.

11. In response to the COVID-19 Vaccine Mandate, service members were permitted to submit a request for either a religious or medical exemption.

12. On September 28, 2021, I submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.

13. In my RAR, I explained that my faith prohibits me from participating in, supporting, or condoning abortions or the use of the human body for scientific experimentation without

**129**

consent.  I believe in the sanctity of life because people are made in God's image and, as such, are to be protected.  Currently available vaccines have used cells derived from aborted babies in their testing.  Taking currently available COVID-19 vaccines would burden my sincerely held religious beliefs because they are all products of murder of an innocent person, treats the human body as common, and constitutes use of the human body for experimentation without the person's consent.

14. When I submitted my initial RAR on September 28, 2021, I stated that I could safely perform my job by taking periodic COVID-19 tests, wearing masks, and taking distancing measures.  As stated in my appeal of my initial denial that was submitted to the Air Force Surgeon General on May 5, 2022, I have been safely performing my duties, to date, without any restrictions.  I have also never contracted COVID-19, and my COVID-19 antibody test returned a negative result for COVID-19 antibodies.

15. As a requirement of the RAR process, on November 18, 2021, I was interviewed by a Joint Base Andrews chaplain regarding my sincerely held religious beliefs.

16. On November 19, 2021, the chaplain determined that my religious beliefs were sincere and that my beliefs would be substantially burdened if I was required to take a COVID-19 vaccine and recommended approval of my exemption as requested.

17. As an additional requirement of the RAR process, on November 3, 2021, I was counseled over email by Captain Melissa Vanartsdalen, 316th Medical Group at Andrews Air Force Base, about the risks of not being vaccinated and becoming ill with COVID-19.

18. On October 5, 2021, I was counseled by my commander that noncompliance with im-munization requirements may adversely affect readiness for deployment, assignment, in-

**130**

DocuSign Envelope ID: BD8C271D-3257-405D-B590-3AD04A8E7CC9

ternational travel, or result in other administrative consequences. "Administrative consequences" include written counseling and administrative separation, which, if received, would detrimentally impact my career. Noncompliance could also result in nonjudicial punishment under Article 15 of the Uniform Code of Military Justice. This is where the commander offers to issue a service member punishment subject to the member's consent to be tried exclusively by the commander. As part of this process, alternatively, the member could turn down this offer and elect to be tried by court-martial.

19. As an Air Force Judge Advocate who has advised commanders on and processed nonjudicial punishment and administrative actions against Airmen, I understand that nonjudicial punishment could result in loss of pay, reprimand, arrest in quarters, and restriction of liberty for officers. I also understand that I could refuse to be punished by the nonjudicial punishment process and demand trial by court-martial instead, which could result in a federal conviction, imprisonment, forfeiture of pay, and dismissal, which is a punitive discharge. Additionally, any administrative or punitive action can be followed by an administrative separation board, which could result in a service characterization of less than honorable.

20. Since COVID-19 mitigation measures were put into effect in March of 2020, to include travel restrictions and a stop movement order that halted most assignment moves. While many assignments were delayed until October or November 2020, some exceptions (commonly known in the Air Force as an Exception to Policy) were made. For example, I received an exception because I was on contract to sell my house in Fayetteville, North Carolina, and I was allowed to move from Pope Army Airfield, North Carolina, to Joint Base Andrews, Maryland.

**131**

21. Since moving to Joint Base Andrews, I have been performing my duties in person without interruptions, I have successfully carried out my unit's mission, and at no time was there an impact to the mission as a result of my vaccination status.  In addition to moving from North Carolina to Maryland without any restrictions such as quarantine periods, I have also planned social gatherings for my office and have been allowed to travel out of state and to return to the office without any restrictions.  For example, I flew to Kansas City, Missouri, with my wife to participate in a prayer conference attended by over 100 others from various states between February 21, 2022, and February 25, 2022.  I returned to work without additional restrictions and without any negative impact to the mission.

22. From March of 2020 until June 26, 2020, my job duties included serving as the Staff Judge Advocate for the 43d Air Mobility Operations Group, a stand-alone group responsible for Joint Airborne/Air Transportability Training for the 82d Airborne Division at Fort Bragg, North Carolina; rapid deployment of Joint Special Operations Command forces; deployment of one of the only two active Air Force aeromedical evacuation squadrons in the United States; and the mobilization of the Global Response Force, which is the United States' initial entry force capable of deploying worldwide within 18 hours of notification.  As the Staff Judge Advocate, I served as the primary legal advisor for the group commander and Special Court-Martial Convening Authority and led, supervised, and mentored an office of 11 personnel.

23. As of June 30, 2020, I have served as the Deputy Chief of the Commercial Litigation Field Support Center at Joint Base Andrews, Maryland.  My job duties include leading,

**132**

supervising, and mentoring 25 personnel defending the Air Force in contract disputes and bid protests.

24. In December of 2021, I was notified that I was competitively selected to be the Staff Judge Advocate at Patrick Space Force Base, Florida. This assignment was publicized when the Judge Advocate assignment list was published on February 17, 2022, and I received official notification through the Air Force personnel system on April 5, 2022. However, on April 21, 2022, I was notified telephonically that my assignment to Patrick Space Force Base was canceled due to my pending RAR, and that I would remain on the selection list for another Staff Judge Advocate position for summer 2023. I meet my selection board for Colonel in spring 2023 and being removed from leadership positions will make me less competitive at the board. Pursuant to Article 6 of the UCMJ, The Judge Advocate General controls judge advocate assignments. At this time, Major General Charles L. Plummer was performing the duties of The Judge Advocate General.

25. On April 28, 2021, I received the initial denial of my RAR. The denial was issued by Major General Charles L. Plummer, who at the time was also the Commander of the Air Force Legal Operations Agency and is the current nominee for the position of The Judge Advocate General of the Air Force. The reasons cited were that there is a compelling government interest in vaccinating me against COVID-19 because of my current supervisory duties over multiple civilian employees and military members, and because my substantive duties require collaboration with other office personnel. Major General Plummer's denial also stated that I was projected to serve as the Staff Judge Advocate of the Patrick Space Force Base legal office where I would serve as primary legal advisor to the General Officer commander, leading, supervising, and mentoring a team of legal

DocuSign Envelope ID: BD8C271D-3257-405D-B590-3AD04A8E7CC9

office personnel and that DoD and DAF policies have been introduced which hinder the ability of non-vaccinated individuals from attaining full mission readiness as well as medical data indicating the unvaccinated have a much higher rate of serious illness and hospitalizations and are more susceptible to spreading the disease than the vaccinated. Finally, the denial states that less restrictive means, including distancing, mask-wearing, screening tests, and remote work cannot be used to meet these interests.

26. However, Major General Plummer did not state that any consideration was given to the fact that I have effectively performed my duties in-person and with no other restrictions compared to vaccinated personnel. He also did not acknowledge that while I have not been sick with COVID-19 or transmitted COVID-19, several vaccinated personnel in my building have tested positive for COVID-19, were symptomatic, and had to quarantine. Additionally, the denial does not address the Department of Defense's pause on vaccinating civilian employees or the March 1 DoD guidance that eliminates masking and other requirements for service members, federal civilian workers, and contractors regardless of vaccination status. Federal civilian worker and federal civilian contractor vaccination mandates are not presently in effect and such individuals are permitted to work in close proximity with me and vaccinated personnel on a daily basis without any verification of vaccination, distancing measures, testing, or masking requirements. As recently as May 12, 2022, I continued to meet with various personnel in-person without any adverse impact to the mission. Specifically, I met with civilian employees from other offices and defense contractors who do not work at Joint Base Andrews without regard to vaccination status. Furthermore, Patrick Space Force Base has similarly decreased its restrictions, and there is no indication that Major General Plummer discussed the matter

**134**

DocuSign Envelope ID: BD8C271D-3257-405D-B590-3AD04A8E7CC9

with the commander at Patrick Space Force Base to determine whether he had a compelling interest in vaccinating me and whether less restrictive means are available at his command.

27. Upon my request to Major Wilson, the designated point of contact for receiving RAR appeals at Joint Base Andrews, for extra time to prepare my appeal, Major Wilson extended my deadline to May 5, 2022.  My original deadline to respond was May 3, 2022.

28. As previously stated, on May 5, 2022, I submitted my appeal to the DAF Surgeon General.

29. To date, I have not been notified of an appeal decision.

30. However, pursuant to Department of the Air Force Instruction 52-201, *Religious Freedom in the Department of the Air Force*, dated June 23, 2021, paragraph 2.10, I would expect to receive my appeal denial no later than June 17, 2022.  That paragraph specifically states that "[a]ppeal of a disapproved religious accommodation request must be resolved no later than 30 business days following the member's written notification of intent to appeal to the next higher decision authority in the chain of command."

31. While it has been stressful on me and my family to decide between my career, being able to provide for my family of four, not knowing whether I will be able to retire and receive a full pension despite having 5 years left until I can retire, and violating my sincerely held religious beliefs to ensure certainty over my future, I made the difficult decision to hold true to my faith and did not receive a COVID-19 vaccine.  Moving to the busy National Capitol Region in June of 2020 with a then-5-year-old daughter and then-3-year-old son was difficult for my family.  Additionally, due to my wife's medical issues, my mother-

in-law has been living with us for the last year and a half.  Despite our need to focus on these challenges, we've also had to consider the possibilities of losing my job and negative impacts to what had been, for the last 15 years, a promising and rewarding career.  This entire situation has caused tremendous stress and strain on the family.

32. I have been informed that if my appeal is denied and I continue to refuse to get a COVID-19 vaccine, I will receive a written counseling that would be used as the basis for an administrative discharge.  I will also be removed from my current leadership position as the Deputy Chief of the Commercial Litigation Field Support Center, and, ultimately, face an administrative discharge action.

33. I have already lost a competitive, career-advancing, and highly desirable assignment at Patrick Space Force Base due to my RAR.  Without immediate relief, and as previously stated, I am facing adverse actions to include losing my current leadership position, which will derail my career, and an administrative discharge, which could have significant adverse consequences on my future employment outside the Air Force.

34. The real harm here is that my career and livelihood is in jeopardy because I am exercising my constitutional right to the free exercise of religion.  I moved to the United States from Taiwan at the age of 6.  My family had nothing, yet my parents worked hard and diligently saved the money they earned to get us here legally.  Despite years of dedication, sacrifice, and diligence that has culminated in a promising career as an Air Force officer, I will be kept from reaping the fruit of my toil, and those of my parents, because of my sincerely held religious beliefs.  While I understand that the financial impact of what is happening to me can be remedied through this case at a later date, what cannot be remedied at a later date are the actions that have already (having my

**136**

DocuSign Envelope ID: BD8C271D-3257-405D-B590-3AD04A8E7CC9

assignment at Patrick Space Force Base pulled) and will continue (adverse administrative actions) to be taken against me that have and will continue to directly and negatively impact my potential to promote to Colonel and ultimately my ability to remain in the Air Force.  If I am removed from the Air Force, I will likely receive a less than honorable discharge characterization for refusing to comply with the COVID-19 Vaccine Mandate and I will lose not only my retirement pay, but also my health and other benefits, such as my GI bill and VA benefits.  Additionally, for the rest of my life, I will carry the stigma of having a less than honorable discharge characterization.

35. As an Air Force officer, I swore to defend the Constitution of the United States.  I have deployed twice, risking my life and being away from my family, to defend my country. But now, in addition to defending my country, I have had to take valuable time away from my wife and my children to defend my right to exercise my religion.  This is time I will never get back.  Being forced to change careers and find a new way to provide for my family is time that my family and I will not get back.  The stressful home environment and the threat of imminent adverse action means my children will not have the full attention of their parents as they ought.  That is time lost that we will never get back.  As I previously stated, I have already lost a career-advancing assignment, and at any moment, I can be removed from my current leadership position.  Injunctive relief is the only thing that can stop further damage to my career, alleviate the stress on my family, allow me to exercise my religious rights, and ultimately prevent my discharge from the Air Force.

**137**

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 26, 2022.

Christopher M. Wu

**138**

# EXHIBIT 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BRYAN P. SPENCE, TYLER W. STEF, RYAN CORCORAN, MITCHELL B. PIKE, STEVEN R. HAYNES, ANDREW GRIEB, DANIELLE A. RUNYAN, CHRISTOPHER M. WU, and ALAN SOSEBEE, individually and on behalf of all others similarly situated, | Case No: 22- |
| *Plaintiffs*, | |
| v. | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, THE UNITED STATES DEPARTMENT OF DEFENSE, and FRANK KENDALL, in his official capacity as United States Secretary of the Air Force, | |
| *Defendants*. | |

**DECLARATION OF CAPTAIN ALAN C. SOSEBEE**

**140**

DocuSign Envelope ID: 09562778-4FC9-4D11-8491-1013872D1AB1

Pursuant to 28 U.S.C. §1746, I, Captain Alan C. Sosebee, under penalty of perjury, declare as follows:

1.   I am over the age of eighteen and am competent to make this declaration.

2.   I presently reside in Monument, Colorado.

3.   I have served as a Department of the Air Force ("Air Force") active-duty member since February of 2013.

4.   Over the course of my career, I have received the following awards:  Detachment Company Grade Officer of the Month (#1/19) during my first deployment, Flight Outstanding Contributor (#1/14 peer Captains) during Squadron Officer School, 94th Flying Training Squadron ("FTS") Instructor Pilot of the Quarter and Instructor Pilot of the Year (#1/19), 94th FTS Flight Commander of the Year, 306th Flying Training Group ("FTG") Instructor Pilot of the Quarter and Instructor Pilot of the Year (#1/132), 12th Flying Training Wing ("FTW") Instructor Pilot of the Quarter (#1/559), as well as the 306th Flying Training Group's *High-Flyer* Award for calendar year 2021.

5.   I have also been considered a top performer over the course of my career.  In a little over a year at my first operational duty location, I was rated the #1/7 Standards and Evaluation Liaison Officers and was the 3rd Airlift Squadron Commander's #1/27 Junior Company Grade Officers. During my time at Dover Air Force Base, I was also rated #1/5 Training Officers, #1/4 Wing Airlift Directors, #2/20 year group Company Grade Officers, and #2/20 Company Grade Officers.  After I moved to the United States Air Force Academy ("USAFA"), I earned the rating of the #1 Instructor Pilot in the Squadron in just over a year.  Since then I have been rated as #2/8 Captains in the Squadron and #4/23 Flight Commanders in the Flying Training Group. Additionally, I earned a spot in the top 10% of Captains in the Flying Training Group (#11/121)

**141**

and I was selected as Initial Cadre for the newest Mission Designation Series in the Air Force, the TG-17A. Most recently, I was selected to promote to the rank of Major, with a line number of 321 out of around 1100 peers across the Air Force.

6.   At no time during my career have I received any form of punishment or reprimand other than the punishment I received as a result of the Air Force's COVID-19 vaccination requirement, which is explained in more detail below.

7.   I am presently assigned to 94th Flying Training Squadron at the USAFA in Colorado where my current job title is Chief of Training for the 306th Flying Training Group.  I have been assigned to the 94th Flying Training Squadron since September of 2018.  My duties entail: leading over 250 officers, enlisted, civilians and cadet instructor pilots in North America's largest sailplane operation; developing leaders by introducing the basics of flight/instruction and mentoring the Air Force's youngest instructor pilots; coordinating, planning and executing 20,000 missions annually while overseeing a $3M maintenance and tow-plane contract; executing 9 AETC syllabi for 1300 cadets yearly.  Additional duties include: Soaring Control Officer ("SCO"), Supervisor of Flying ("SOF"), Operations Supervisor, Aerobatic Instructor Pilot, Cross-Country Instructor Pilot, and triple-qualified Evaluator Pilot for the TG-15/16/17. My sailplane qualifications expired as a result of my deployment to Saudi Arabia last year and, due to current guidance surrounding those applying for religious accommodation requests to the COVID-19 mandates, I have not been allowed to re-qualify in any of the sailplanes at USAFA.

8.   On August 24, 2021, the Secretary of Defense issued a mandate for all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19.

9.   On September 3, 2021, the Secretary of the Air Force issued a similar mandate ("COVID-19

**142**

Vaccine Mandate") requiring that commanders in the Air Force take all steps necessary to ensure all uniformed Airmen and Guardians received the COVID-19 vaccine, which included issuing unit-wide and individual orders to their military members.

10. On October 27, 2021, my commander issued me an order to receive the COVID-19 vaccine.

11. In response to the COVID-19 Vaccine Mandate, service members were permitted to submit a request for either a religious or medical exemption.

12. On October 29, 2021, I submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.

13. In my RAR, I explained that I sincerely hold the belief that the use of cells, cellular debris, protein, and DNA from willfully aborted human children is unacceptable.  Past and ongoing research on vaccines containing these ingredients violate core tenants of the Bible.  I hold that supporting vaccination and vaccine development is an endorsement of the sacrifice of human souls, which I cannot reconcile with my deeply held religious beliefs.  Moreover, I have a religious obligation to honor God with my body and respect His wishes in regard to my body. The COVID-19 vaccine mandates are in direction opposition to these foundational, core beliefs and taking the vaccine would be a massive violation of my sincerely held religious beliefs.  I have used many alternative COVID-19 mitigation measures with great success.  I have social distanced, worn masks, teleworked, and used selective scheduling measures to reduce contacts with others throughout the pandemic.  I have used these measures so effectively that even though I have deployed to the Middle East, gone on numerous temporary duty location trips ("TDYs"), and flown countless glider sorties with cadets, permanent party, and guests alike, not once did I test positive for COVID-19 throughout the entire duration of the pandemic.  I did so well with these procedures that on one of the TDYs I was running, Major General Craig Wills, then 19th

**143**

DocuSign Envelope ID: 09562778-4FC9-4D11-8491-1013872D1AB1

Air Force Commander, came and visited us and complemented us on the exemplary job we were doing implementing these alternative COVID-19 mitigation procedures.

14. As a requirement of the RAR process, on October 28, 2021, I was interviewed by the USAFA chaplain regarding my sincerely held religious beliefs.

15. On the same day, the chaplain determined that my religious beliefs were sincere and that receiving the COVID-19 vaccine would present a substantial burden on my free exercise of religion.  He also stated that he recommended for my RAR to be approved.

16. As an additional requirement of the RAR process, on or about October 27, 2021, I was counseled by a provider at the 10th Medical Group at the USAFA about the risks of not being vaccinated and becoming ill with COVID-19.  I apologize that my date for this point may not be accurate.  My wife and yet-to-be-born infant son had just undergone in-utero fetal surgery to correct a hindbrain herniation (Chiari II malformation) as a result of our son's myelomeningocele spina bifida, and we were living in the Ronald McDonald house close to the Children's Hospital to ensure both my wife and son had access to immediate medical care in the precarious post-surgery stage directly following the open fetal surgery.

18. Currently, I am a top performing individual who is on the "command track", expected to take a command position as soon as I am eligible and to most likely continue the upward trajectory of my career following that command position.  Not only would administrative action/nonjudicial punishment derail the current trajectory of my career, but it would forever remove command from the realm of possibility.  Additionally, it has not only the potential but the likelihood of withholding future assignments and promotions as well.

19. Since COVID-19 mitigation measures were put into effect at the beginning of the pandemic

**144**

in March of 2020, there have been no interruptions to my job duties or my job performance.  In fact, I successfully carried out my unit's mission, and at no time was there an impact to the mission as a result of COVID-19.  As I previously stated, I have never tested positive for COVID-19.

20. Between March of 2020 until now, my job duties have included: AM-250/251 Flight Commander, Director of Advanced Soaring, and Assistant Director of Operations for the 94 FTS; Air Defense Liaison to the Kingdom of Saudi Arabia; Deputy Chief of the Commander's Action Group ("CAG") for the Commandant of Cadets; and Chief of Training for the 306 FTG. My duty station during this entire time has been at the USAFA.

21. Presently, in addition to my roles at the 94th, my job duties include: Auxiliary Training Manager for the 306th, Crew Resource Management monitor, and Special Projects Manager to include the USAFA Preparatory School flying program and Integrated Training Device sustainment.

22. After submitting my RAR on October 29, 2021, on March 8, 2021, I received the initial denial of my RAR, which is dated March 4, 2021.

23. The denial was issued by Lieutenant General Webb, Air Education and Training Command commander,  and the reasons cited were 1) that I am required to have close contact with students and other personnel; 2) an exemption would detract from good order and discipline by creating the perception that there are different standards for those in leadership roles; 3) unit cohesion would be negatively impacted as my ability to train and mentor pilots would be limited; 4) my lack of personal readiness would impact my ability to deploy, go in temporary duty orders, and be transferred overseas; 5) it increases the risk to my own personal health and safety and that of

**145**

those around me; and ultimately that 6) the Air Force's compelling government interest outweighs my individual belief and no lesser means satisfy the government's interest.

24. On March 11, 2022, I submitted my appeal to the 94th Flying Training Squadron Commander, and he routed it up the chain to the Air Force Surgeon General on March 14, 2022.

25. When it was found that I was appealing the denial decision, I was immediately fired from my position by Ms. Kate Russell, Lead Personnelist for USAFA/Cadet Wing, on the grounds of an assumed appeal denial and subsequent discharge (she made several discriminatory statements to me in her office such as, "If I had known you weren't going to get the vaccine, I never would have hired you.").

26. On April 8, 2022 my appeal was denied.  My commander notified me of this on April 14, 2022, and I was given five days to receive a COVID-19 vaccine, apply for voluntary separation, or face mandatory disciplinary action, which would include a mandatory discharge process.

26. The reasons cited for the denial were 1) the Department of the Air Force has a compelling government interest in requiring me to comply with the requirement for the COVID-19 immunization because preventing the spread of disease among the force is vital to mission accomplishment; 2) my present duty assignment requires intermittent to frequent contact with others and is not fully achievable via telework or with adequate distancing; 3) institutionalizing remote completion of duties permanently would be detrimental to readiness, good order and discipline, and unit cohesion; 4) my health status as a non-immunized individual in this dynamic environment, and aggregated with other non-immunized individuals in steady state operations would place health and safety, unit cohesion, and readiness at risk; and 5) there are no less restrictive means available in my circumstances as effective as receiving immunizations in furthering these competing government interests.

**146**

27. However, Lieutenant General Miller, the Air Force Surgeon General, did not state that any consideration was given to the March 1 DoD guidance that eliminates masking and other requirements for service members, federal civilian workers, and contractors and also does not require vaccination status to be a factor in the workplace.  Neither did General Miller consider the fact that the federal civilian worker and federal civilian contractor vaccination mandates are not presently in effect and that those individuals are permitted to work in close proximity with others.  At the Air Force Academy we are surrounded by civilian workers and civilian contractors who may be unvaccinated, even employing several of them at the 94th, not to mention the staff in the control tower, the cleaning service, and the aircraft and facilities maintenance crews.

28.  While I was mentally distraught over having to decide between my career, being able to provide for my family of six, and violating my sincerely held religious beliefs, I made the difficult decision to hold true to my faith and did not receive a COVID-19 vaccine.  Being forced to go through this process has placed untold amounts of stress and anxiety on us over the past year, a year that came with monumental stressors of its own, including the marriage of my sister-in-law, the death of my wife's grandfather, the birth of my child, an extraordinarily complicated and hazardous medical diagnosis, selling a home, and a deployment.  This difficult process has been harmful to our family, our mental and emotional health, and our psyche.  In a time that, more than anything, should be dedicated to the care, nurture, and restoration of my family, I am spending my mornings, evenings, and weekends preparing briefs, MFRs, and reference papers to justify to a branch of the United States government why I should be allowed to exercise my First Amendment rights.

29. As a result of not taking the COVID-19 vaccine, on April 28, 2022, I received adverse

**147**

DocuSign Envelope ID: 09562778-4FC9-4D11-8491-1013872D1AB1

administrative action in the form of a Letter of Reprimand from Colonel Rowe, 12 FTW/CC, because I "failed to obey a lawful order to receive the COVID-19 vaccine".  I was also fired from my position in USAFA/Cadet Wing in Brig. Gen. Moga's Commander's Action Group when it was learned that I was appealing Lieutenant General Webb's denial of my RAR, and presently I am working for the 306th Flying Training Group as their Chief of Training.

30.  My command also will not let me fly or train students in the sailplane until the RAR process is brought to a conclusion, either by judicial relief or by my forced separation from the Air Force.

30. Without immediate relief, I am facing immediate and mandatory discharge from the armed services, the loss of my constitutional rights, and the abhorrent violation of my deeply held religious beliefs.  Mandating my discharge would inflict irreparable injury on us including but is not limited to: financial instability from the loss of all pay, special incentives and bonuses in a time of great financial hardship and unrest; loss of all medical and dental benefits, including the six-month grace period generally given for those separating from the service, jeopardizing the medical care of our infant son with special medical needs during a critical time in his life; and questions around future employment brought about by the nature of the mandatory discharge. The Air Force has been deliberate in their actions against service members who sought this religious accommodation to the COVID-19 vaccination mandates.  I have exhausted every avenue for relief afforded me by military statutes, and now only injunctive relief can stem this tide and prevent my being forcibly discharged from the Air Force.  Most any adverse paperwork in an officer's official file would be a career ending event.  I have no doubt I will face escalating paperwork, as my commander met with me today to advise me that he was upholding my LOR for refusing to get vaccinated.  This will now remove from me the possibility of becoming a

**148**

DocuSign Envelope ID: 09562778-4FC9-4D11-8491-1013872D1AB1

general officer, has dashed any hopes of holding a command position, and will derail my career

to the point that I may never receive another promotion.

I declare (or certify, verity, or state) under penalty of perjury that the foregoing is true and

correct.  Executed on May 23, 2022.

DocuSigned by:

*Alan Sosebee*

E076830684414DA

ALAN C. SOSEBEE

**149**