# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

BRYAN P. SPENCE, *et al.*,

|  |  |
|---|---|
| *Plaintiffs*, | Case No: 4:22-cv-00453-O |
| v. | |
| LLOYD J. AUSTIN, III, *et al.*, | |
| *Defendants*. | |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION .............................................................................................1

   I.    This Court Has Jurisdiction, and Venue is Proper. .............................6

       A.    Plaintiffs' Claims Are Ripe. ....................................................6

       B.    Plaintiffs' Claims Meet the Standard for Justiciability under *Mindes*. ....10

          1.   Plaintiffs Need Not Exhaust Intra-Miliary Remedies Before Obtaining Relief. ................................................................... 10

          2.   The *Mindes* Factors Weigh in Favor of Justiciability. .......... 12

       C.    Venue is Proper and All Plaintiffs Are Properly Joined. ........................16

   II.    Plaintiffs Are Likely to Succeed on the Merits. ...............................17

       A.    Defendants' Vaccine Mandate Fails Strict Scrutiny.............................18

          1.   Defendants Have No Compelling Interest in Coercing Airmen and Guardians To Be Vaccinated in Violation of Their Religious Beliefs.. 18

          2.   Compelled Vaccination of Plaintiffs and Prospective Class Members Is Not the Least Restrictive Means Available to Defendants. ................. 23

       B.    The Mandate Is Neither Neutral nor Generally Applicable...................24

   III.   The Remaining Factors for Injunctive Relief Are Satisfied.............................25

       A.    Plaintiffs Are Suffering Irreparable Injury. ...........................................25

       B.    The Balance of Harms and the Public Interest in Protecting Constitutional and Statutory Rights Weigh in Favor of an Injunction. ..............................................................................26

   IV.   The Requested Injunction Is Appropriate in Scope. .........................27

CONCLUSION.................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Austin v. U.S. Navy Seals 1-26*,
  142 S. Ct. 1301 (2022) ..................................................................2, 14, 15, 29

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin., Dep't of Lab.*,
  17 F.4th 604 (5th Cir. 2021)..............................................................25, 26

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ...........................................................................18, 26

*Crosby v. Austin*,
  No. 8:21-cv-2730, ECF No. 44 (M.D. Fla. Feb. 22, 2022) ...........................17

*Elrod v. Burns*,
  427 U.S. 347 (1976) ...........................................................................11

*Fulton v. City of Philadelphia*,
  141 S.Ct. 1868 (2021) ........................................................................17, 24

*Gonzalez v. O Centro Espírita Beneficente Uniao do Vegetal*, 5
  46 U.S. 418 (2006) ............................................................................26

*Gooch v. Life Investors Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ..............................................................28

*Hodges v. Callaway*,
  499 F.2d 417 (5th Cir. 1974) ..............................................................10, 11

*Howe v. Varity Corp.*,
  896 F.2d 1107 (8th Cir. 1990)..............................................................28

*Jackson Women's Health Organization v. Currier*,
  760 F.3d 448 (5th Cir. 2014) ..............................................................25, 26

*Kane v. De Blasio*,
  19 F.4th 152 (2d Cir. 2021) .................................................................25

*Koss v. Norwood*,
  305 F. Supp. 3d 897 (N.D. Ill. 2018)....................................................28

*Lee v. Orr*,
  No. 13-CV-8719, 2013 WL 6490577 (N.D. Ill. Dec. 10, 2013) ................28

*Lopez v. City of Houston*,
  617 F.3d 336 (5th Cir. 2010) ..............................................................6

*Mindes v. Seaman*,
  453 F.2d 197 (5th Cir. 1971)................................................6, 10, 13, 14

*N.Y. State Nat. Org. For Women v. Terry*,
    697 F. Supp. 1324 (S.D.N.Y. 1988) ...............................................................28

*Navy SEALs 1-26 v. Biden*,
    No. 4:21-cv-01236-O, ECF No. 150 (N.D. Tex. May 7, 2022) .............................6, 7, 8

*Navy SEALs 1-26 v. Biden*,
    No. 4:21-cv-01236-O, 2022 WL 34443, at *1 (N.D. Tex. Jan. 3, 2022) ............... passim

*O.B. v. Norwood*,
    170 F. Supp. 3d 1186 (N.D. Ill. 2016) ............................................................28

*Paragon Off. Servs., LLC v. UnitedHealthcare Ins. Co.*,
    No. 3:11-CV-2205-D, 2012 WL 4442368 (N.D. Tex. Sept. 26, 2012) ........................16

*Sambrano v. United Airlines, Inc.*,
    No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ...................................25, 26

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) ..........................................................................13, 23

*Toilet Goods Ass'n, Inc. v. Gardner*,
    387 U.S. 158 (1967) .................................................................................9

*Von Hoffburg v. Alexander*,
    615 F.2d 633 (5th Cir. 1980) ...................................................................11, 12

**Statutes**

28 U.S.C. § 1391 ....................................................................................16

**Other Authorities**

*COVID-19 Statistics,* Sec'y Air Force Pub. Affairs (June 7, 2022) ...................................10

Frank Kendall, *Supplemental Coronavirus Disease 2019 Vaccination Policy*, Air Force
    (Dec. 7, 2021) .......................................................................................8

Kristina Wong, *Exclusive: Air Force Admits All Granted Religious Accommodations for
    Vax Were for Airmen Already Leaving Service*, Breitbart (May 10, 2022) ...................10

**Rules**

Fed. R. Civ. P. 20 ...................................................................................16

## INTRODUCTION

While Plaintiffs' motion for a temporary restraining order and preliminary injunction has been pending, Defendants have continued to inflict irreparable injury. Only this Court can stop them. Since suit was filed, as established in the supplemental affidavits, five of nine named Plaintiffs have been subject to additional adverse action which threatens to end their careers in short order. Plaintiff Corcoran has been denied retirement and, absent action from this Court, he soon will be separated from the Air Force. Similarly, absent a temporary restraining order, a show-cause order that begins separation likely will be issued to Plaintiff Stef any day. Defendants threaten to delay Plaintiff Sosebee's already-promised promotion in rank at any time. Plaintiff Haynes will be involuntarily transferred to the Individual Ready Reserves. Plaintiff Grieb will be denied future promotions. Other Plaintiffs expect to receive similar punishment at any time. Plaintiffs respectfully ask this Court to swiftly issue a temporary restraining order to prevent further irreparable injury until such time as this Court decides whether to issue a preliminary injunction.

Defendants have offered no sound reason why this Court should not do so. Their jurisdictional arguments are squarely foreclosed by this Court's precedent. And Plaintiffs are likely to succeed on the merits: Defendants have proved no compelling interest in requiring Plaintiffs to be vaccinated in violation of their religious beliefs. And Defendants' treatment of medically exempt servicemembers proves that less restrictive means than punitive action and eventual separation are available and already in use by Defendants. Similarly, the fact that, until Defendants issued their mandate, all Plaintiffs were safely and effectively performing their duties shows that less restrictive means abound.

Defendants also have not offered any sound reason that this Court cannot issue a classwide injunction. If this Court chooses not to issue a classwide preliminary injunction until the conclusion of its briefing schedule set out in its June 17, 2022, Order (ECF No. 24), it should still issue a classwide temporary restraining order to prevent further irreparable injury in the interim. If this Court chooses not to issue any classwide relief at this time, Plaintiffs respectfully request that it issue a temporary restraining order as to the named Plaintiffs, each of whom faces impending adverse action, to include separation.

Nor have Defendants provided a sound reason for this Court to limit the scope of its injunction to allow Defendants to continue discriminating against Plaintiffs if they can label their decisions as "operational," "personnel," or "assignment" decisions. Defendants' reliance on the Supreme Court's stay decision in *Austin v. U. S. Navy Seals 1-26* is inapt. That case rested on a conclusion that no less restrictive means were available. *See Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring). Defendants' actions here make clear that, in this case, less restrictive means are abundant and already in use. This Court will not violate Supreme Court precedent by enjoining Defendants from making religiously motivated conduct the basis for adverse action.

Ultimately, Defendants' arguments rest on their insistence that this Court must defer to the military's expertise. But, as this Court has aptly stated, "[t]here is no military exclusion from our Constitution." *Navy SEALs 1-26 v. Biden*, No. 4:21-cv-01236-O, 2022 WL 34443, at *1 (N.D. Tex. Jan. 3, 2022). And discrimination deserves no deference. Plaintiffs respectfully ask this Court to grant the motion for a temporary restraining order and preliminary injunction.

## FACTS

Plaintiffs will not reiterate the facts from their opening brief. However, Defendants have continued pursuing adverse action against them while their motion for a temporary restraining order and preliminary injunction is pending.  Plaintiffs write briefly to inform the Court of these developments. An immediate temporary restraining order, at least as to the nine named Plaintiffs, is necessary to prevent Defendants from continuing to take unlawful adverse action against Plaintiffs based on their religious conduct.

On May 31, 2022, Plaintiff Stef's Letter of Admonishment ("LOA"), discussed in his original declaration, was upheld. Ex. 4 ¶ 3, S.App.19. On June 15, 2022, Plaintiff Stef was notified that his Letter of Counseling ("LOC") would also be upheld. *Id.* ¶ 6. Both the LOA and LOC cite to violations of Article 92 of the Uniform Code of Military Justice ("UCMJ"). *Id.* ¶¶ 3–4. Violations of the UCMJ can result in court martial and criminal convictions. *Id.* ¶ 8. The LOA and LOC are now part of Plaintiff Stef's Officer Selection Record and will prevent his promotion to the next rank. *Id.* ¶ 7. The next step after issuance of an LOC at Sheppard Air Force Base, where Plaintiff Stef is stationed, is likely to be a "show cause" letter, which would begin separation proceedings. *Id.* ¶ 8. Absent timely intervention from this Court, Plaintiff Stef will be removed from the Air Force. *Id.*

On June 3, 2022, Plaintiff Grieb received an LOR for his refusal to receive the COVID-19 vaccine. Ex. 5 ¶ 4, S.App.24. Plaintiff Grieb has forty-five days from the date of issuance to respond to that LOR. *Id.* ¶ 5.  Absent timely intervention from this Court, the LOR will be sustained and placed in an Unfavorable Information File and in Plaintiff Grieb's Officer Selection Record, which will preclude Plaintiff Grieb from future

3

promotion. *Id.* ¶ 4. The LOR also states that Plaintiff Grieb's refusal to be vaccinated for religious reasons is a violation of Article 92 of the Uniform Code of Military Justice ("UCMJ"). *Id.* As previously stated, violations of the UCMJ can result in court martial and criminal convictions. *Id.* ¶ 6.

On June 6, 2022, Plaintiff Corcoran received an LOR from Lieutenant Colonel Rimpa Patel for his refusal to receive the COVID-19 vaccine. Ex. 1 ¶ 3, S.App.3. Plaintiff Corcoran has forty-five days from the date of receipt to respond. *Id.* ¶ 5. The LOR also states that Plaintiff Corcoran's refusal to be vaccinated for religious reasons is a violation of Article 92 of the UCMJ, which can result in court martial and criminal convictions. *Id.* ¶ 4. On June 23, 2022, Plaintiff Corcoran was informed that his retirement has been denied. *Id.* ¶ 8. Absent timely intervention from this Court, Plaintiff Corcoran's career will end, and he will be forced out of the Air Force without his retirement and benefits. *Id.* ¶ 10, S.App.4. Plaintiff Corcoran was issued the LOR and denied his retirement even though Lieutenant Colonel Patel stated to this Court that his request for reconsideration is pending. Defendants' Appendix at 00847 (hereinafter "Defts.' App.").

On June 13, 2022, mere hours before Defendants filed their opposition brief, Plaintiff Haynes was issued an LOR for failure to receive the COVID-19 vaccine. Ex. 3 ¶ 5, S.App.13. On June 23, 2022, Plaintiff Haynes was notified that his LOR was sustained on June 16—the same day he submitted his response. *Id.* ¶ 6. On June 24, 2022, Plaintiff Haynes's commander provided him with AF Form 1058, which establishes an Unfavorable Information File ("UIF") containing the LOR. *Id.* ¶ 9, S.App.14. That UIF will preclude Plaintiff Haynes from future promotions. *Id.* ¶ 4, S.App.13. The LOR also states that

Plaintiff Haynes's refusal to be vaccinated for religious reasons is a violation of Article 92 of the Uniform Code of Military Justice, which can result in a court martial and criminal conviction. *Id.* ¶ 8, S.App.14. On June 24, 2022, Plaintiff Haynes's commander also provided him with official notice of the involuntary curtailment of his four-year tour of duty and involuntary transfer to the Individual Ready Reserve. *Id.* ¶ 10. Plaintiff Haynes has fifteen days from date of receipt to respond to these matters. *Id.* Absent timely intervention from this Court, Plaintiff Haynes's career will end, and he will lose pay, medical, and retirement benefits after sixteen years of honorable service. *Id.* ¶ 11.

On June 15, 2022, Plaintiff Sosebee was informed that his already-approved promotion to the rank of Major would be delayed by six months because his decision not to receive the COVID-19 vaccine due to his religious convictions gave cause to believe he had not met the requirement of "exemplary conduct," and that such conduct suggests that Plaintiff Sosebee is "not professionally qualified to perform the duties of the next higher grade." Ex. 2 ¶ 5, S.App.8. The record memorializing the decision to delay Plaintiff Sosebee's promotion also stated that the promotion could be delayed longer than the six-month recommendation. *Id.* ¶ 6, S.App.8–9. Plaintiff Sosebee requested an extension of time to respond to the decision to delay his promotion so that he could bring this matter to the attention of this Court, and that extension was granted. *Id.* ¶ 7, S.App.9. Plaintiff Sosebee has until the date of this filing, Monday, June 27, 2022, to respond. *Id.* Absent timely intervention from this Court, the approval authority could uphold the decision to delay his promotion at any time and may do so this same day or at some point this week. *Id.* ¶ 8. The delay in Plaintiff Sosebee's promotion will likely prevent him from fulfilling

5

his in-residence schooling requirements, which are necessary for him to become eligible for a command position. *Id.* Any delay in the completion of that requirement drastically reduces his chances of being chosen to attend school in-residence in the future. *Id.*

## ARGUMENT

### I.     This Court Has Jurisdiction, and Venue is Proper.

Defendants argue preliminarily (at 11–18) that this Court lacks jurisdiction because Plaintiffs' claims are not ripe and are not justiciable under *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). Both arguments are squarely foreclosed by this Court's prior holdings. *See* Order on Mot. to Dismiss, *Navy SEALs 1-26*, No. 4:21-cv-01236-O, ECF No. 150, at 4–5 (N.D. Tex. May 7, 2022); *Navy SEALs 1-26 v. Biden*, 2022 WL 34443, at *8. Defendants also argue (at 18) that several Plaintiffs lack venue and that their claims are improperly joined, but that argument fails because Plaintiffs assert claims arising out of the same series of occurrences and their claims are contingent on common questions of law and fact. *See* Fed. R. Civ. P. 20(a)(1). In short, all of Defendants' challenges to this Court's ability to hear this case fall flat.

### A.  Plaintiffs' Claims Are Ripe.

Defendants' contention that Plaintiffs' claims are unripe is wrong. Plaintiffs have met both prongs of the ripeness inquiry: their First Amendment and RFRA claims are quintessential legal questions fit for judicial review, and they face hardship if this Court declines consideration. *See Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010).

As this Court has already twice recognized, whether Defendant's vaccine mandate "passes muster under the First Amendment and RFRA…is a purely legal question

appropriate for judicial review." Order on Mot. to Dismiss, *Navy SEALs 1-26*, No. 4:21-cv-01236-O, ECF No. 150, at 4–5 (N.D. Tex. May 7, 2022) (quoting *SEALs*, 2022 WL 34443, at *8). This Court has also held that, where "[d]enials are apparently inevitable, and appeals are fruitless," claims are ripe and "there is no need to wait for further factual development." *Id.* Defendants' argument (at 14) that the denial of Plaintiffs' Religious Accommodation Requests ("RARs") was not predetermined because they have granted less than one percent of RARs is specious. As stated in Plaintiffs' Complaint, Defendants have already admitted in a preliminary injunction hearing before another court that, as of the date of that hearing, the handful of granted RARs were given only to Airmen already planning to leave the Air Force within six months. Compl. ¶ 144. Defendants are not as forthcoming with this Court as they were with the District of Nebraska; they fail to acknowledge this limitation on granted RARs in their brief. That omission does not inspire confidence that Defendants have changed course.

Based on Defendants' policy of denying all RARs from Airmen who are not already leaving the service, it is evident that it is only a matter of time before Plaintiffs Wu and Runyan[1] (the only Plaintiffs whose appeals remain pending) receive their final denials. And Defendants' assertion that Plaintiff Corcoran has any hope of recourse through his request for reconsideration is plainly contradicted by their actions. Plaintiff Corcoran was never told that his reconsideration request would be given further consideration. Furthermore, Plaintiff Corcoran has been issued an LOR and his retirement application has been denied

---

[1] In her affidavit, Plaintiff Runyan inadvertently stated that her appeal had been denied. She meant to say that she had received the initial denial of her RAR.

since this case was filed. Defendants did not even wait to make a determination on his reconsideration request before they issued an adverse administrative action and denied him the opportunity to retire after *twenty years* of honorable service. Ex. 1 ¶¶ 4, 8, S.App.3. Given that final denials are clearly inevitable for all Plaintiffs, it is evident that their claims are pure legal questions fit for judicial resolution. *See* Order on Mot. to Dismiss, *Navy SEALs 1-26,* No. 4:21-cv-01236-O, ECF No. 150, at 4–5 (N.D. Tex. May 7, 2022).

The second prong of the ripeness inquiry—the potential hardship Plaintiffs face if the Court declines consideration—is also met. Defendants erroneously conflate the hardship from delay necessary to establish ripeness with the irreparable injury prong of the preliminary injunction inquiry. In any case, Plaintiffs have met both burdens. *See infra* Section III.A. "Substantial hardship exists when a party must choose between (1) complying with the law and (2) facing significant sanctions." *See* Order on Mot. to Dismiss, *Navy SEALs 1-26,* No. 4:21-cv-01236-O, ECF No. 150, at 5 (N.D. Tex. May 7, 2022) (citation and internal quotation marks omitted).

And Defendants' claim (at 15) that Plaintiffs do not face hardship from delay is flatly contradicted by the record. Absent timely court intervention, Plaintiffs will face separation from the Air Force.[2] *See, e.g.*, Ex. 1 ¶ S.App.4. Nor have Defendants waited for

---

[2] Such separation is hardly "hypothetical" where Defendants themselves have stated that "Regular service members who continue to refuse to obey a lawful order to receive the COVID-19 vaccine after their exemption request or final appeals has been denied…will be subject to initiation of administrative discharge." Frank Kendall, *Supplemental Coronavirus Disease 2019 Vaccination Policy*, Air Force (Dec. 7, 2021), tinyurl.com/5n935d26.. And the fact that formal discipline and separations are not presently stayed cuts in favor of Plaintiffs' showing of harm for the ripeness inquiry, not against it. *See SEALs*, 2022 WL 34443, at *5.

8

separation to administer adverse action: Each Plaintiff had already been subject to adverse action before filing, and Defendants have continued to inflict additional injury while Plaintiffs' motion for a temporary restraining order and preliminary injunction is pending. *See, e.g.*, *id.* ¶¶ 3, 8. Plaintiffs have been issued Letters of Admonition, Counseling, and Reprimand, which have become part of their permanent record and, absent judicial intervention, will prevent them from promoting. *See, e.g.*, Ex. 5 ¶ 4, S.App.24. Those letters have stated that Plaintiffs violated the Uniform Code of Military Justice, which demonstrates a risk that Defendants will pursue charges and proceed to a court martial with accompanying criminal sanctions for failure to receive the vaccine.[3] *Id.* And Defendants have prevented Plaintiffs from flying, accepting assignments, deploying, promoting, receiving pay, and fulfilling their duties. *See* Pls. Br. 6–7. Defendants' decision to inflict ongoing harm not only makes evident that the case is ripe, but also conclusively shows Plaintiffs' immediate need for a TRO to avoid further irreparable injury.

---

[3] The potential for criminal sanctions and the serious career consequences Plaintiffs face make the present case plainly distinguishable from *Toilet Goods Ass'n, Inc. v. Gardner*, which rested its holding on the "minimal, if any, adverse consequences" petitioners faced, and specifically noted there was not "possible criminal liability." 387 U.S. 158, 165–66 (1967).

**B.  Plaintiffs' Claims Meet the Standard for Justiciability under *Mindes*.**

For the same reasons that Plaintiffs' claims are ripe, this Court should reject Defendants' argument that their claims must be dismissed for failure to exhaust administrative remedies. This Court has already determined that, where the denial of an RAR to the DoD's vaccine mandate is "predetermined," a plaintiff need not wait for Defendants "to engage in an empty formality." *SEALs*, 2022 WL 34443 at *4. As discussed above, the denial of all RARs from Airmen who are not already voluntarily leaving the service is predetermined.

### 1.  Plaintiffs Need Not Exhaust Intra-Miliary Remedies Before Obtaining Relief.

As in *SEALs*, Plaintiffs' claims meet at least four exceptions to the requirement for exhaustion of intra-military remedies. *See SEALs*, 2022 WL 34443, at *5–7; *Mindes*, 453 F.2d at 201. First, exhaustion is excusable because "resort to the administrative reviewing body would be futile." *See Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). The Air Force has issued an initial denial of each and every Plaintiffs' RAR. Outside of Plaintiffs' requests, the Air Force has only granted RARs in 0.85% of cases,[4] and only to Airmen who are already voluntarily leaving the service within six months.[5] Even where Plaintiffs' immediate commanders have been supportive of their RARs, their requests have

---

[4]   *COVID-19 Statistics,* Sec'y Air Force Pub. Affairs (June 7, 2022), https://tinyurl.com/2p87965v.

[5] Compl. ¶ 144 (citing Kristina Wong, *Exclusive: Air Force Admits All Granted Religious Accommodations for Vax Were for Airmen Already Leaving Service*, Breitbart (May 10, 2022), https://tinyurl.com/2p8aw7tm)

been denied further up the chain of command. Spence Aff. Ex. 4 ¶ 22, App.43[6]. The facts clearly show that Defendants have a top-down policy of denying all religious accommodation requests, such that the military's administrative processes do not "provide a real opportunity for adequate relief." *Hodges*, 499 F.2d at 420.

Second, available administrative remedies are inadequate to grant Plaintiffs the relief they seek. *See Von Hoffburg v. Alexander*, 615 F.2d 633, 640–41 (5th Cir. 1980). Defendants do not contend that resort to the separation process or the Board of Correction for Military Records could restore Plaintiffs' already-lost assignments and soon-to-be lost years-long Active Guard Reserve orders, necessary health benefits for Plaintiffs and their families, appointment to commands, and required schooling opportunities Defendants have taken away as a result of Plaintiffs' RARs. Nor can they restore the lost years of experience to Plaintiffs' careers.

Third, Plaintiffs will suffer irreparable injury if they are compelled to pursue their administrative remedies. *See Von Hoffburg,* 615 F.2d at 638. Irreparable injury is discussed further at Section III.A, but a few points are particularly salient here. Plaintiffs are currently being forced to choose between their religious beliefs and their service to this country. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Resort to administrative review, which could take months or years, cannot undo that harm. Nor can

---

[6] References to "App." Refer to Plaintiffs' May 27, 2022, Appendix filed in support of Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 5.

any administrative process restore the lost years of career experience Plaintiffs are being denied. Furthermore, as in *SEALs*, "Plaintiffs have suffered injury *because* they submitted religious accommodation requests." *SEALs*, 2022 WL 34443, at *8 (emphasis in original). For example, Plaintiff Wu lost an already-publicized career-advancing assignment to lead the legal office at Patrick Space Force Base, merely because he submitted an RAR, while that RAR was still pending. Wu Aff. Ex. 11 ¶ 24, App.133. As this Court has already held, "[w]ithholding judicial review is particularly illogical when participation in the administrative process invites the very harm Plaintiffs seek to avoid." *SEALs,* 2022 WL 34443 at *8.

Finally, Plaintiffs have raised, at a minimum, a substantial constitutional question. *Von Hoffburg*, 615 F.2d at 638. Whether Defendants have violated the First Amendment by forcing Plaintiffs to choose between their religious beliefs and their military careers, particularly where they discriminate between secular and religious accommodation requests, raises significant constitutional issues that are appropriate for judicial, not administrative, review.

In sum, as in *SEALs*, "[a]t least four recognized exceptions to the exhaustion requirement apply. If one is insufficient, the combination of the four readily supports [a] finding that the traditional justifications for military exhaustion are not served by [Defendants'] religious accommodation process." *SEALs*, 2022 WL 34443, at *7.

## 2. The *Mindes* Factors Weigh in Favor of Justiciability.

Plaintiffs' claims also satisfy the four factors for determining whether a military issue is justiciable under *Mindes*: "(1) the nature and strength of the plaintiff's challenge;

(2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved." *SEALs*, 2022 WL 34443, at *7 (citing *Mindes*, 453 F.2d at 201–02). Here, each factor shows that Plaintiffs' claims are justiciable and that, contrary to Defendants' arguments, this Court may consider whether Defendants have violated the First Amendment and RFRA by taking adverse action against Plaintiffs, including by removing them from assignments due to their RARs and unvaccinated status.

First, the nature and strength of Plaintiffs' claims weigh in favor of judicial review. *See Mindes*, 453 F.2d at 201–02. As in *SEALs*, Plaintiffs claims are based on violations of their First Amendment and RFRA rights and are thus "squarely in the category of claims most favorable to judicial review." *SEALs*, 2022 WL 34443, at *7. As discussed in Section II below, Plaintiffs' claims are strong. Again, as in *SEALs*, Defendants' mandate fails strict scrutiny because it "treats comparable secular activity (e.g., medical exemptions) more favorably than religious activity" by routinely granting medical and administrative exemptions while denying all RARs from servicemembers who are not already leaving the Air Force. *Id.* As this Court reasoned in *SEALs*, "the activity itself—forgoing the vaccine— is identical." *Id.* And the risks posed by that activity are identical regardless of whether a servicemember's reasons are religious or secular. It is only Defendants' treatment of secular and religious abstainers that varies. Given the "irrationality of the mandate," Plaintiffs are entitled to relief. *See id.* (quoting *Tandon v. Newsom*, 141 S. Ct. 1294, 1298 (2021) (per curiam)).

Second, as discussed above, review is necessary to avoid potential injury. Plaintiffs face continued loss of their First Amendment freedoms and serious harm to their careers if review is denied. This factor is discussed further in Section III.A.

Third, the requested injunction would not substantially interfere with military function. Defendants' contention that relief would require this Court to oversee day-to-day military operations ignores a key portion of the proposed injunction: It would bar Defendants from taking adverse action only where Defendants "can[not] prove that failing to take a particular adverse action against the servicemember in question would likely have a real and concrete (not theoretical) adverse impact on a compelling government interest." Mot. for TRO and Prelim. Inj., ECF No. 4. Such an injunction would not intrude into military affairs, except to the extent the military imposes a burden on religious belief without the compelling interest that is already required under the First Amendment and RFRA. And again, as in *SEALs*, "[w]hether denying religious accommodations violates the First Amendment is a distinct legal question that would not 'seriously impede the military in the performance of vital duties.'" *SEALs,* 2022 WL 34443, at *8. Any minimal interference necessary to ensure Defendants comply with the law does not weigh against judicial review. As both this Court and the Fifth Circuit have recognized, "[i]nterference per se is insufficient since there will always be some interference when review is granted." *Id.* (quoting *Mindes*, 453 F.2d at 201).

Defendants read much into a single-paragraph decision in *Austin v. U. S. Navy Seals 1-26*, but neither the Supreme Court's partial stay in that case nor Justice Kavanaugh's concurrence counsels against an injunction here. Justice Kavanaugh's concurrence was

predicated on the rationale that no less restrictive means were available to the Navy.[7] *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring). Here, there *are* less restrictive means than disciplining, withholding promotions and assignments from, and ultimately separating Plaintiffs. The Air Force already has employed such less restrictive means for unvaccinated Airmen with medical and administrative exemptions. *See, e.g.*, McCoy Aff. Ex. 6 ¶ 10, S.App.30. Defendants cannot simply incant the word "operational" to shield their actions from judicial review. Where similarly situated servicemembers are given dissimilar treatment based upon whether their motivations are religious or secular, the issue is not about military operations, but employment discrimination. And discrimination deserves no deference.

Fourth, as this Court has previously recognized, "[w]hether the vaccine mandate passes muster under the First Amendment and RFRA requires neither 'military expertise or discretion.'" *SEALs*, 2022 WL 34443, at *8. Again, this is a constitutional issue, not an operational issue.

In sum, all four *Mindes* factors favor justiciability, and "this is precisely the type of legal challenge that *Mindes* contemplates is appropriate for the courts to decide." *Id.*

---

[7] Justice Kavanaugh's concurrence was also based on the Navy's interest in its "*Special Warfare* personnel." *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring) (emphasis added). The interest the Navy has in such elite assignments is certainly more compelling than the interest the Air Force has in day-to-day assignments of the entire force.

### C. Venue is Proper, and All Plaintiffs Are Properly Joined.

Venue is also proper, and severance of Plaintiffs' claims is unwarranted. Where, as here, Defendants are officers of the United States acting in their official capacities, and an agency of the United States, a claim may be brought in "any judicial district in which…a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1). Additional persons may be joined as parties in accordance with the Federal Rules of Civil Procedure. *Id.* Those rules provide that individuals may join in a single action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Both prongs are met here: Plaintiffs assert claims arising out of the same series of occurrences all related to Defendants' vaccine mandate and subsequent across-the-board denial of all RARs submitted by Airmen who were not already leaving the service. And, as stated in the Complaint, there are numerous common questions of fact and law. Compl. ¶¶ 129–131.

Interests of judicial efficiency also counsel against severance. *See Paragon Off. Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-CV-2205-D, 2012 WL 4442368, at *1–2 (N.D. Tex. Sept. 26, 2012). Severing some Plaintiffs from this suit would lead to unnecessary multiplicitous litigation and increase the risk of conflicting holdings on claims premised on the same legal and factual issues. This Court is an appropriate venue in which to adjudicate all Plaintiffs' claims.

Defendants' sole source of authority—an out-of-circuit district court opinion—does not suggest otherwise. Indeed, the *Crosby* court premised its decision to sever largely on the fact that *Crosby*, unlike this case, was not a class action. *Crosby v. Austin*, No. 8:21-cv-2730, ECF No. 44, at 2 (M.D. Fla. Feb. 22, 2022). And the kinds of factual differences present in *Crosby* are not present here: That case presented objections to the Department of Defense's COVID-19 vaccine mandate based, not only on religious liberty, but also on pre-existing health concerns, prior COVID-19 infections, and the alleged unavailability of FDA-licensed vaccines. The *Crosby* plaintiffs did not all share the same objections, and the court thus reasoned that the differences between their claims were "too numerous to promote judicial economy." *Id.* at 3. Not so here. All Plaintiffs in this case brought the same two claims under RFRA and the First Amendment. Those two claims, based on Defendants' decision to uniformly deny RARs (unless an Airman is already leaving the service) and to punish those who seek them, can be efficiently adjudicated in a single action in this district.

## II.     Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs have established that they are likely to succeed on the merits. Defendants mandate fails strict scrutiny because they lack a compelling interest in vaccinating these Plaintiffs, and because Defendants' adverse action is not the least restrictive means of achieving any interest they have. Strict scrutiny applies not only to Plaintiffs' RFRA claim, but also to their First Amendment claim because Defendants' mandate, which provides exceptions for secular but not religious conduct, is not generally applicable. *See Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1879 (2021).

## A. Defendants' Vaccine Mandate Fails Strict Scrutiny.

Defendants lack a compelling interest in vaccinating Plaintiffs, and their course of adverse action is not the least restrictive means available to them. The mandate thus fails strict scrutiny, and an injunction is warranted.

### 1. Defendants Have No Compelling Interest in Coercing Airmen and Guardians To Be Vaccinated in Violation of Their Religious Beliefs.

For three reasons, Defendants fail to establish a compelling interest in vaccinating Plaintiffs despite their religious convictions. First, the underinclusivity of Defendants' mandate shows that they have no compelling interest in vaccinating each servicemember. Second, the record shows that Defendants did not give Plaintiffs' requests any meaningful individual consideration. Finally, Defendants offer no meaningful rebuttal to the fact that here, as in *SEALs*, Defendants have achieved widespread vaccination of the force without the participation of named Plaintiffs. *See SEALs*, 2022 WL 34443, at *10.

As this Court has already explained, "a broadly formulated interest" in military readiness and health of the overall force is insufficient. *Id.*; *see also* Pls. Br. 9–10. Defendants must show a compelling interest in vaccinating these particular Plaintiffs. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014). Instead, Defendants broadly assert that this Court should defer to their claimed interest in "vaccination of *each* service member." Defs.' Br. 20 (emphasis added). Yet Defendants have displayed little concern for such an individualized interest when secular conduct is at issue. The hundreds of granted medical exemptions show that the Air Force believes it can achieve its compelling interest without requiring each servicemember to be vaccinated. Defendants

assert (at 26) that vaccinating Airmen with medical contraindications to the vaccine would harm their health, and thus not serve an interest in readiness and the health and safety of the force. But if Defendants truly had a compelling interest in vaccinating each servicemember, including Plaintiffs, they would need to treat servicemembers with contraindications the same way they treat servicemembers with religious objections: they would remove them from their duties and ultimately separate them from the Air Force. Defendants' decision not to do so shows that their asserted compelling interest in vaccinating Plaintiffs is a farce.

Defendants' claim (at 26) that medical and religious exemptions are not comparable because they grant only temporary medical exemptions is equally misplaced. Defendants have offered no evidence that an allergy to a vaccine is likely to be more temporary than a religious belief. Presumably that is why Airmen can receive subsequent temporary medical exemptions. Ex. 3 ¶ 8, Defs.' App.00063. And in any event, Defendants must at offer Plaintiffs at least the same treatment as secular requesters by providing them with temporary exemptions.[8] As additional vaccines develop, one could be created that does not

---

[8] Defendants assert (at 27) that medical exemptions render servicemembers non-deployable and subject to other restrictions. However, in their Appendix, Defendants state that a medically exempt Airman will "likely" be categorized as non-deployable and that it is possible for a medically exempt Airman to receive separate medical clearance to deploy. Ex. 3, Defs.' App.00066–67. In any event, if restrictions are uniformly imposed on medically exempt servicemembers, Defendants can offer that as evidence that deploying religiously accommodated Airmen would pose a "real and concrete (not theoretical) adverse impact on a compelling government interest," and therefore failing to deploy them would not be in violation of the proposed injunction. See Mot. for TRO and PI, ECF No. 4. At most, this is an argument for narrowing an injunction to prohibit Defendants from making non-receipt of COVID-19 vaccination or submission of a request for a religious accommodation from COVID-19 vaccination a basis for any adverse action against

burden Plaintiffs' religious beliefs, just as a medically accommodated Airman might not have an allergic reaction to a new vaccine with a different formulation. Ex. 3, Defs.' App.00065. And, as COVID-19 treatments continue to advance, COVID's damaging effects will likely become even less significant than they are now. *See SEALs*, 2022 WL 34443, at *10 (describing the lower risks present now than in earlier days of the pandemic); Pls. Br. 13–14 (same). Additionally, while Plaintiffs do not agree with Defendants that an interest in deployability militates in favor of compelling vaccination of Plaintiffs now (particularly where Defendants allow medically exempt Plaintiffs to continue to serve while they are non-deployable, Defs.' Br. 27), a temporary accommodation would allow Plaintiffs to continue to serve while they are also non-deployable under Defendants' rules.

The fact that medical accommodations are routinely granted, while RARs are routinely denied, is by itself evidence that Defendants have no compelling interest in vaccinating Plaintiffs. But beyond that, Plaintiffs have proffered evidence that individuals with similar job duties have been allowed to continue service despite their unvaccinated status.[9] Defendants assert (at 28) that these examples "comport with Air Force policy that

---

servicemembers if such adverse action is not also taken against medically and administratively exempt servicemembers.

[9] On page 11 of Plaintiffs' opening brief, Plaintiffs discussed an individual who traveled with the Presidential Advance Team and who told Plaintiff Grieb that that "he has passed the expiration date of his exemption and he has not been pursued by our Squadron or the Vance AFB Medical Group to receive his shot at this time. He believes he has fallen through the cracks and he does not want to be highlighted and be forced to get the shot." Grieb Aff. ¶ 32, App.111. While the statements in Plaintiffs' declarations remain true, the individual in question has subsequently stated that he received a COVID-19 vaccine in December 2021.

unvaccinated service members are treated the same, regardless of the reason for their vaccination status." But unvaccinated servicemembers with medical exemptions are not treated the same as unvaccinated servicemembers with religious objections, even if some limitations are placed on those with medical exemptions. Medically exempt Airmen are permitted to perform their duties, get promoted, receive pay, earn points toward retirement, and remain in the Air Force, while Plaintiffs are denied those opportunities and receive disciplinary action.

This point is highlighted in the attached declaration from Lieutenant Colonel Michael McCoy, whose RAR was denied and who later received a medical accommodation until at least June of 2023. Ex. 6 ¶ 9, S.App.30. Lieutenant Colonel McCoy is permitted to instruct students in a T-38 fighter-type aircraft, with students in the front cockpit and Lt Col McCoy in the rear cockpit, and to hold pre-flight briefing and post-flight debriefing with students in person. *Id.* ¶ 10. That individuals with medical exemptions are permitted to perform such duties undermines Defendants' assertion that Plaintiffs cannot safely perform their duties in person,[10] and particularly undermines their argument (at 21–22) that Plaintiffs Grieb, Haynes, Pike, Sosebee, and Stef cannot safely conduct or complete training or fly.

Defendants try (at 27–28) to explain away their disparate treatment of medical and religious exemptions by stating that Plaintiffs Pike and Stef were able to train under

---

[10] Defendants also do not apply restrictions consistently. For example, they offer no explanation for why it has been deemed safe for Plaintiff Wu to work in an office throughout the pandemic, while others like Plaintiff Runyan have been required to telework. *Compare* Wu Aff. Ex. 11 ¶ 21, App.132 *with* Runyan Aff. Ex. 10 ¶ 29, App.124.

medical exemptions because those exemptions were granted, but denied the opportunity to train under religious exemptions because those requests were pending. But that ignores the fact that all RARs from Airmen who are not already leaving the service are pending or denied, not granted. And the only reason for that disparity is the basis of the request; clearly, the threat Pike and Stef posed to the health and readiness of themselves and the force did not change upon the denial of their RAR appeal.

Next, Defendants' assertion (at_20) that they have conducted a "to the person" analysis of each RAR is belied by the facts. An accommodation process that results in denials of *all* RARs for those not already leaving the service, while granting hundreds of medical accommodations, compels the conclusion that Defendants created a top-down policy of denying all RARs, regardless of an Airman's individual job duties or circumstances. Indeed, even when local commanders (who are most familiar with Plaintiffs' individual circumstances) supported Plaintiffs' RARs, Defendants denied their requests. *See, e.g.*, Spence Aff. Ex. 4 ¶ 22, App.43–44. And tellingly, the rationales Defendants provide (at 21–22) for denying Plaintiffs' RARs are drawn entirely from Plaintiffs' appeals, not their initial denials. Such post hoc rationalization is not the individual assessment RFRA and the First Amendment require.

Finally, Defendants fail to distinguish this case from *SEALs*, where this Court held the Navy lacked a compelling interest where it achieved its goal of widespread vaccination of the force without the participation of the small number of servicemembers who remained unvaccinated for religious reasons, where several Plaintiffs had natural immunity, and where COVID-19 treatments were becoming increasingly effective at reducing

hospitalization and death. *SEALs*, 2022 WL 34443, at *10. Each factor is also present here, and each reduces the risk presented by unvaccinated servicemembers. And, once again, if "[e]ven the risk of a single individual going unvaccinated is serious," Def. Br. 29, Defendants would need to disqualify medically exempt individuals from service. Because they grant exemptions to those individuals and allow them to perform their duties, it is particularly appropriate for the Court to look at the Air Force's high percentage of vaccinated Airmen and conclude that accommodating Plaintiffs would not pose significant additional risk.

### 2. Compelled Vaccination of Plaintiffs and Prospective Class Members Is Not the Least Restrictive Means Available to Defendants.

Defendants likewise offer no meaningful rebuttal to the requirement, articulated by the Supreme Court in *Tandon*, that courts presume "precautions that suffice for other activities suffice for religious exercise too." *Tandon* 141 S. Ct. at 1297. Defendants reject (at 33–35) Plaintiffs' proffered less restrictive means, such as telework, wearing masks, social distancing, and periodic testing, as insufficient. But *medically* exempt servicemembers are in many instances reportedly not required to accept even such basic restrictions as these. *See* McCoy Aff. ¶ 10, S.App.30. Defendants assert only that Airmen with medical exemptions are limited in their ability to travel; they do not contest that those servicemembers perform their duties without even the precautions Plaintiffs have offered to abide by, and that those servicemembers do not face the extremely restrictive means Defendants impose on Plaintiffs, including disciplinary action, lost promotions, involuntary separation from the military, and other adverse actions, including the

possibility of court martial. The punitive course Defendants have taken is clearly not the least restrictive means available to accomplish their interests in health and readiness.

### B.  The Mandate Is Not Generally Applicable.

Defendants further attempt (at 36) to evade First Amendment scrutiny by asserting an empty argument for military deference. But Defendants' cited authorities state only that military regulations receive greater deference than do civilian regulations, not that the military context changes whether the law itself is neutral and generally applicable. And Defendants offer no reason that this Court should defer to out-and-out discrimination.

Defendants suggest (at 36–37) that the evidence of animus that is sufficient to trigger strict scrutiny is a necessary condition for the higher standard of review. Not so. *Fulton* makes clear that to avoid strict scrutiny a law must be generally applicable in substance, not just in word, and on that basis held that "[t]he creation of a formal mechanism for granting exceptions renders a policy not generally applicable…because it invites the government to decide which reasons for not complying with the policy are worthy of solicitude." *Fulton*, 141 S.Ct. at 1879 (citation omitted).

Defendants nevertheless rely (at 37–38) on out-of-circuit precedent for the proposition that their mandate is neutral and generally applicable, notwithstanding its exemptions, because those exemptions are "objectively defined." But those "objective" criteria just so happen to allow only those who abstain from the vaccine for secular reasons to be accommodated. Plaintiffs have thus clearly shown "that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct." *Kane*

24

*v. De Blasio*, 19 F.4th 152, 165 (2d Cir. 2021) (per curiam) (citation omitted). The vaccine

mandate thus lacks general applicability, and strict scrutiny applies.

## III.   The Remaining Factors for Injunctive Relief Are Satisfied.

Plaintiffs have satisfied the remaining factors necessary to qualify for injunctive

relief. First, they face ongoing irreparable injury due to the loss of First Amendment rights

in connection with adverse consequences to their careers. Defendants offer no rebuttal to

the holdings of this Court and the Fifth Circuit that such harms are irreparable. *See*

*Sambrano v. United Airlines, Inc.,* No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17,

2022); *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., Dep't of Lab.*, 17

F.4th 604 (5th Cir. 2021); *SEALs,* 2022 WL 34443, at *13. Second, the balance of the

harms and public interest tilt in favor of Plaintiffs given the significant constitutional rights

at stake. *See, e.g.*, *Jackson Women's Health Organization v. Currier,* 760 F.3d 448, 458

n.9 (5th Cir. 2014); *SEALs*, 2022 WL 34443 at *13.

### A.  Plaintiffs Are Suffering Irreparable Injury.

Defendants try (at 41–42) to minimize the extent of the harm they are imposing

through their restriction on Plaintiffs' religious freedom by arguing that Plaintiffs may

decline to receive the vaccination, so long as they accept the accompanying loss of their

careers. But, as this Court held in *SEALs*, "[t]he crisis of conscience imposed by the

mandate is itself an irreparable harm," and "any losses the Plaintiffs have suffered in

connection with their religious accommodation requests sufficiently demonstrate

irreparable injury." *SEALs*, 2022 WL 34443, at *13. That holding is supported by Fifth

Circuit precedent recognizing that a jab-or-job choice is irreparable harm supporting a

preliminary injunction. *See Sambrano*, 2022 WL 486610; *BST Holdings*, 17 F.4th 604. Defendants do not even address these binding precedents, and their argument against irreparable injury fails.

### B. The Balance of Harms and the Public Interest in Protecting Constitutional and Statutory Rights Weigh in Favor of an Injunction.

Furthermore, the balance of harms and the public interest clearly tilt in favor of issuing an injunction. Plaintiffs are being deprived of their First Amendment and RFRA rights. An injunction would prevent further harm and serve the public interest by "prevent[ing] constitutional deprivations." *See Jackson Women's Health Organization,* 760 F.3d at 458 n.9.

Defendants nevertheless assert (at 42–43) that an interest in military readiness tilts the balance of harms and the public interest in their favor. But that argument fails for the same reasons that their arguments in support of a compelling interest in vaccinating Plaintiffs fail. The asserted interest in military readiness should be evaluated through the same lens as the compelling interest inquiry: whether Defendants would face harm by accommodating these particular Plaintiffs. *See, e.g., Hobby Lobby*, 573 U.S. at 726; *Gonzalez v. O Centro Espírita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006). And, where the military has already granted hundreds of exemptions from its mandate, Defendants cannot make that showing.[11] *See supra* Section II.A.1.

---

[11] Again, to the extent that Defendants impose restrictions on members with medical or administrative exemptions, they can provide that as evidence that imposing the same restrictions on religious requesters is necessary because to do otherwise would pose a real and concrete adverse impact on a compelling government interest. *See* Mot. for TRO and PI, ECF No. 4. And at most, such restrictions counsel in favor of issuing an injunction that

Defendants also assert (at 43) that the balance of harms and the public interest weigh in their favor based on the military's interest in good order and discipline because Airmen cannot "feel free to define the terms of their own service and which orders they will choose to follow." Plaintiffs feel no freedom of the sort. Until Defendants punished them for following their religious convictions, none had received discipline. Each Plaintiff is a highly decorated Airman who has followed all lawful orders. They want to continue their honorable service to their nation, but they cannot do so if Defendants force them to choose between their nation and their God. The military's interest in good order and discipline cannot extend to forcing compliance with unlawful orders that require Plaintiffs to violate their religious conscience.

## IV.   The Requested Injunction Is Appropriate in Scope.

Finally, Defendants take special issue with two aspects of Plaintiffs' proposed injunction: that it would apply nationwide, and that it includes a prohibition on making "personnel and assignment decisions" on the basis of Plaintiffs' RARs or unvaccinated status unless Defendants can show that such decisions are necessary to prevent a real and concrete adverse impact on a compelling government interest. But both aspects of the proposed injunction are appropriate.

As to the first: Plaintiffs understand that this Court may wish to complete the briefing schedule set forth in its June 17, 2022 Order (ECF No. 24) before ruling on a class-wide preliminary injunction. Plaintiffs respectfully submit that a class-wide

---

specifies that Defendants cannot take adverse action against Plaintiffs if such adverse action is not taken against servicemembers with secular accommodations.

temporary restraining order would be appropriate in the interim to protect other religious requesters from irreparable injury. As explained above, *see supra* Facts Section, Defendants have continued to hand out punishment and push toward separation proceedings while Plaintiffs' motion has been pending. Only a temporary restraining order from this Court can protect Plaintiffs and those similarly situated from being punished and forced out of the Air Force based on their religiously motivated conduct.

This Court has the authority to issue that order. It is settled that a court need not formally certify a class to issue preliminary injunctive relief. *See, e.g.*, *Howe v. Varity Corp.*, 896 F.2d 1107, 1112 (8th Cir. 1990) (affirming preliminary injunction issued for conditionally certified class); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) ("Simply put, there is nothing improper about a preliminary injunction preceding a ruling on class certification.").[12] *See also, e.g.*, Newberg on Class Actions § 24:83 (4th ed. 2002) ("The absence of formal certification is no barrier to classwide preliminary injunctive relief.").

The scope of adverse action Plaintiffs ask this Court to enjoin is also appropriate and necessary to prevent Defendants from continuing to deprive Plaintiffs of their First

---

[12] *Accord Lee v. Orr*, No. 13-CV-8719, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013) ("The court may conditionally certify the class or otherwise order a broad preliminary injunction, without a formal class ruling, under its general equity powers. The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons."); *Koss v. Norwood*, 305 F. Supp. 3d 897, 921 (N.D. Ill. 2018) (same); *O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1200 (N.D. Ill. 2016) (same); *N.Y. State Nat. Org. For Women v. Terry*, 697 F. Supp. 1324, 1336 (S.D.N.Y. 1988) (holding that "the Court acted in the only reasonable manner it could under the circumstances, ruling on the continuation of [the] temporary restraining order and leaving the question of class certification for another day").

Amendment and RFRA rights. Defendants' reliance on the Supreme Court's partial stay and Justice Kavanaugh's accompanying concurrence in *Austin v. Navy SEALs 1–26* is misplaced, as discussed in Section I.B.2 above. Justice Kavanaugh's concurrence rested on the conclusion that less restrictive means were not available. *Austin v. U. S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring). The Supreme Court in *SEALs* therefore did not face the kinds of facts at issue here, where Defendants themselves have powerfully demonstrated that less restrictive means are available and in use, both because they use less restrictive means for medically exempt servicemembers and because, until Defendants' mandate, all Plaintiffs safely performed their duties throughout the pandemic. *See, e.g.*, Spence Aff. Ex. 4 ¶ 22, App.43; Wu Aff. Ex. 11 ¶ 21, App.132.

And again, Defendants ignore the fact that Plaintiffs' requested injunction would allow Defendants to make personnel and assignment decisions based on vaccination status so long as Defendants can demonstrate that doing so is necessary to avoid a real and concrete adverse impact on a compelling government interest, as RFRA and the First Amendment require. This Court will not interfere in any legitimate operational decision by prohibiting Defendants from breaking the law. The injunction would merely require Defendants to show, as the law mandates, that failing to take adverse action against a particular servicemember would have an adverse impact on a compelling government interest. Plaintiffs do not ask this Court to make public health or military operational decisions. They simply ask that it require Defendants to follow the law.

## CONCLUSION

Unless this Court acts immediately to issue a temporary restraining order, Defendants will continue to inflict adverse action upon Plaintiffs, as they already have done while Plaintiffs' motion for a temporary restraining order and preliminary injunction has been pending. This Court has the authority to adjudicate this case, and Plaintiffs have made each showing necessary to qualify for the relief sought in their motion. Plaintiffs respectfully implore this Court to swiftly enjoin Defendants' discriminatory and unlawful conduct.

June 27, 2022                                 Respectfully submitted,

                                              */s/ Gene C. Schaerr*
                                              Gene C. Schaerr*
                                                D.C. Bar No. 416368
                                              Cristina M. Squiers
                                                Texas Bar No. 24093764
                                                *Counsel of Record*
                                              Annika M. Boone* **
                                                Utah Bar No. 17176)
                                              SCHAERR | JAFFE LLP
                                              1717 K Street NW, Suite 900
                                              Washington, DC 20006
                                              Telephone: (202) 787-1060
                                              Facsimile: (202) 776-0136
                                              gschaerr@schaerr-jaffe.com
                                              csquiers@schaerr-jaffe.com
                                              aboone@schaerr-jaffe.com

                                              Kelly J. Shackelford
                                                Texas Bar No. 18070950
                                              Jeffrey C. Mateer
                                                Texas Bar No. 13185320
                                              David J. Hacker
                                                Texas Bar No. 24103323

Michael D. Berry
  Texas Bar No. 24085835
Roger Byron
  Texas Bar No. 24062643
First Liberty Institute
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
jmateer@firstliberty.org
dhacker@firstliberty.org
mberry@firstliberty.org
rbyron@firstliberty.org

*Counsel for Plaintiffs and the
Proposed Class*

\*Admitted *pro hac vice*.
\*\* Not yet admitted in D.C. Practicing
under the supervision of D.C. attorneys.